REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

RYAN E. HATCH
ryan@ryanehatch.com
California Bar No. 235577
**LAW OFFICE OF RYAN E. HATCH, P.C.**
13323 Washington Blvd., Ste. 100
Los Angeles, CA 90066
Tel: (310) 279-5079
Fax: (310) 693-5328

DAVID A. SKEELS (admitted *pro hac vice*)
dskeels@whitakerchalk.com
Texas Bar No. 24041925
**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**
301 Commerce St., Ste. 3500
Ft. Worth, TX 76102
Tel: (817) 878-0500
Fax: (817) 878-0501

CABRACH J. CONNOR (admitted *pro hac vice*)
cab@connorkudlaclee.com
Texas Bar No. 24036390
**CONNOR KUDLAC LEE PLLC**
609 Castle Ridge Rd., Ste. 450
Austin, TX 78746
Tel: (512) 777-1254
Fax: (888) 387-1134

*Attorneys for Plaintiff PINN, INC.*

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| PINN, INC., Plaintiff, v. APPLE INC., Defendant. | **Case No. 8:19-cv-1805-DOC-JDE**<br><br>**PINN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS DAUBERT MOTION AND MOTION TO STRIKE AGAINST APPLE INC.**<br><br>District Judge: Hon. David O. Carter<br>Magistrate Judge: John D. Early<br>Tech. Special Master: David Keyzer<br><br>Hearing Date: November 17, 2020<br>Time: 7:30 a.m. |

# TABLE OF CONTENTS

**I. INTRODUCTION .................... 1**

**II. STATEMENT OF FACTS .................... 1**

**III. EXPERT TESTIMONY STANDARD .................... 4**

**IV. RULE 37 STRIKE STANDARD .................... 5**

**V. ARGUMENT .................... 5**

**A. Pinn Moves to Strike Apple's Reliance on Undisclosed Apple Employee Witness to Support Apple's Invalidity Position Regarding the 2007 Apple Bluetooth Headset .................... 5**

**B. Pinn Moves to Strike Wells and Knox Valuation of the [REDACTED] .................... 10**

**C. Knox Improperly Relies Upon Dr. Wells' Non-Infringement and Invalidity Opinions in Calculating Reasonable Royalty .................... 13**

**VI. CONCLUSION .................... 18**

# TABLE OF AUTHORITIES

**Cases**

*LaserDynamics , Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012) ........ 12, 13

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014) ........ 12

*Audionics Sys. v. AAMP of Fla., Inc.*, No. CV 12-10763 MMM (JEMx), 2015 U.S. Dist. LEXIS 180218 (C.D. Cal. 2015) ........ 4

*Biscotti Inc. v. Microsoft Corp.*, Case No. 2:13-cv-01015-JRG-RSP, 2017 U.S. Dist. Lexis 94106, (E.D. Tex. May 25, 2017) ........ 13

*Clausen v. M/V NEW CARISSA*, 339 F.3d 1049 (9th Cir. 2003) ........ 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ........ 4

*Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d 1299 (Fed. Cir. 2018) ........ 13

*Gargoyles, Inc. v. United States*, 37 Fed. Cl. 95 (Ct. Fed. Claims 1997) ........ 14

*Georgia-Pacific Corp. v. United Plywood Corp.*, 318 F.Supp. 1116 (S.D.N.Y. 1970) ........ 12, 15

*Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075 (Fed. Cir. 1983) ........ 20

*Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335 (Fed. Cir. 2003) ........ 5

*Lucent Techs, Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ........ 12, 14, 15

*Panduit Corp. v. Stahlin Bros., Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978) .......... 19

*Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554 (Fed. Cir. 1986) .......... 15

*Rite-Hite Corp v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995) .......... 15

*Sementilli v. Trinidad Corp.*, 155 F.3d 1130 (9th Cir. 1998) .......... 5

*Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. CV 02-2258 JM (AJB), 2007 U.S. Dist. LEXIS 16356, 2007 WL 935703 (S.D. Cal. Mar. 7, 2007) .......... 5

*Wordtech Sus., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308 (Fed. Cir. 2010) .......... 13

*Zadoian v. Target Corp.*, No. CV 19-326 DSF (AGRx), 2020 U.S. Dist. LEXIS 107846 (C.D. Cal. Apr. 14, 2020) .......... 6

*Zenith Elecs. Corp. v. PDI Commun. Sys., Inc.*, 522 F.3d 1348 (Fed. Cir. 2008) .......... 5

**Rules**

Fed. R. Civ. P. 37(c)(1) .......... 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pinn seeks to exclude select portions of the opinions offered by Apple's technical and damage expert witnesses. Apple failed to disclose testimony and evidence from an Apple employee regarding one of Apple's prior art references (2007 Apple Bluetooth headset) supporting its invalidity case. Pinn seeks to exclude Apple's technical expert opinions relying upon this undisclosed testimony and evidence. Ex. A, Wells Opening Report at pp. 118-119; 160-161; 165-66; 169-70; 173; 176-178; 180-81; 183-185, 187-88; 191-92; 195-96; 198; 200-01 (¶¶438, 441-42, 451, 461-62, 469, 476-77, 481, 486, 488, 497-98, 502, 504, 506, 509, 516, 532, 534, 539, 547-51); Ex. B, Cooperstock Opening Report at pp. 3-8 (¶¶ 11; 15; 17-26).

Apple's technical expert, Dr. Wells, provided opinions that its damages expert, Ms. Knox, relied upon about the technical value of the [REDACTED] [REDACTED] Dr. Wells opinions are not based upon any accepted methodology and are the result of Dr. Wells simply reading the patents without examining the claims. Ms. Knox violates the accepted methodology and standards (assumption of infringement and validity) by relying upon Dr. Wells opinions about the [REDACTED] [REDACTED] Pinn seeks to exclude this testimony. Ex. C, Wells Rebuttal Report at 182-187 ¶ 413-424 ("value" opinion in ¶ 423); Ex. D, Knox Report at 8, 52-54; 102-105, ¶¶ 14, 121-127; 240; 243; 245.

Ms. Knox also heavily relies upon Dr. Wells' non-infringement and invalidity opinions in her damages analysis to drive down the value of the Asserted Patents in contravention of accepted methodology and standard (assumption of infringement and validity). Pinn seeks to exclude this testimony. Ex. D, Knox Report at 7, 14-15, 68-70; 103-104, ¶¶ 12, 23-26, 159, 162-164, 243.

## II. STATEMENT OF FACTS

One of the prior art "references" that Apple relies on is its own Bluetooth Headset that was, according to Apple, introduced in 2007. Apple's invalidity expert

Dr. Jonathan Wells opines that the Apple Bluetooth Headset invalidates all of the asserted claims of the patents-in-suit. To offer this opinion, Dr. Wells relies on the opinion of another of Apple's experts, Dr. Jeremy Cooperstock, who analyzed certain source code produced by Apple. Both Dr. Wells and Dr. Cooperstock rely on conversations they had with an Apple engineer, Mr. Terry Tikalsky, to assert that the source code analyzed by Dr. Cooperstock is the source code for the Apple Bluetooth Headset and that it dates back to the 2007 timeframe. Apple never disclosed Mr. Tikalsky in its Initial Disclosures as a person possessing discoverable information that Apple may use to support its claims or defenses.

Apple was ordered to produce comparable licenses and licenses on the accused products. Dkt. 140 at 30-31. In response, Apple produced several [REDACTED] agreements, among them Apple provided [REDACTED] agreements between itself and [REDACTED]

Apple's technical expert Dr. Wells offered opinions of non-infringement, invalidity. In addition, Dr. Wells opined that the value of the [REDACTED] patents is greater than the Pinn patents he found to be invalid and that Apple does not infringe. Ex. C, Wells Rebuttal Report at 185, ¶ 423.

Dr. Wells opined that the [REDACTED] Ex. C, Wells Rebuttal Report at 186, ¶ 423. Dr. Wells further opined that [REDACTED]" *Id.* Dr. Wells opined that because he found that Apple does not practice the Asserted Patents and the Pinn patents are invalid the [REDACTED] *Id.*

Dr. Wells did not [REDACTED] Ex. E, Wells Dep. Tr. at 79:15-80:15; 81:4-25; 82:3-11; 88:14-19; 91; 6-12.

Ms. Knox relied upon Dr. Wells opinion [REDACTED] to support the reasonableness of her [REDACTED] reasonable royalty figure. Ex. D, Knox Report at 104-105, ¶ 245.

Ms. Knox also relied upon Dr. Wells non-infringement and invalidity opinions in her *Georgia-Pacific* reasonable royalty analysis. For example, Ms. Knox points to Dr. Wells' opinions about [REDACTED] to support her royalty figure:

[REDACTED]

Ex. D, Knox Report at 14-15, ¶ 24 (citing Wells Opening Report at 7-8) (emphasis added). Ms. Knox opined that [REDACTED]

█████ *Id.* at 104-105, ¶ 245.

## III. EXPERT TESTIMONY STANDARD

Before admitting expert testimony, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Audionics Sys. v. AAMP of Fla., Inc.*, No. CV 12-10763 MMM (JEMx), 2015 U.S. Dist. LEXIS 180218, at *60-61 (C.D. Cal. 2015) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). "In Daubert the Supreme Court set forth a non-exclusive list of factors to determine whether scientific testimony is sufficiently reliable: (1) whether the scientific theory or technique can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the scientific community." *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1056 (9th Cir. 2003) (citing *Daubert*, 509 U.S. at 593-95)).

"The party offering the expert bears the burden of establishing that Rule 702 is satisfied." *Audionics Sys.,* 2015 U.S. Dist. LEXIS 180218, at *60-61 (citing *Sundance Image Tech., Inc. v. Cone Editions Press*, Ltd., No. CV 02-2258 JM (AJB), 2007 U.S. Dist. LEXIS 16356, 2007 WL 935703, *4 (S.D. Cal. Mar. 7, 2007)). "In determining whether expert testimony is admissible under Rule 702, the district court must keep in mind Rule 702's broad parameters of reliability, relevancy, and assistance to the trier of fact." *Id.* (*citing Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998) (internal quotation marks omitted)).

Any witness testimony that is relied upon to invalidate a patent "must be corroborated by documentary evidence." *Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1350 (Fed. Cir. 2003). This corroboration requirement applies to expert testimony as well as percipient witness testimony.

*Zenith Elecs. Corp. v. PDI Commun. Sys., Inc.*, 522 F.3d 1348, 1357 (Fed. Cir. 2008) (applying corroboration requirement to expert opinions on invalidity).

## IV. RULE 37 STRIKE STANDARD

The Court's initial Order and Rule 26 required identification of individuals likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(i); Order, Dkt. 40 at 2 ("The parties shall comply fully with the letter and spirit of Rule 26(a)"). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Zadoian v. Target Corp.*, No. CV 19-326 DSF (AGRx), 2020 U.S. Dist. LEXIS 107846, at *2 (C.D. Cal. Apr. 14, 2020) (on motion in limine).

## V. ARGUMENT

### A. Pinn Moves to Strike Apple's Reliance on Undisclosed Apple Employee Witness to Support Apple's Invalidity Position Regarding the 2007 Apple Bluetooth Headset

One of the prior art devices that Apple relies on to assert invalidity of the Pinn Patents is a Bluetooth Headset purportedly introduced to the market in 2007 by Apple. Apple and its experts rely upon not only the device itself but on source code produced by Apple in the course of this case. Because of Apple's failure to disclose any knowledgeable witness related to the [REDACTED] and the fact that Apple's experts rely upon uncorroborated hearsay from an undisclosed Apple employee, Pinn moves to strike those portions of the opening expert reports of Apple's experts Jeremy Cooperstock and Jonathan Wells that rely on the [REDACTED] [REDACTED] Apple's 2007 Bluetooth Headset (or Apple BT Headset or iPhone Bluetooth Headset) (referred to herein as "BTH").

Neither Apple nor its experts has provided any reliable evidence or methodology to show that the [REDACTED] was publicly

available, publicly known, or used in the relevant device (or any device) before the relevant priority date.

Apple's validity expert, Dr. Jonathan Wells, offered opinions in his opening expert report dated August 14, 2020 that [redacted] Ex. A, Wells Opening Report at 160-161. Wells also offers numerous opinions that [redacted] to invalidate the patents-in-suit. *Id.* at 118-119. (Additional opinions concerning the [redacted] can be found at pp. 169-70, 181, 183-85, 187-88, 191-92, 196, 198, and 200-01.) Wells also opines that [redacted] *Id.* at 160, ¶ 438.

The BTH is comprised of three separate pieces: the headset itself, a dock referred to as the iPhone Dual Dock, and a charging cable referred to as the iPhone Travel Cable. Referring to these three separate pieces , Dr. Wells states: [redacted] *Id.* at 160, ¶ 441. Dr. Wells then states that it was another of Apple's experts, Dr. Jeremy Cooperstock, who [redacted] *Id.* at 160-61, ¶441. Dr. Wells relies on Dr Cooperstock's findings. *Id.* at 161, ¶441. Indeed, for numerous aspects of his invalidity opinions for BTH, [redacted] *Id.* at 165-66, ¶ 451; 173, ¶ 469; 176-77, ¶ 476; 178, ¶ 481; 180, ¶ 486; 185, ¶ 502; 195, ¶ 532. [redacted] Ex. E, Wells Dep. Tr. at 6:18-22. As such, Dr. Wells cannot reliably testify from his own personal knowledge as to the provenance of [redacted]

In an effort to remedy this failure, Dr. Wells notes that he spoke with who, allegedly, Ex. A, Wells Opening Report at 161, ¶ 442. therefore, is the linchpin Dr. Wells needed to so that Dr. Wells could assert that the BTH invalidates the patents-in-suit. *Id.* Without Dr. Cooperstock's analysis would be of untethered to any relevant device.

Dr. Cooperstock submitted an opening expert report purporting to Ex. B, Cooperstock Opening Report at 3, ¶ 11. Ex. F, Cooperstock Dep. Tr. at 25:25-26:13. *Id*. at 26:19-27:5).

In an effort to remedy these deficiencies, Dr. Cooperstock, like Dr. Wells, spoke with Ex. B, Cooperstock Opening Report at 4, ¶ 15. However, Dr. Cooperstock spoke to Ex. F, Cooperstock Dep. Tr. at 29:12-14. Dr. Cooperstock asserts that Ex. B, Cooperstock Opening Report at 4, ¶ 15. Dr. Cooperstock, however, did nothing to

[redacted] Ex. F, Cooperstock Dep. Tr. at 27:11 – 28:11. In his own words, Dr. Cooperstock [redacted] *Id*. at 28:19 – 29:5; *see also* 30:25-31:14. Indeed, Dr. Cooperstock frankly admitted [redacted] *Id*. at 29:5-9. Dr. Cooperstock, like Dr. Wells, made [redacted] the linchpin of Apple's BTH-related invalidity defense. Without [redacted] there is no evidence tying the [redacted] to the BTH device (or any other device) nor to its use in 2007 (or ever).

Despite the central and critical role that [redacted] plays with respect to Apple's invalidity defense, Apple never disclosed [redacted] to Pinn. Apple never identified [redacted] as having discoverable information that Apple may use to support any of its claims or defenses in the case. For this reason alone the opinions of Drs. Wells and Cooperstock should be stricken. To make matters worse, [redacted] so that Pinn could determine, for itself, [redacted] Indeed, [redacted] *Id*. at 15:18-20. Apple's experts were left to rely on the hearsay testimony of an [redacted] that Apple did not see fit to disclose to Pinn. And even at that, [redacted] did not provide a sufficient basis to prove up [redacted] Rather than inform Drs. Wells and Cooperstock, as is required by Federal Rule of Evidence 803(6), that the [redacted] was "made at or near the time by – or from information transmitted by – someone with knowledge" and "kept in the course of a regularly conducted activity of a business," [redacted] could only [redacted]

[redacted] Ex. B, Cooperstock Opening Report at 4, ¶15. Pinn's own source code expert, Ms. Julie Workman, [redacted] Ex. G, Workman Rebuttal Report at 4 (¶15), 8 (¶26). Also, despite [redacted] apparent claim that the produced code [redacted] Ex. G, Workman Rebuttal Report at 4 (¶ 16), 5 (¶19).

[redacted] Accordingly, the opinions of Dr. Wells and Cooperstock relying on the purported Apple Bluetooth Headset, Dual Dock, and Travel Cable [redacted] should be stricken and Apple precluded from relying on such [redacted][1]

---

[1] During the meet and confer process concerning this aspect of Pinn's Motion, Apple offered to not rely on [redacted] and, instead, prove up the [redacted] through another Apple engineer, Robert Watson. However, this doesn't cure the problem. Although included in Apple's Initial Disclosures, Mr. Watson was not identified therein as being relevant to any issue related to the Apple Bluetooth Headset. Thus, using Mr. Watson – whom neither Dr. Wells nor Dr. Cooperstock relied upon with respect to the [redacted] relevant to this issue – suffers the same deficiency and prejudice to Pinn as does [redacted]

**B. Pinn Moves to Strike Wells and Knox Valuation of the [redacted]**

Apple was ordered to produce and identify comparable licenses in response to Pinn's Interrogatory No. 10 & 11. Dkt. 140, Judge Early's June 11, 2020 Order at 30-31. Apple identified several [redacted] agreements that its licensing 30(b)(6) witness, Ms. Whitt, [redacted] *See e.g*. Ex. H, Whitt Dep. Tr. at 161:2-16; 278:7-279:1; 280:8-21. [redacted]

[redacted] Ex. D, Knox Report at 104-105, ¶ 245 [redacted]

In doing so, Ms. Knox improperly relied upon Dr. Wells' opinion that [redacted]

[redacted]

Ex. C, Wells Rebuttal Report at 108, ¶ 423; Ex. D, Knox Report at 53-54, ¶ 126 and 104-105, ¶ 245.

Dr. Wells applied no accepted methodology to conclude that [redacted] As stated above, Dr. Wells' opinion is premised upon his finding that the Pinn patents are invalid and not infringed.

In direct contravention of accepted methodology for calculating damages (assuming infringement and validity), Ms. Knox relies upon Dr. Wells' opinion to drive down the reasonable royalty amount. *Lucent Techs, Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1325 (Fed. Cir. 2009) ("The hypothetical negotiation also assumes that the asserted patent claims are valid and infringed."); *see e.g., LaserDynamics , Inc. v. Quanta Computer, Inc.* 694 F.3d 51, 77 (Fed. Cir. 2012) (the premise of the *Georgia-Pacific* analysis "assumes a voluntary agreement will be reached between a willing licensor and a willing licensee with validity and infringement of the patent not being disputed) *citing Georgia-Pacific Corp. v. United Plywood Corp.,* 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970); *see also Apple Inc. v. Motorola, Inc.,* 757 F.3d 1286, 1328 (Fed. Cir. 2014) (in a hypothetical negotiation "both infringement and validity are assumed").

In addition to relying upon his invalidity and non-infringement opinions, Dr. Wells did nothing more than [redacted] than Pinn's (invalid and non-infringed) patents. There is no accepted methodology in simply reading patents, ignoring the language and scope of the claims, and conducting no further investigation and concluding [redacted] *LaserDynamics, Inc.,* 694 F.3d at 79 (When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice."); *Biscotti Inc. v. Microsoft Corp.*, Case No. 2:13-cv-01015-JRG-RSP, 2017 U.S. Dist. Lexis 94106, *10-14 (E.D. Tex. May 25, 2017) (Opinions of damages expert who relied on opinions of technical expert concerning prior license excluded when Court found that

"[w]hile [damages expert] is entitled to rely on this portion of the report, the Court fails to see where [technical expert] has provided any analysis on the technological comparability of the [prior licenses]. [Technical expert's] analysis focuses on the value the HDMI standard brings to the [accused products],and includes a one-sentence conclusion that the HDMI standard is more valuable than the [asserted patent]. If anything, such analysis is more akin to an economic evaluation than a technological one. While the comparability of previous licenses is generally a fertile ground for cross-examination, a complete failure to provide any analysis regarding technological comparability warrants exclusion."); *Wordtech Sus., Inc. v. Integrated Networks Sols., Inc.,* 609 F.3d 1308, 1320 (Fed. Cir. 2010) ("[C]omparisons of past licenses to the infringement must account for the technological and economic differences between them."); *see also Finjan, Inc. v. Blue Coat Sys.,* 879 F.3d 1299, 1312 (Fed. Cir. 2018) (Case remanded to district court to determine issue of damages because Plaintiff failed to present a damages case to support the jury's verdict because it produced insufficient evidence of comparability and the court found that "surface similarity is far too general to be the basis for a reasonable royalty calculation."); *Gargoyles, Inc. v. United States*, 37 Fed. Cl. 95, 108 (Ct. Fed. Claims 1997) (Court found licenses not comparable because, among other things, "there was no showing of the importance of the technology involved in these licenses to either the licensor or the licensee."); *Lucent Techs, Inc.,* 580 F.3d at 1325, 1332 ("licenses relied on by the [expert] in providing damages [must be] sufficiently comparable to the hypothetical license at issue in the suit.")). Dr. Wells admits he did not even look at [REDACTED] Ex. E, Wells Dep. Tr. at 79:15-80:15; 91:6-12.

Dr. Wells admitted he did not offer an opinion about the [REDACTED] offers no opinion as to whether [REDACTED] and offered no opinion that [REDACTED] *Id.* at 81:4-25; 82:3-11. [REDACTED]



[redacted] *Id.* at 86:8-11. Wells did not determine whether the [redacted] *Id.* at 88:14-19.

The sum total of Wells methodology was to look at the [redacted] determine that they [redacted] to him and conclude that [redacted] *Id.* at 89:1-10, 90:6-20. Dr. Wells opinions regarding the [redacted] and Ms. Knox's reliance upon the same should be struck.

**C. Knox Improperly Relies Upon Dr. Wells' Non-Infringement and Invalidity Opinions in Calculating Reasonable Royalty**

Apple's damages expert, Ms. Knox, relies and adopts the opinions of Apple's technical expert, Dr. Wells, that the Asserted Patents are invalid and not infringed. This reliance enables Ms. Knox to improperly drive down the value of the Asserted Patents, in contravention of accepted methodology and standard (assumption of infringement and validity). As such, Ms. Knox;s opinions that rely on Dr. Wells' opinions should be excluded. *See* Ex. D, Knox Report at 7, 14-15, 68-70; 103-104, ¶¶ 12, 23-26, 159, 162-164, 243.

A patentee is entitled to no less than a reasonable royalty on an infringer's sales for which the patentee has not established entitlement to lost profits. 35 U.S.C. § 284. "Litigants routinely adopt several approaches for calculating a reasonable royalty." *Lucent Technologies, Inc.*, 580 F.3d at 1324. One approach, "the hypothetical negotiation or the 'willing licensor-willing licensee' approach, attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Id.*; *see also Rite-Hite Corp v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995); *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557 (Fed. Cir. 1986); *Georgia-Pacific Corp.*, 318 F. Supp. at 1120.

The hypothetical negotiation attempts to create the "ex ante licensing negotiation scenario" between the two parties. *Lucent*, 580 F.3d at 1325 ("In other words, if the infringement had not occurred, willing parties would have executed a license agreement specifying a certain royalty payment scheme."). The hypothetical negotiation must assume that the Asserted Patents are valid and infringed. *Id*.

Here, Ms. Knox purports to offer an opinion about the hypothetical negotiation, which assumes that the Asserted Patents are infringed and valid. But Ms. Knox rejects the very framework that is required to conduct that analysis by relying on and adopting the conclusions of Apple's technical expert, Dr. Wells, who has concluded that the Asserted Patents are invalid and not infringed. For example, Ms. Knox opines:

Ex. D, Knox Report at 7, ¶ 12 (quoting Wells Opening Report at 6-7, 10). Ms. Knox relied on many of Dr. Wells' conclusions, finding:



> [redacted]

*Id*. at 14, ¶ 23 (quoting Wells Opening Report at 6-7, 10). Ms. Knox also relies on Dr. Wells' opinions that the '491 Patent is invalid because [redacted]

*Id*. at 14-15, ¶ 24 (citing Wells Opening Report at 7-8) (emphasis added). Ms. Knox further relied on Dr. Wells' opinions [redacted]



[redacted]

*Id*. at 15, ¶ 25 (citing Wells Opening Report at 8-9) (emphasis added). Indeed, Ms. Knox relies on Dr. Wells' ultimate conclusion that [redacted] *Id*. at 15, ¶ 26 (quoting Wells Opening Report at 9).

Ms. Knox's efforts to [redacted] using Dr. Wells' opinions of invalidity and non-infringement are also found in her analysis of the *Georgia-Pacific* factors. For example, Ms. Knox opines that:

[redacted]

*Id*. at 68, ¶ 159 (quoting Wells Opening Report at 6-7, 10). Moreover, Ms. Knox accepts Dr. Wells' premise that the Asserted Patents are invalid:

[redacted]

*Id*. at 69, ¶ 162 (relying on Wells Opening Report at 10, 81-88, 203-203 and citing Kim Dep. Tr. at 203-204). Ms. Knox also utilizes a discussion with Dr. Wells to interpret Mr. Kim's deposition in order to determine that the Asserted Patents are invalid:

*Id*. at 69, ¶ 163 (relying on discussion with Dr. Wells in interpreting Kim Dep. Tr. at 202, 211-213). Indeed, Ms. Knox cites to over 150 pages of Dr. Wells' invalidity opinion in her determination that *Id*. at 70, ¶ 164 (relying on Wells Opening Report at 58-64, 65-207).

Ms. Knox has rejected the foundational principles for constructing a hypothetical negotiation. She assumes that one party could walk away from the negotiating table in contravention of the hypothetical negotiation framework that requires the parties to reach an agreement. *See Panduit Corp. v. Stahlin Bros., Fibre Works, Inc.*, 575 F.2d 1152, 1158–59 (6th Cir. 1978) ("The setting of a reasonable royalty after infringement cannot be treated, as it was here, as the equivalent of ordinary royalty negotiations among truly 'willing' patent owners and licensees," and

noting that the legal fiction is created to compensate the patentee); *see also Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1081 (Fed. Cir. 1983) ("The willing-buyer/willing-seller concept is . . . employed by the court as a means of arriving at reasonable compensation and its validity does not depend on the actual willingness of the parties to the lawsuit to engage in such negotiations.") (internal citation omitted). By relying on and adopting opinions that conclude that the Asserted Patents are invalid and not infringed, Ms. Knox has improperly driven down the value of the Asserted Patents. Accordingly, Ms. Knox's reliance on Dr. Wells' invalidity and non-infringement opinions should be excluded because they reject presumption that the patens are valid, infringed, and enforceable.

## VI. CONCLUSION

Pinn asks the Court to strike the following portions of the Wells, Cooperstock and Knox reports and exclude any testimony regarding these portions of their opinions:

Ex. A, Wells Opening Report at pp. 118-119; 160-161; 165-66; 169-70; 173; 176-178; 180-81; 183-185, 187-88; 191-92; 195-96; 198; 200-01 (¶¶438, 441-42, 451, 461-62, 469, 476-77, 481, 486, 488, 497-98, 502, 504, 506, 509, 516, 532, 534, 539, 547-51);

Ex. B, Cooperstock Opening Report at pp. 3-8 (¶¶ 11; 15; 17-26).

Ex. C, Wells Rebuttal Report at 182-187, ¶ 413-424; and

Ex. D, Knox Report at 7, 8, 14-15, 52-54; 68-70, 102-105, ¶¶ 12, 14, 23-26, 121-127; 159, 162-164, 240; 243; 245 (bullet no. 6); 243 (bullet no. 1-4); 245 (item no. 2).

Dated: October 5, 2020

**Law Office of Ryan E. Hatch, P.C.**

*/s/ Ryan Hatch*

**Ryan E. Hatch**
ryan@ryanehatch.com
California Bar No. 235577
**LAW OFFICE OF RYAN E. HATCH, P.C.**
13323 Washington Blvd., Ste. 100
Los Angeles, CA 90066

Tel: (310) 279-5076
Fax: (310) 693-5328

**David A. Skeels** (admitted *pro hac vice*)
dskeels@whitakerchalk.com
Texas Bar No. 24041925
**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**
301 Commerce St., Ste. 3500
Ft. Worth, TX 76102
Tel: (817) 878-0500
Fax: (817) 878-0501

**Cabrach J. Connor** (*admitted pro hac vice*)
cab@connorkudlaclee.com
Texas Bar No. 24036390
Jennifer Tatum Lee (*admitted pro hac vice*)
jennifer@connorkudlaclee.com
Texas Bar No. 24046950
Kevin S. Kudlac (*admitted pro hac vice)*
kevin@connorkudlaclee.com
Texas Bar No. 00790089
**CONNOR KUDLAC LEE PLLC**
609 Castle Ridge Rd., Ste. 450
Austin, TX 78746
Tel: (512) 777-1254
Fax: (888) 387-1134

Attorneys for Plaintiff PINN, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 5, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Ryan Hatch*
Ryan E. Hatch