REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 533-4240 / Fax: (858) 678-5099

Seth M. Sproul (SBN 217711)
sproul@fr.com
John W. Thornburgh (SBN 154627)
thornburgh@fr.com
Tucker N. Terhufen (SBN 311038)
terhufen@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Joy B. Kete *(pro hac vice)*
kete@fr.com
FISH & RICHARDSON P.C.
One Marina Park
Boston, MA 02210
Tel: 617-542-5070 / Fax: 617-542-8906

Attorneys for Defendant Apple Inc.

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| PINN, INC., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 8:19-cv-1805-DOC-JDE <br><br> **DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTIONS *IN LIMINE* NOS. 6-10 TO EXCLUDE IRRELEVANT MISCELLANEOUS EVIDENCE** <br><br> Trial Date:   March 16, 2021 <br> Courtroom:   9 D <br> Judge:   Hon. David O. Carter |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

TO PLAINTIFF AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on January 25, 2021 at 8:30 a.m., or as soon thereafter as the matter may be heard in the United States District Court, Central District of California, Southern Division, located at 411 West Fourth Street, Courtroom 9D, Santa Ana, CA 92701, before the Honorable David O. Carter, Defendant Apple Inc. ("Defendant") will move, and hereby does present for hearing by this Court this Motion *in Limine* Nos. 6-10 to exclude various forms of irrelevant and prejudicial evidence.

This motion is made pursuant to Fed. R. Civ. P. 26 and/or Federal Rules of Evidence, as well as the Local Rules applicable thereto. This motion is based on this notice of motion, the accompanying memorandum of points and authorities, the omnibus declaration of Seth M. Sproul in support of the motion, any associated exhibits, and such additional papers and arguments as may be presented at or in connection with the hearing.

This motion is made following the conference of counsel pursuant to Local Rules 7-3 and 16-2, which took place on December 23, 2020, and continued during the weeks that followed leading up to the filing date of these motions.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Dated: January 8, 2021

FISH & RICHARDSON P.C.

By: */s/ Christopher S. Marchese*

Christopher S. Marchese (SBN 170239)
marchese@fr.com
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 533-4240
Fax: (858) 678-5099

Seth M. Sproul (SBN 217711)
sproul@fr.com
John W. Thornburgh (SBN 154627)
thornburgh@fr.com
Tucker N. Terhufen (SBN 311038)
terhufen@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

Joy B. Kete (*pro hac vice*)
kete@fr.com
Fish & Richardson P.C.
One Marina Park
Boston, MA 02210
Tel: 617-542-5070
Fax: 617-542-8906

Attorneys for Defendant APPLE INC.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................... 1

II.    LEGAL STANDARD ........................................................ 1

III.   ARGUMENT...................................................................... 2

    A.    Exclude Argument, Evidence, or Questions Regarding the '446 Patent and Associated Testimony (MIL No. 6) ..................................... 2

        1.   Mr. Stiehl's Deposition Testimony Reveals the Legal Flaws in Pinn's Intended Use of the '446 Patent at Trial ...................... 3

        2.   The '446 Patent Is Irrelevant to Infringement or Any Other Issue for Which Pinn Would Try to Use It .................................. 7

        3.   The '446 Patent Is Unfairly Prejudicial, Confusing, and Misleading........................................................................ 8

        4.   Mr. Stiehl Lacked Foundation to Describe the '446 Patent or the AirPods Products ............................................... 10

        5.   Conclusion ........................................................... 11

    B.    Exclude Argument That Wirelessly Pairing Requires Establishing Pairing by Wireless Means, as Opposed to Establishing a Trusted Relationship Regardless of Mechanism (MIL No. 7) .................... 11

    C.    Exclude Comparisons of Burden of Proof Standards to Other Areas of Law (MIL No. 8) ....................................................... 14

    D.    Exclude Argument, Evidence, or Questions as to the Identity, Presence, or Absence of Corporate Representatives, or Parties' Employees or Officers in the Courtroom (MIL No. 9) ..................... 15

    E.    Exclude Unproduced and Untimely Disclosed Documents Requested During Discovery, Except Documents Being Offered for Impeachment (MIL No. 10)............................................. 17

IV.   CONCLUSION ............................................................. 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Home Assur. Co. v. Am. President Lines, Ltd.*,
 44 F.3d 774 (9th Cir. 1994) .................................................................................. 2

*Buckley v. Evans*,
 No. 2:02-cv-01451, 2007 WL 2900173 (E.D. Cal. Sept. 28, 2007).............. 2, 8, 9

*Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols.*,
 482 F.3d 1347 (Fed. Cir. 2007) ........................................................................... 14

*Fenner Inv., Ltd. v. Microsoft Corp.*,
 632 F. Supp. 2d 627 (E.D. Tex. 2009), *aff'd sub nom. Fenner Inv.,
 Ltd. v. Microsoft Corp.*, 369 F. App'x 132 (Fed. Cir. 2010) ............................... 14

*Larez v. City of Los Angeles*,
 946 F.2d 630 (9th Cir. 1991) ................................................................................. 2

*Magnivision, Inc. v. Bonneau Co.*,
 115 F.3d 956 (Fed. Cir. 1997) ............................................................................... 1

*Markman v. Westview Instruments, Inc.*,
 52 F.3d 967 (Fed. Cir. 1995) ................................................................................. 8

*Spigen Korea Co. Ltd. v. Ispeaker Ltd*,
 Case No. CV 16-8559-DOC, 2018 WL 6038300 (C.D. Cal. July 16,
 2018) (Carter, J.) ................................................................................................. 13

*Stragent, LLC v. Intel Corp.*,
 No. 6:11-cv-421-TBD-JDL, Dkt. No. 274 (E.D. Tex. Feb. 27, 2014) ................. 14

**Statutes**

Cal. Welfare & Institutions Code § 361(b)............................................................ 15

U.S. Code Title 35 ................................................................................................. 14

**Other Authorities**

Fed. R. Evid. 401 .................................................................................... 1, 7, 14, 15

Fed. R. Evid. 402 ........................................................................................ 1, 9, 14

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Fed. R. Evid. 403 ........................................................................1, 2, 8, 9, 14

Fed. R. Evid. 602 ...................................................................................1, 10

Rule 30(b)(1)..............................................................................................4

Rule 30(b)(6)......................................................................................4, 7, 11

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant Apple Inc. ("Apple") hereby moves *in limine* to exclude evidence under at least Fed. R. Evid. 402, 403, and 602.  Apple has narrowly tailored these requests to target specific evidence that it understands Pinn will introduce and that has no probative value related to the issues in this case.

Apple objects to the following being introduced or argued at trial:  (i) any argument, evidence, or questions regarding U.S. Patent No. 10,681,446 ("the '446 Patent") issued to Kurt Stiehl *et al*; (ii) any argument or evidence that the claim term "wirelessly pairing" requires that pairing occur wirelessly, in conflict with the Court's claim construction on this term, (iii) any argument, evidence, or questions that compare patent burdens of proof to other areas of the law; (iv) any argument, evidence, or questions as to the identity, presence, or absence of corporate representatives, or parties' employees or officers in the courtroom; and (v) unproduced and untimely disclosed documents that were requested during discovery, with the exception of documents being offered for impeachment.

### II.   LEGAL STANDARD

"Irrelevant evidence is not admissible."  Fed. R. Evid. 402.  Furthermore, even if deemed relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]"  Fed. R. Evid. 403.

"Although the trial court has substantial discretion in determining the evidence to be admitted, the ultimate fact must be 'of consequence to the determination of the action,' in the words of Federal Rule of Evidence 401."  *Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956, 961 (Fed. Cir. 1997).  "In any trial there is a risk that in McCormick's phrase, 'the sideshow will swallow up the circus.'  That is that side issues of only tangential relevance will take up inordinate time and divert the jury from the real issues in the case.  The trial court's weapons to prevent this [include]

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  the Federal Rule of Evidence 403[.]" *Buckley v. Evans*, No. 2:02-cv-01451, 2007 WL

2  2900173, at *4 & n.13 (E.D. Cal. Sept. 28, 2007).

3       Unfair prejudice under Rule 403 "involves an 'undue tendency to suggest

4  decision on an improper basis, commonly, though not necessarily, an emotional

5  one.'" *Larez v. City of Los Angeles*, 946 F.2d 630, 641 n.5 (9th Cir. 1991) (quoting

6  Notes on the Advisory Committee on the 1972 Proposed Rules for Fed. R. Evid. 403).

7  "Probative value is determined by how likely the evidence is to prove some fact, not

8  how important proof of that fact is to the proponent's case." *Am. Home Assur. Co. v.*

9  *Am. President Lines, Ltd.*, 44 F.3d 774, 779 (9th Cir. 1994).

10  **III.   ARGUMENT**

11       **A.   Exclude Argument, Evidence, or Questions Regarding the '446**
12            **Patent and Associated Testimony (MIL No. 6)**

13       Based on Pinn's deposition designations, Pinn will try to prove infringement

14  through an *Apple patent*.  Pinn will attempt to do so through testimony from an Apple

15  engineer, Kurt Stiehl, a named inventor on a patent that arose from the development

16  of the Apple AirPods.  Pinn deposed Mr. Stiehl and spent hours asking questions

17  about the words used in the '446 Patent, but Mr. Stiehl testified repeatedly that he left

18  the AirPods development team in ███ (more than ███ before the product was

19  first sold), that he therefore could not speak to the final design of the AirPods, and

20  that he could not say if the '446 Patent described the AirPods.  Mr. Stiehl's testimony

21  does not provide sufficient grounds on which to allow Pinn to tie the '446 Patent to

22  infringement, and focusing on the disclosure of a patent—in the absence of any

23  evidence suggesting that patent accurately describes the accused AirPods—will only

24  confuse and mislead the jury and unfairly prejudice Apple.  Pinn should be precluded

25  from arguing or offering any evidence related to the '446 Patent.

26

27

28

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

### 1. Mr. Stiehl's Deposition Testimony Reveals the Legal Flaws in Pinn's Intended Use at Trial of the '446 Patent

Mr. Stiehl is an Apple engineer and was part of the AirPods development team beginning in ███. ████████████████████████████████████████████████. However, Mr. Stiehl left the AirPods team in ████████, more than ████████ before the first generation AirPods product was released in December 2016:

(Sproul Decl., Ex. 1 (Stiehl Deposition Tr.) at 202:12-203:2.)

As a result of Mr. Stiehl's truncated time on the AirPods team, Mr. Stiehl testified that he did not know the design and operation of the AirPods as they shipped, and had no knowledge of the AirPods source code. (*See, e.g.*, *id.* at 230:5-13 ("

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    ”); *id.* at 128:23-129:4 (“

2

3

4

5    ”); *id.* at 35:25-36:2

6

7    ”).)

8    , Apple filed patent

9    applications around September 2016 naming Mr. Stiehl as one of several inventors.

10   One of those patent applications became the '446 Patent, which is the subject of this

11   motion. (Sproul Decl., Ex. 3 ('446 Patent, JTX-115).) The '446 Patent lists Mr. Stiehl

12   as an inventor along with six others that Pinn did not depose in this case.

13         During fact discovery, Pinn served a Rule 30(b)(1) notice for Mr. Stiehl's

14   deposition, even though he was not identified by Apple in its initial disclosures.

15   Knowing that Mr. Stiehl would be deposed in his individual capacity, and because

16   Mr. Stiehl possessed knowledge of early AirPods development, Apple designated Mr.

17   Stiehl on the following topics from Pinn's Rule 30(b)(6) notice:

18   •   Technical 3: The development of the Accused Products, specifically:

19       ○   A. Initial conception of the Accused Products;

20       ○   B. Research and surveys conducted to gauge customer interest in

21           wireless earbuds with charging case;

22       ○   E. The role played by each person identified in sub-part (b) above

23           in the development of the Accused Products;

24       ○   G. Describe the development process.

25   •   Technical 4: The physical structure of the Accused Products, to wit:

26       ○   C. The design tolerances for the components identified in sub-

27           parts (a) and (b) above, including the design and tolerances for the

28

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   earbuds to fit into the charging case of the Accused Products [as

2   to first generation AirPods)

3   ○   D. Types of documents that identify the components and design

4   tolerances;

5   ○   E. Alternative designs considered by You in the development of

6   the Accused Products and the reasons for Your rejection of any

7   such alternatives.

8   •   Marketing 13: The reasons and factors that caused You to start to develop

9   each of the Accused Products.

10   Notably, Mr. Stiehl was not designated on any of the 12 topics pertaining to the

11   function and operation of the Accused Products. ("Accused Products" refers to the

12   AirPods (first and second generation) and AirPods Pro collectively.) Apple

13   designated Robert Watson, Jonathan Adams, and Jeff Terlizzi on those topics. Pinn

14   did not include any 30(b)(6) topic regarding the '446 Patent. Thus, Mr. Stiehl was

15   testifying as a former design engineer without an understanding of the final design

16   and operation of the AirPods products—not as a source of definitive technical

17   information on those products.

18   Despite this, Pinn spent several hours on the record in Mr. Stiehl's deposition

19   asking him to make comparisons between the claims, specification, and figures in the

20   '446 Patent and the functionality of the AirPods products. (*See, e.g.*, Ex. 1 (Stiehl

21   Deposition) at 24:24–25:8, 42:19-43:18, 75:25-76:10, 81:5-11, 83:14-20, 85:22-86:3,

22   91:22-92:10, 109:16-22.) Apart from superficial features readily observable by an

23   end-user (such as the existence of a case or button), Mr. Stiehl consistently testified

24   that he was unable to testify whether the patent accurately described the Apple

25   AirPods because he was not involved in the design work after ██████, and did not

26

27

28

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  testify as to the design, engineering, and coding work that was done after he left the

2  team.  An example of Pinn's approach, and Mr. Stiehl's response, is shown below: [1]



17  (Ex. 1 (Stiehl Deposition) at 130:17 – 131:6).

19        Pinn's intent to conflate the disclosure of the '446 Patent with the operation of

the actual AirPods is clear, but Mr. Stiehl's testimony does not support this approach.



23  ”  (*Id*. at 203:3-

---

[1] It is difficult to fully portray the extent to which Pinn intends to improperly use the '446 Patent in a few pages of this brief, so Apple has submitted with this motion the entirety of Pinn's designations from Mr. Stiehl's deposition as Exhibit 1, and provides just a single example below.  At bottom, Pinn spent several hours conflating the '446 Patent with operation of the actual AirPods.  In Exhibit 1, the green highlighting was supplied by Pinn as its deposition designations, indicating Pinn intends to use this testimony at trial.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   8.)  He further stated that the '446 Patent "



3                                          ."   (*Id.* at 210:23-211:1.)   "

5                                            "   (*Id.* at 207:8-16.)

10               .

11          In short, Mr. Stiehl's deposition testimony makes clear that Pinn should not be

12   allowed to use the '446 Patent at trial for the purpose Pinn intends to use it—in an

13   effort to conflate its disclosure with operation of the actual AirPods and thereby lead

14   the jury into believing that the '446 Patent is evidence of infringement.  It is not, and

15   Pinn should be precluded from using it.

16          **2.      The '446 Patent Is Irrelevant to Infringement or Any Other
                      Issue for Which Pinn Would Try to Use It**

18          As is clear from Mr. Stiehl's testimony,

19                                                              .  Attempted

20   comparisons of the '446 Patent to the actual AirPods products is irrelevant and

21   prejudicial because they do not "ha[ve] any tendency to make a fact more or less

22   probable than it [otherwise] would be," nor are those "fact[s] of consequence in

23   determining the action."  Fed. R. Evid. 401.  Pinn's questioning regarding the '446

24   Patent targeted only the operation of the AirPods.  Pinn was attempting to use the '446

25   Patent as a proxy for operation of the AirPods products in an effort to show that

26   AirPods infringe the Pinn patents.  The only testimony on the '446 Patent, by Mr.

27   Stiehl, conclusively shows

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    ███████████████████████. Any comparison between the AirPods and the '446

2    Patent is thus legally incorrect and irrelevant. "An infringement analysis entails two

3    steps. The first step is determining the meaning and scope of the patent claims

4    asserted to be infringed. The second step is comparing the properly construed claims

5    to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d

6    967, 976 (Fed. Cir. 1995). Thus, the Accused Products must be compared to ***Pinn's***

7    patent claims, not Apple's. Comparison of the Accused Products to the '446 Patent

8    is not part of the infringement test.

9         The '446 Patent also has no relevance to any other issue in the trial for which

10   Pinn would try to use it. The operation of the Accused Products is more properly

11   determined by questioning the Apple witnesses designated on technical topics such

12   as Robert Watson and Jeff Terlizzi, by analysis of Apple's source code, by analysis

13   of the observable operation of the actual products, and through expert testimony.

14   Analysis of an Apple patent merely related to the Accused Products is not an

15   appropriate exercise before the jury. For at least these reasons, the '446 Patent and

16   associated testimony, including Mr. Stiehl's, is irrelevant and should be excluded at

17   trial.

18              **3.    The '446 Patent Is Unfairly Prejudicial, Confusing, and**
              **Misleading**
19

20        In addition to being irrelevant, the '446 Patent and associated testimony is

21   prejudicial to Apple, has a high likelihood to confuse and mislead the jury, and is a

22   waste of party and Court resources. "In any trial there is a risk that in McCormick's

23   phrase, 'the sideshow will swallow up the circus.' That is that side issues of only

24   tangential relevance will take up inordinate time and divert the jury from the real

25   issues in the case. The trial court's weapons to prevent this [include] the Federal Rule

26   of Evidence 403[.]" *Buckley*, 2007 WL 2900173, at *4 & n.13. Mr. Stiehl's testimony

27   and the '446 Patent should be excluded as unfairly prejudicial, confusing, and

28   misleading.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Pinn's intent, undoubtedly, is to present evidence about this patent, including Mr. Stiehl's testimony, and try to mislead the jury into believing that the patent *accurately and faithfully describes* the AirPods for purposes of infringement.  This is not the kind of evidence that the jury should hear.  Not only would this be an *improper side show* that takes up time and diverts the jury from the real issues in the case, *Buckley*, 2007 WL 2900173, at *4 & n.13, but it would present a clear and serious danger of misleading and confusing the jury in a way that could benefit Pinn and unfairly prejudice Apple.  "The trial court's weapons to prevent this [include] the Federal Rule of Evidence 403," as well as Rule 402.  *Id.*  Those weapons should be employed here to preclude Pinn from introducing evidence, argument, or questions concerning the '446 Patent.

Instead, Pinn must prove infringement through testimony that describes the Accused Products, not the '446 Patent.  Apple produced technical documentation, including source code, that precisely describes the actual AirPods products.  Pinn has proffered the testimony of Apple's corporate witnesses designated on the operation of the AirPods products, expert opinion on their source code, and expert analysis of the observed operation of the products.  This is the evidence Pinn must use to try to show infringement.  Allowing Pinn to introduce evidence from the '446 Patent when it has available to it direct evidence of the design and operation of the Accused Products can only mislead and confuse the jury.  Pinn should be precluded from injecting such mischief into the trial.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

### 4. Mr. Stiehl Lacked Foundation to Describe the '446 Patent or the AirPods Products

Finally, the '446 Patent and associated testimony comparing it to the actual AirPods products should be excluded under FRE 602, because Mr. Stiehl testified that he lacked foundation for such comparisons.[2]

[REDACTED] As such, he is unable to compare the '446 Patent to the AirPods: "[REDACTED]" (Ex. 1 (Stiehl Deposition) at 230:5-13; *see also* 128:23-129:4 ("[REDACTED]"); *id.* at 128:13-14; 23-25. [REDACTED] (*Id.* at 83:14 – 84:1 [REDACTED]).)

Mr. Stiehl also made clear that he is unqualified to testify to the meaning of the claim terms of the '446 Patent because he is not a patent lawyer and he did not draft the words in the '446 Patent. (*Id.* at 203:15-21 [REDACTED].) For this reason and the reasons above, he was unable to compare the language in the patent to the AirPods. (*See, e.g.*, *id.* at 28:19 – 29:3 [REDACTED]

---

[2] Apple's foundation objections were preserved on the record. (*See, e.g.*, Ex. 1 (Stiehl Deposition) at 127:25 – 129:4 (lacks foundation as to knowledge of the Accused Products); *id.* at 23:6 – 24:12 (lacks foundation as to the contents of the '446 Patent and its meaning).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1
2 ); *see also id.* at 27:7-16.)

3    Mr. Stiehl was also not designated on any of Pinn's Rule 30(b)(6) topics related
4 to the operation of the actual AirPods products, and Pinn's attempt to present his
5 testimony as to the '446 Patent as probative of the operation of the AirPods is
6 improper.

7    Accordingly, Mr. Stiehl lacks the necessary foundation to establish the '446
8 Patent as probative of the design or operation of the AirPods.

9         **5.    Conclusion**

10   In sum, Pinn's obvious intent to try to prove infringement through the '446
11 Patent and Mr. Stiehl's testimony is improper for the reasons described above.  The
12 '446 Patent is not relevant to any claim or defense in the case and its use risks unfair
13 prejudice to Apple and is likely to confuse and mislead the jury.  Apple requests that
14 the Court exclude the '446 Patent and all related questioning from the trial.

15  **B.    Exclude Argument That Wirelessly Pairing Requires Establishing**
16       **Pairing by Wireless Means, as Opposed to Establishing a Trusted**
       **Relationship Regardless of Mechanism (MIL No. 7)**
17

18   Pinn should be precluded from arguing to the jury that "wireless pairing" has
19 any meaning other than the one adopted by the Court during claim construction.

20   The parties have spent more time disputing the meaning and application of the
21 term "wireless pairing" than any other term in this case.  It was the subject of a claim
22 construction dispute and was litigated in summary judgment.  Each party proposed its
23 own claim construction for the term "wireless pairing," and extensively briefed and
24 argued the issue to the Special Master and to the Court.  The Court ultimately adopted
25 Apple's position, and construed that term to mean: "establishing a trusted relationship
26 between two devices that allows them to communicate wirelessly."  (ECF 312.)  The
27 Court's construction is agnostic as to the mechanism—whether by wireless means or
28 a wired or physical connection—by which a trusted relationship is established.  The

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    construction requires only that a trusted relationship be formed, and that the trusted

2    relationship allow two devices to communicate wirelessly.

3          In his rebuttal report, Pinn's validity expert Dr. Scott Nettles argues for a new

4    meaning for the term wireless pairing, and a construction that Pinn did not request

5    during claim construction.  Pinn's new interpretation relates to the mechanism by

6    which the pairing is established.  Namely, Dr. Nettles asserts that wireless pairing

7    means a pairing *must be established wirelessly*, precluding the establishment of

8    wireless pairing via a wired connection:

9

10

11

12       becomes connected to an intermediate device," and once the host device is also connected, the
         pairing can proceed. Lydon at 21:37-39; see, e.g., Lydon at Fig. 1A. Lydon further discloses

13       that "[t]he host device can provide to the accessory, using the wired connection, information
         defining or configuring a new wireless link between the accessory and the host device."

14       Lydon at 4:41-44. It is evident that this process described in Lydon is a wired pairing process:
         the steps defined above are clearly indicative of the secure keys necessary to establish a

15       Bluetooth connection being exchanged via the wired and physical connection between the

16       phone and the headphone.

17       254. Therefore, Lydon discloses substantially the same thing as the Apple BT Headset, i.e.

18       wired, not wireless, pairing. Furthermore, as mentioned above, Lydon does not teach a mobile
         base station or a pairing button on a mobile base station, so it cannot remedy the shortcomings

19       of Apple BT Headset in that regard either. As such, the Apple BT Headset in combination

20       with Lydon cannot render any of the claims of the Asserted Patents obvious, because the

21       combination fails to teach a mobile base station, and fails to teach a user input button on a

22       base station, main body, or (importantly) mobile base station that causes a processor of the

23       base station, main body, or mobile base station to execute computer program instructions

24       stored in memory to initiate the wireless pairing of a wireless earbud with a smartphone.

25

26

27

28

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

330.    Further, the other references offered by Dr. Wells fail to meet this limitation. As discussed above with respect to both Watson I/II and the Apple BT Headset, Lydon only teaches a wired pairing process involving the base; there is also no motivation to combine Lydon, an immobile system, with any of the mobile systems found throughout Dr. Wells references. In addition, Dr. Wells proposes no obviousness combinations for Lydon in his charts or in his main report and so has made no claims about it being obvious when combined with any of the art, only by itself.

(Sproul Decl., Ex. 4 (Nettles Report) at ¶¶ 253-54; 330.)

This is a new and narrower meaning for "wireless pairing," through which Pinn attempts to limit "wireless pairing" to a trusted relationship that is established wirelessly, and not by a wired or physical connection. It may seem incongruous that Pinn would attempt to narrow the claim through Dr. Nettles' report and his trial testimony, since typically the patent holder wishes to have broad claim scope. But Pinn and Dr. Nettles have a strategy, and that is to graft a new limitation onto the claim in an effort to avoid powerful prior art that Apple will present at trial—the 2007 Bluetooth Headset that Apple developed and launched for use with the first iPhone. Apple will be showing this product to the jury, and showing how Apple itself had developed a system, nearly a decade before Pinn, that renders Pinn's claims invalid.

Pinn had an opportunity to request this narrower construction during the extensive claim construction process, and did not do so. The Court's construction does not address the mechanism by which a trusted relationship is established; it only requires that one be established so that two devices can communicate wirelessly. The word "wireless" describes the nature of the relationship, not the manner in which it is established, which is a new limitation that Pinn attempts to graft onto the claim term. Thus, Pinn's new argument contravenes the Court's construction and should be excluded. Pinn has waived this argument as it failed to raise it during claim construction. *See, e.g.*, *Spigen Korea Co. Ltd. v. Ispeaker Ltd*, Case No. CV 16-8559-DOC, 2018 WL 6038300, at *19 (C.D. Cal. July 16, 2018) (Carter, J.) (finding on

13

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

summary judgment regarding invalidity, "to the extent these 'factual disputes' about differences between the Stowaway and this portion of Claim 1 . . . are premised on claim construction, they are waived" where plaintiff attempted a "belated claim construction argument . . . to put forward a narrow construction" to exclude prior art.); *see also Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) ("The district court found that [defendants] waived any argument with respect to this term by failing to raise it during the claim construction phase.  We agree."); *Fenner Inv., Ltd. v. Microsoft Corp.*, 632 F. Supp. 2d 627, 638 (E.D. Tex. 2009) ("Because this argument is contrary to the claim construction order and was not raised prior to or even following the claim construction hearing it is waived."), *aff'd sub nom. Fenner Inv., Ltd. v. Microsoft Corp.*, 369 F. App'x 132 (Fed. Cir. 2010).  Pinn must now comport with the Court's order.

Because Pinn's new and narrower construction of "wireless pairing" conflicts with the Court's order, and is untimely, irrelevant, and prejudicial to Apple, the Court should preclude Pinn and its experts from asserting this argument at trial.

## C.    Exclude Comparisons of Burden of Proof Standards to Other Areas of Law (MIL No. 8)

The parties should be precluded from characterizing the burden of proof or other legal standards with reference to areas of law other than Title 35 of the U.S. Code (including child custody and mental commitment proceedings).  Fed. R. Evid. 401-403.  There is no reason to depart from the properly articulated burdens of proof in this case, which the Court will provide to the jury.  For example, Apple has the burden to prove invalidity of the Pinn patents by clear and convincing evidence.  Pinn should not be allowed to analogize this invalidity burden to terminating the parent-child relationship, thereby invoking an emotional context entirely separate from what is at issue here, and which has the direct effect of equating the jury finding a patent invalid to the jury taking a child away from a parent.  *See Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421-TBD-JDL, Dkt. No. 274 at 2 (E.D. Tex. Feb. 27, 2014) (excluding

"[r]eferences to the 'clear and convincing' standard in the Texas Family Code"); Cal. Welfare & Institutions Code § 361(b) (stating that "[n]o dependent child shall be taken from the physical custody of his or her parents … unless the juvenile court finds clear and convincing evidence of . . . a substantial danger to the physical health of the minor …").  It would be highly prejudicial to Apple, confusing and misleading to the jury, and may improperly influence the jury by inviting a comparison with their legally unrelated past experiences or preconceptions.

### D. Exclude Argument, Evidence, or Questions as to the Identity, Presence, or Absence of Corporate Representatives, or Parties' Employees or Officers in the Courtroom (MIL No. 9)

The identity of Apple's corporate representatives, including Apple's CEO and other employees, and their courtroom presence or absence do not "ha[ve] any tendency to make a fact more or less probable than it [otherwise] would be," nor are those "fact[s] of consequence in determining the action."  Fed. R. Evid. 401.  And any reference to the absence of any particular Apple employee—such as Apple's CEO or other executives, engineers, or product developers whose names may appear on exhibits or otherwise be mentioned at trial—is only likely to inflame the jury based on irrelevant considerations.

First, Pinn should not be allowed to comment on the absence at trial of current and former Apple executives to whom Pinn's principal, Sean Kim, sent "cold call" emails prior to filing this lawsuit.  Mr. Kim sent emails to the following high ranking current Apple executives: Tim Cook (Apple's CEO), Adrien Perica (Apple's VP of Corporate Development, who reports to Tim Cook), Kevin Lynch (VP of Technology), and Omar Alwarid (Senior Director, Operations and Finance).  Mr. Kim also reached out to a former high-ranking Apple executive Johny Ive, who at the time was Apple's Chief Design Officer.  Pinn never even *attempted* to depose any of these individuals—it did not notice any of their depositions.  Thus, despite knowing since before the case was filed that Mr. Kim had emailed these current and former

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

executives, Pinn chose not to seek testimony from any of them. Notably, these executives manage a company with over 100,000 full-time employees in countries across the globe. By contrast, Pinn's President, Sean Kim, oversees a company that currently has *no* other employees. If Pinn were allowed to suggest or argue to the jury that the absence at trial of current and former Apple executives or other Apple employees, as compared to Mr. Kim's presence, somehow bears on the merits of the case, not only would it be wholly irrelevant to the claims at issue, but it would unfairly prejudice Apple. Accordingly, Pinn should be precluded from arguing, suggesting, or questioning their absence from the upcoming trial.

Second, this same preclusion should apply to any current or former Apple employee whose name appears in an exhibit introduced at the trial. Again, these would be Apple employees who Pinn was aware of through fact discovery, but who Pinn never attempted to depose.

Third, Pinn should not be allowed to comment on the absence of a *former* Apple employee, Dan Leiva, to whom Mr. Kim also sent a "cold call" email prior to filing the lawsuit, but who was deposed in this case. Mr. Leiva is currently an employee of eBay and has not worked for Apple for several years. He provided deposition testimony pursuant to Pinn's subpoena, and Pinn has designated some of his deposition testimony to play at the trial. Assuming he does not appear to testify at the trial, Pinn should be precluded from arguing, suggesting, or questioning his absence from the trial.

Further, since this trial will be occurring during a global pandemic, any comment or suggestion that the presence or absence of any employees (including commenting on an employee testifying remotely) bears on the merits of this case would introduce unfair prejudice and potentially confuse and mislead the jurors from what they should be focused on in rendering a verdict.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

### E. Exclude Unproduced and Untimely Disclosed Documents Requested During Discovery, Except Documents Being Offered for Impeachment (MIL No. 10)

With the exception of materials being used for purposes of impeachment, the parties should not be permitted to rely at trial on unproduced or otherwise untimely disclosed documents. A document is untimely disclosed if it was not produced during fact discovery, not used during depositions, or not cited in expert reports. Such materials should be excluded to ensure that a trial by ambush does not occur.

By contrast, Pinn has indicated that it believes documents are timely disclosed to the extent they are produced *or* included on the exhibit list. Thus, Pinn advocates a gaping exception that would swallow the general rule that documents must be produced during discovery. Under Pinn's view, simply adding a document to the exhibit list solves the problem of any late disclosure, and that document should be available as evidence at trial, even though Apple was precluded from taking discovery on Pinn's intent or understanding of the significance or purported relevance. However, adding a document to the exhibit list that otherwise has not been disclosed during discovery is insufficient, and for this reason, Apple was unable to agree to Pinn's motion *in limine* on a similar topic. Pinn has placed documents on its exhibit list that it produced for the first time when it placed them on the exhibit list (i.e., documents such as JTX-435-436, 490-494, 536-570), including documents from unrelated litigations as discussed in Apple's Motion *in Limine* No. 2. All such material should be excluded from trial.

## IV. CONCLUSION

Apple respectfully requests that the Court exclude the materials discussed herein.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1

2

3   Dated:  January 8, 2021                    FISH & RICHARDSON P.C.

4

5                                                   By: */s/ Christopher S. Marchese*

6                                                         Christopher S. Marchese (SBN 170239)
7                                                         marchese@fr.com
                                                         633 West Fifth Street, 26th Floor
8                                                         Los Angeles, CA 90071
                                                         Tel: (213) 533-4240
9                                                         Fax: (858) 678-5099

10
                                                         Seth M. Sproul (SBN 217711)
11                                                        sproul@fr.com
                                                         John W. Thornburgh (SBN 154627)
12                                                        thornburgh@fr.com
                                                         Tucker N. Terhufen (SBN 311038)
13                                                        terhufen@fr.com
                                                         FISH & RICHARDSON P.C.
14                                                        12860 El Camino Real, Suite 400
                                                         San Diego, CA 92130
15                                                        Tel: (858) 678-5070
                                                         Fax: (858) 678-5099
16

17
                                                         Joy B. Kete *(pro hac vice)*
18                                                        kete@fr.com
                                                         Fish & Richardson P.C.
19                                                        One Marina Park
                                                         Boston, MA 02210
20                                                        Tel: 617-542-5070
                                                         Fax: 617-542-8906
21

22                                                  Attorneys for Defendant APPLE INC.

23

24

25

26

27

28