RYAN E. HATCH (SBN 235577)
ryan@hatchlaw.com
Law Office of Ryan E. Hatch, P.C.
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5079

DAVID A. SKEELS (*pro hac vice*)
dskeels@whitakerchalk.com
WHITAKER CHALK SWINDLE &
SCHWARTZ PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Tel: 817-878-0500 / Fax: 817-878-0501

CABRACH J. CONNOR (*pro hac vice*)
cab@connorkudlaclee.com
JENNIFER TATUM LEE (*pro hac vice*)
jennifer@connorkudlaclee.com
KEVIN S. KUDLAC (*pro hac vice*)
kevin@connorkudlaclee.com
CONNOR KUDLAC LEE PLLC
609 Castle Ridge Road, Suite 450
Austin, Texas 78746
Tel: 512-777-1254 / Fax: 888-387-1134

Attorneys for Plaintiff PINN, INC.

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 533-4240 / Fax: (858) 678-5099

Seth M. Sproul (SBN 217711)
sproul@fr.com
John W. Thornburgh (SBN 154627)
thornburgh@fr.com
Tucker N. Terhufen (SBN 311038)
terhufen@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Joy B. Kete (*pro hac vice*)
kete@fr.com
FISH & RICHARDSON P.C.
One Marina Park
Boston, MA 02210
Tel: 617-542-5070 / Fax: 617-542-8906

Attorneys for Defendant Apple Inc.

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| PINN, INC.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>APPLE INC.,<br><br>　　　　　　　Defendant. | **Case No. 8:19-cv-1805-DOC-JDE**<br><br>**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**<br><br>District Judge: Hon. David O. Carter<br>Magistrate Judge: John D. Early<br>Tech. Special Master: David Keyzer<br><br>Hearing Date:  January 25, 2021<br>Time:　　　　　8:30 a.m. |

The parties jointly submit the following Proposed Final Pretrial Conference Order pursuant to the Court's Scheduling Order & Order Regarding Pretrial and Trial Procedures [ECF 72] and Appendix A of the Local Rules:

Following pretrial proceedings and pursuant to Fed. R. Civ. P. 16 and L.R. 16, IT IS ORDERED:

**1.** **The parties are:**

- Plaintiff Pinn, Inc. ("Pinn") and
- Defendant Apple Inc. ("Apple")

Each of these parties has been served and has appeared.  There are no other parties named in the pleadings.

The pleadings which raise the issues are:

- Pinn's Second Amended Complaint for Patent Infringement Against Apple [ECF 93][1]
- Apple's Answer, Affirmative Defenses, and Counterclaims to Pinn's Second Amended Complaint [ECF 104][2]
- Pinn's Answer to Apple's Counterclaims [ECF 112]

**2.** **Federal jurisdiction and venue are invoked upon the following grounds:**

- Federal jurisdiction is invoked upon the grounds that this is a case for alleged patent infringement and, therefore, the Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).  Venue in this Court is invoked pursuant to 28 U.S.C. § 1400(b).

---

[1] Pinn's Motion for Leave to File a Third Amended Complaint [ECF 301] is pending.

[2] Apple has opposed [ECF 308] Pinn's Motion for Leave to File a Third Amended Complaint.  Apple also has a pending motion to dismiss, without prejudice, its declaratory judgment counterclaims as to invalidity of the '491 patent [ECF 318], as to which the Court granted summary judgment of no infringement.

- The parties  agree that this Court has subject matter jurisdiction over this case and that venue is proper for this case.

**3.     The trial is estimated to take:**

- Pinn estimates the trial will take five days not including jury selection, opening statements, and closing arguments.
- Apple estimates the trial will take nine days including jury selection, opening statements, and closing arguments.

**4.     The trial is to be a jury trial.**

At least seven (7) days prior to the trial date, the parties shall file and serve by email, fax, or personal delivery: (a) proposed jury instructions as required by L.R. 51-1 and (b) any special questions requested to be asked on voir dire.

**Pinn's Position:**

Certain issues, however, are to be decided by the Court, including:

- Enhanced damages for willful infringement;
- Whether Pinn's case against Apple is exceptional;
- Attorneys' fees and costs;
- Injunctive relief;
- Pre- and post-judgment interest and costs; and
- Apple's affirmative defense of unclean hands.

**Apple's Position:**

As set forth in Apple's Memorandum of Contentions of Fact and Law (ECF 338), Apple does not seek bifurcation of any issues.  However, Apple agrees that the issues of enhanced damages, whether the case is exceptional, whether either party is entitled to attorneys' fees and costs, the issue of injunctive relief, and pre- and post-judgment interests and costs should be decided by the Court.  Because of the overlap of factual issues—including because many of the facts relevant to the unclean hands defense are also at issue with Apple's defense under 35 U.S.C. §§ 101 and/or 115, bear on Pinn's alleged ownership of and standing to assert the '066

2

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805

patent, and relate to non-willfulness—and to avoid redundant and inefficient duplication of proceedings, Apple's affirmative defense of unclean hands should not be bifurcated and should be presented to the jury.

**5.    The following facts are admitted and require no proof:**

1.     Seung Jin Kim is also known as Sean Kim. Sean Kim is the President of Plaintiff, Pinn Inc.

2.    U.S. Patent No. 10,455,066 is titled "Mobile System with Wireless Earbud" and may be referred to as "the '066 Patent."

3.    The '066 Patent issued on October 22, 2019.

4.    U.S. Patent No. 10,609,198 is titled "Personal Media System Including Base Station and Wireless Earbud and may be referred to as "the '198 patent."

5.    The '198 Patent issued on March 31, 2020.

6.    Pinn accuses Apple's first generation AirPods, second generation AirPods, and AirPods Pro of infringing the '066 and '198 patents. These products may be referred to as the "Accused Products" or the "Accused AirPods" throughout the case.

7.    Apple announced its first generation AirPods in September 2016 and released that product in December 2016.

8.    Apple released the second generation AirPods in March 2019.

9.    Apple released the AirPods Pro in October 2019.

10.    Apple has sold the Accused Products to customers in the United States.

11.    Apple Inc. is a corporation organized under the laws of the State of California, with a principal place of business at One Apple Park Way, Cupertino, California 95014.

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805

12.     Pinn, Inc. is a corporation organized under the laws of the State of California, with a place of business at 2522 Chambers Rd., Suite 100, Tustin, California 92780.

**Pinn's Position:**

The parties have reached agreement concerning certain stipulated facts. However, Pinn provided Apple with additional facts from Apple's answer, responses to Pinn's requests for admission and statements of undisputed facts from the summary judgment briefing to which it believes the parties can and should have stipulated in order to reduce the length of trial, increase jury understanding of the case, and streamline the presentation of evidence at trial.

Apple objected to the volume of the admissions and Pinn pared down its list. Apple still refused to stipulate to all but a handful of these previously agreed facts or discuss the method of presentation of this evidence.  Apple has continued to refuse to engage any further in discussions despite having weeks to review Pinn's proposed facts (including those set forth in Exhibit A).  Pinn proposes that Pinn's requests and Apple's admissions as set forth in Exhibit A, be read or provided to the jury and that the jury be provided a list of Apple internal product numbers for reference as the product numbers are used repeatedly in Apple's documents that will be exhibits in the case.

**Apple's Position:**

Pinn originally proposed 111 fact stipulations to Apple, and following a meet-and-confer, narrowed its list to 68 fact stipulations.  Apple's counsel spent hours reviewing each of these lists, cross-referencing them with the wording of the purported underlying support identified by Pinn, and selecting the proposals that Apple believes are appropriate for an agreed set of fact stipulations.  Apple rejected Pinn's other proposed fact stipulations for a variety of reasons, including that 111 (and even 68) stipulated facts are too many, they were argumentative and inaccurate, they were inconsistent with purported underlying support, they were

4

irrelevant, and/or they were confusing without the proper context, were compound and confusing, constituted legal conclusions, and/or would require significant edits by Apple.

Pinn now requests that the fact stipulations that Apple has not agreed to, as set forth in Exhibit A, be read to the jury as admissions.  Apple again objects.  This is improper, and Courts have held that the Federal Rules of Civil Procedure do not allow courts to dictate fact stipulations to which the parties have not voluntarily agreed.  *See, e.g.*, *J.F. Edwards Const. Co. v. Anderson Safeway Guard Rail Corp.*, 542 F.2d 1318, 1322 (7th Cir. 1976) ("Rule 16 of the Federal Rules of Civil Procedure does not authorize a court to force parties to stipulate to facts to which they will not voluntarily agree.").  Apple additionally notes that it did not receive a copy of Exhibit A until January 14, 2021, hours before this document was due to be filed, and therefore did not have an opportunity to consider Pinn's further narrowing of the disputed stipulated facts (which now appears to have only 32 fact stipulations, together with a chart).

With respect to Pinn's request to provide a list of Apple internal product numbers to the jury, Apple has explained that it would be willing to discuss this in the context of jury notebooks.  Apple has requested that the parties delay this discussion until they are ready to discuss the entire contents of the jury notebooks (not just one particular chart to insert).

**6.     The following facts, though stipulated, shall be without prejudice to any evidentiary objection:**

The parties have identified no such fact stipulations.

**7.     Claims and defenses to be presented at trial:**

**Pinn's Position:**

**A.     Plaintiff plans to pursue the following claims against defendant:**

**Claim 1:   Direct Infringement**: Apple has committed, and continues to commit, acts of direct infringement of claims 9, 10, 14, 30, and 34 of U.S. Patent

5

No. 10,455,066 ("the '066 Patent" and "'066 Asserted Claims") and claims 1, 3, 5, 21, and 25 of U.S. Patent No. 10,609,198 ("the '198 Patent" and "'198 Asserted Claims") (collectively "the Asserted Patents" and "the Asserted Claims") under 35 U.S.C. § 271(a).[3]   Apple literally infringes the Asserted Claims.  Pinn does not assert infringement under the doctrine of equivalents.

**Claim 2:  Indirect Infringement**: Apple has actively induced infringement, and continues to actively induce infringement, of the '066 Asserted Claims under 35 U.S.C. § 271(b), since the filing date of Pinn's First Amended Complaint, November 21, 2019. Apple has actively induced infringement, and continues to actively induce infringement, of the '198 Asserted Claims under 35 U.S.C. § 271(b), since the filing date of Pinn's Second Amended Complaint, April 17, 2020.

**Claim 3:  Willful Infringement**: Apple has willfully infringed, and continues to willfully infringe, the '066 Asserted Claims under 35 U.S.C. §284, since the filing date of Pinn's First Amended Complaint, November 21, 2019. Apple has willfully infringed, and continues to willfully infringe, the '198 Asserted Claims under 35 U.S.C. § 284, since the filing date of Pinn's Second Amended Complaint, April 17, 2020.

**Claim 4: Damages**: Pinn seeks to recover damages from Apple pursuant to 35 U.S.C. § 284 adequate to compensate it for Apple's infringement but in no event less than a reasonable royalty for Apple's unauthorized practice of the inventions claimed in the Asserted Patents.  Pinn also seeks to recover pre-judgment and post-judgment interest and costs pursuant to 35 U.S.C. § 284.

---

[3] By virtue of the Court's rulings (Dkt. 311) with respect to Apple's Motion for Partial Summary Judgment (Dkt. 214), Pinn's allegations of infringement of U.S. Patent No. 9,807,491 are no longer an issue for trial. Pinn, however reserves the right to raise infringement of the '491 Patent should Pinn prevail on any appeal related to the Court's rulings on summary judgment or claim construction.

6

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805

Pinn seeks to recover enhanced damages for Apple's post-filing willful infringement pursuant to 35 U.S.C. § 285. Pinn seeks an award of reasonable attorney's fees, costs, and expenses incurred in connection with this action because it is an exceptional case.

**Claim 5: Injunction or Other Equitable Relief**: Following a trial on the merits, and upon a finding of infringement, Pinn seeks a permanent injunction against future, ongoing infringement. Alternatively, if the Court declines such request, Pinn seeks an ongoing running royalty for the life of the infringed patents.

**Claim 6: Declaratory Judgment of No Invalidity in View of the Hankey Group Prior Art References**: Pinn seeks a declaration that the '066 Patent, the '198 Patent, and U.S. Patent No. 9,807,491 are not invalid in view of the Hankey Group prior art references under 35 U.S.C. § 102 and § 103.

**Claim 7: Exceptional Case**: Pinn seeks a declaration that this case is exceptional, along with a corresponding award of attorney fees pursuant to 35 U.S.C. § 285.

**B.    The elements required to establish Plaintiff's claims are:**

**Claim 1:   Direct Infringement**: In order to prove liability for direct infringement, Pinn must prove by a preponderance of the evidence that

(1) Pinn has the right to sue for infringement of the Asserted Patents;

(2) Apple made, used, sold, or offered for sale in the United States, or imported into the United States, a product meeting all the requirements of at least one Asserted Claim and

(3) Apple did so without Pinn's authorization during the time the relevant patent was in force.

35 U.S.C. § 271(a). *See* Federal Circuit Bar Association Model Jury Instructions, last edited May 2020, ("FCBA") No. B.3.1a.

**Claim 2:   Indirect infringement**: In order to prove Apple is liable for inducing infringement, Pinn must prove by a preponderance of the evidence that

7

(a) with respect to the '066 Patent, since the filing date of Pinn's First Amended Complaint, November 21, 2019, Apple induced another to directly infringe an '066 Asserted Claim, or (b) with respect to the '198 Patent, since the filing date of Pinn's Second Amended Complaint, April 17, 2020, Apple induced another to directly infringe a '198 Asserted Claim.

In order to be liable for inducing infringement, Pinn must prove by a preponderance of the evidence that

(1) the acts carried out by Apple's customers or end users of the accused products directly infringe an Asserted Claim;

(2) Apple took action during the time the Asserted Patents were in force that was intended to cause, and led to, the infringing acts by Apple's customers or end users; and

(3) Apple was aware of the Asserted Patents and knew that the acts, if taken, would constitute infringement of the Asserted Patents or that Apple believed there was a high probability that the acts by its customers and end users would infringe an Asserted Patent, and Apple took deliberate steps to avoid learning of that infringement.

*See* FCBA B.3.2.

**Claim 3: Willful Infringement**: In order to show that Apple's post-filing infringement is willful, Pinn must prove by a preponderance of the evidence that

(1) Apple knew of the Asserted Patents and

(2) acted despite a risk of infringement that was either known or so obvious that it should have been known to Apple.

*See* FCBA B.3.10.[4]

---

[4] **Defendant's Position:**   Pinn's recitation of the legal elements for willful infringement is incomplete.   The full standard is addressed below in Apple's discussion of its affirmative defense regarding no willfulness.

**Claim 4: Damages**: If Apple is found to infringe one or more of the Asserted Claims, Pinn is entitled to at least a reasonably royalty to compensate it for that infringement.  Pinn must establish the amount of its damages by a preponderance of the evidence.

While Pinn is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty.  Pinn seeks a reasonable royalty, which is defined as the amount of money Pinn and Apple would have agreed upon as a fee for using the invention at a hypothetical negotiation taking place at a time just prior to when infringement first began.  *See* FCBA B.5.1, 5.6.

If Pinn proves that Apple's post-filing infringement was willful, the Court may award increased damages of up to three times the amount of damages found or assessed.  35 U.S.C. § 284; *Halo Elecs., v. Pulse Elects., Inc.,* 136 S. Ct. 1923, 1928-29 (2016).[5]

If the Court determines that this is an exceptional case, then it may award reasonable attorney fees to the prevailing party.  35 U.S.C. § 285; *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 557 (2014).

If Pinn is the prevailing party in this case, then Pinn is entitled to interest and costs as fixed by the Court.  35 U.S.C. § 284; Fed. R. Civ. P. 54(d).[6]

---

[5] **Defendant's Position:**  Pinn's discussion of enhanced damages ignores the *Read v. Portec* factors, which are discussed below in Apple's discussion of its affirmative defense of no willfulness.

**Pinn's Position:** *Read v. Portec* provides factors for consideration and not necessary elements of proof.  Such factors can be addressed in jury instructions.

[6] **Defendant's Position:**  Apple notes that Pinn's recitation of legal elements for damages includes several issues that will not be decided by the jury.  Issues including enhanced damages, post-judgement interest, costs, injunctive relief, and any ongoing royalty will be decided, if at all, by the Court, and are not issues for the jury.

**Claim 5: Injunction or Other Equitable Relief**: To prove entitlement to an injunction, Pinn must prove that Apple has infringed at least one Asserted Claim and further prove:

(1) that it has suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

If the Court declines to grant injunctive relief, it may exercise its equitable authority to award other prospective relief, including an ongoing running royalty for the life of the infringed patent(s). 35 U.S.C. § 283 (2015); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 733 F.3d 1369, 1375, 1379 (Fed. Cir. 2013).[7]

**Claim 6: Declaratory Judgment of No Invalidity in View of the Hankey Group Prior Art References**: Apple bears the burden to prove invalidity by clear and convincing evidence.[8]

**Claim 7: Exceptional Case**: To prove entitlement to a declaration that this is an exceptional case and a corresponding award of attorneys' fees, Pinn, as a prevailing party, must prove by a preponderance of the evidence that:

(1)     this case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the

---

[7] **Defendant's Position:**  Apple notes that this is an equitable issue to be decided, if at all, by the Court, and is not an issue for the jury.

[8] **Defendant's Position:**  The relevant legal elements are addressed in Apple's discussion of its counterclaims and affirmative defenses of invalidity.

governing law and the facts of the case) or the unreasonable manner in which the case was litigated.[9]

*Octane Fitness v. ICON Health & Fitness,* 134 S. Ct. 1749, 1756, 1758 (2014).

**C.     In brief, the key evidence Plaintiff relies on for each of the claims is:**

**Claim 1: Direct Infringement**

In general, in support of its infringement claims, Pinn will present at trial, among other evidence, the testimony of Sean Kim, Pinn's President and the sole inventor of the patented inventions, along with testimony from Apple employees, third parties (which may include Mr. Mincheol Kim, an attorney involved in the prosecution of the Asserted Patents), and Pinn's experts, including Dr. V. Thomas Rhyne, III, Ms. Julie Workman, and Mr. Justin Petro.  Along with the testimony of these witnesses, Pinn will present documents supporting and supplementing the testimony, including the Asserted Patents and their file histories, which include the provisional applications leading to the Asserted Patents, and documents showing how end users and Apple customers use the accused products in an infringing manner and as intended and instructed by Apple.  Additional evidence supporting Pinn's infringement claims include physical samples of the accused AirPods products, source code for the accused AirPods products, instructions and advertising for the accused AirPods products, and surveys, customer support, and technical design and development documents provided by Apple showing the structure, function, and operation of the accused AirPods.

---

[9] **Defendant's Position:**  Apple objects to this characterization as it understates the quanta of evidence required to find a case exceptional, including its use of "simply" as improperly minimizing this evidentiary burden.

**Pinn's Position:** Pinn has properly stated the binding precedent from the Supreme Court.  Apple does not dispute that the evidentiary burden is, as Pinn stated, "preponderance of the evidence."  Apple seeks, improperly, to burden Pinn with an unstated "quanta of evidence" burden for which it cites no support.

**Element 1 (right to sue)**

- The Asserted Patents and their file histories (including the provisional applications and PCT filing) (Exhibits 1 through 9);
- Testimony of Sean Kim

**Element 2 (act of infringement)**

- The Asserted Patents (Exhibits 2 and 3);
- The Court's Claim Constructions;
- Technical specification, circuit diagrams, block diagrams, presentations, correspondence, instructions, advertising, user manuals, web pages, and photographs evidencing the structure, function, and operation of the Accused Products (Exhibits 116-125, 147-150, 157, 159-168, 212, 242-247, 255, 319, 348-357, 406, 409-421, 424-434, 437-453, 455, 457-461, 484, 488, 489, 511, 513, 516, 517, 534, 658, 665, 670, 674, 677, 716, 736, 783, 793, 794, 806, 835, 856, 882)
- Physical examples of the Accused Products and user manuals (Exhibits 407, 408, 470, 471, 1104, 1105)
- Apple Discovery Responses (Exhibits 462, 463)
- Source Code for the Accused Products (Exhibits 423, 459)
- Apple patents relating to the Accused Products (Exhibits 115, 216);
- Testimony of Apple employee Kurt Stiehl;
- Testimony of Apple's 30(b)(6) witness Jonathan Adams;
- Testimony of Apple's 30(b)(6) witness Jeff Terlizzi;
- Testimony of Apple's 30(b)(6) witness Rob Watson;
- Expert testimony of Dr. V. Thomas Rhyne, III;
- Expert testimony of Ms. Julie Workman;
- Expert testimony of Mr. Justin Petro

12

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805

- Any other testimony and documentary evidence that supports Apple's infringement.

**Element 3 (without authorization)**

- Testimony of Sean Kim;

**Claim 2: Indirect Infringement**

In general, in support of its claim of indirect infringement, Pinn will rely on the evidence cited above for proof of infringement by the Accused Products as well as instructions for their use published and provided by Apple. Pinn will rely on its Second Amended Complaint against Apple to show that Apple was aware of the Asserted Patents and knew that the acts, if taken, would constitute infringement of the Asserted Patents or that Apple believed there was a high probability that the acts by its customers would infringe an Asserted Patent and Apple took deliberate steps to avoid learning of that infringement.

**Element 1 (acts by customers or end users infringe)**

- *See* Claim 1, Element 2 above.

**Element 2 (acts by Apple intended to cause direct infringement)**

- Instructions, advertising, user manuals, web pages, and photographs evidencing Apple's instructions and communications to customers and end users about the structure, function, and operation of the Accused Products (Exhibits 409-418, 424-434, 447-453, 484, 517)

- Physical examples of the Accused Products and user manuals (Exhibits 407, 408, 470, 471)

- Testimony of Apple employee Kurt Stiehl;

- Testimony of Apple's 30(b)(6) witness Jonathan Adams;

- Testimony of Apple's 30(b)(6) witness Jeff Terlizzi;

- Testimony of Apple's 30(b)(6) witness Rob Watson;

- Expert testimony of Dr. V. Thomas Rhyne, III;

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805

- Expert testimony of Ms. Julie Workman;
- Expert testimony of Mr. Justin Petro
- Any other testimony and documentary evidence that supports Apple's indirect infringement.

**Element 3 (Apple knew acts would constitute infringement)**

- Pinn's Second Amended Complaint for Patent Infringement Against Apple (Exhibit 529);

**Claim 3: Willful Infringement**

In general, in support of its willful infringement claims, Pinn will present at trial, among other evidence, the testimony of Sean Kim, the inventor of the Asserted Patents and Pinn's President, along with testimony from Apple employees and other documentary support, such as correspondence from Sean Kim to various Apple employees.

**Element 1 (Apple knowledge of Asserted Patents)**

- Pinn's Second Amended Complaint for Patent Infringement Against Apple (Exhibit 529);
- Correspondence between Sean Kim and Apple (Exhibits 28, 223-228)
- Testimony of Sean Kim
- Testimony of Jayna Whitt and related exhibits (Exhibits 196, 197)
- Apple Discovery Responses, including responses to Common Interrogatory Nos. 8, 13, and 14 and responses to Specific Interrogatory Nos. 1 and 2, and corresponding verification pages (e.g., Exhibits 169, 170, 441)

**Element 2 (Infringement by Apple was intentional)**

- *See* Claim 1, Element 2 above.

14

- Testimony of Jayna Whitt and related exhibits (Exhibits 196, 197)

- Apple Discovery Responses, including responses to Common Interrogatory Nos. 8, 13, and 14 and responses to Specific Interrogatory Nos. 1 and 2, and corresponding verification pages (e.g., Exhibits 169, 170, 441)

**Claim 4: Damages**

In general, in support of its damages claims, Pinn will present at trial: the evidence supporting its infringement claims; testimony from Sean Kim; testimony from Pinn's experts, Mr. Justin Petro (including testimony about the value of the inventions), Dr. Stephen Magee, and Ms. Keiko Hikino; documents supporting the above-referenced testimony, including agreements in which Apple or Pinn are a party to or a beneficiary of such agreement, documents reflecting the sales volume – in both units and dollars – of the Accused Products, and documents reflecting the profitability of the Accused Products.

**Element 1 (amount of damages)**

Key evidence may include the following:

- The Asserted Patents (Exhibits 2 and 3)

- Testimony of Sean Kim

- Testimony of Ms. Keiko Hikino, including summary charts and demonstratives in support thereof (*see, e.g.*, Exhibits 359, 360, 362, 363, 364, 365, 367, 368)

- Testimony of Dr. Stephen Magee, including summary charts and demonstratives in support thereof (*see, e.g.*, Exhibits 359, 360, 362, 363, 364, 365, 367, 368)

- Testimony of Mr. Justin Petro

- Apple Financial Documents (Exhibits 189, 191, 195, 288-294)

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805

- Documents related to Apple's licensing practices and licenses (Exhibits 200-203, 302-303)
- Documents related to Pinn's enforcement of its IP rights (Exhibit 239, 240, 372, 373, 374, 375, 368, 369, 370, 371)
- Apple Discovery Responses, including responses to Common Interrogatory Nos. 5, 6, 10, and 13 and corresponding verification pages (e.g., Exhibits 169, 170, 441)
- Any other testimony and documentary evidence that supports Pinn's damages.

### Claim 5: Injunction or Other Equitable Relief

In general, in support of its request for a permanent injunction, Pinn will present evidence at trial and/or in post-verdict proceedings (1) that it has suffered an irreparable injury in the form of, for example, loss of goodwill, damage to reputation, and/or loss of business opportunities; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury, because, for example, the above-referenced irreparable injuries are inherently difficult to quantify; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted, in view of, for example, the parties' respective sizes, products, and revenue sources; and (4) that the public interest would not be disserved by a permanent injunction, because, for example, it serves the public interest to enforce the patent laws of the United States and to protect the patentee's rights, including the right to exclude.

### Element 1 (irreparable injury to Pinn)

Regarding irreparable harm suffered by Pinn, Pinn will present evidence – e.g., through testimony from Sean Kim and Mincheol Kim – of Pinn's commercial efforts and participation in the wireless earbud market, Sean Kim's diligence in seeking patent protection and disclosing his inventions to the public, and Apple's market share and productization tactics. Mr. Kim will also provide testimony

16

evidencing damage to Pinn's reputation as an innovator and Pinn's loss of business opportunities related thereto, e.g., potential business opportunities with Sony and Acer, as well as evidence of Pinn's brand recognition (or lack thereof). Supporting evidence may include documents and videos reflecting Pinn's Kickstarter campaign and related marketing efforts, Pinn's patents and file histories, and documents reflecting Apple's market share in the wireless earbud market.

### Element 2 (remedies at law are inadequate)

Regarding inadequate remedies at law, Pinn will present evidence – e.g., through testimony from Sean Kim, Ms. Keiko Hikino, and Dr. Stephen Magee – that the irreparable harm suffered by Pinn is inherently difficult to quantify or value and that Apple's infringement has proved to be profitable for Apple. Supporting evidence may include documents reflecting Apple's profitability, e.g., Exhibits 189, 191, and 195, as well as Exhibits 359, 360, 364, 365, and 368.

### Element 3 (balance of hardships)

Regarding the balance of the hardships, Pinn will present evidence – e.g., through testimony from Sean Kim, Ms. Hikino, and Dr. Magee – regarding the parties' respective sizes, products, and revenue sources to show that Pinn has suffered past harm and will suffer future harm – in a way that would cause Pinn to suffer undue hardship if it is unable to exclude Apple from practicing Pinn's patented inventions by way of an injunction.

### Element 4 (public interest)

Regarding the public interest factor, Pinn will present evidence – e.g., through testimony from Sean Kim, Ms. Hikino, Dr. Magee, or Mincheol Kim – that the public has an interest in upholding patent rights and that the grant of injunction would strike a proper balance between protecting Pinn's patent rights (including the right to exclude) and protecting the public from the injunction's adverse effects, if any.

**Claim 6: Declaratory Judgment of No Invalidity in View of the Hankey Group Prior Art References**

In support of its claim for declaratory judgment of no invalidity in view of the specific Hankey Group references asserted by Apple, Pinn will present evidence that the asserted claims are neither anticipated by nor rendered obvious in view of the Hankey Group prior art asserted references (a trio of Apple patents relating to an old Apple product circa late 2000s). Specific evidence will include the Hankey Group references, agreements and specifications related to the prior art, testimony of the inventor Sean Kim, testimony from Apple witnesses, and the testimony of Pinn's experts Dr. Scott Nettles, Ms. Julie Workman, and Mr. Justin Petro.

**Element 1 (Apple bears burden)**

- The Asserted Patents (Exhibits 2 and 3);
- Prior art asserted by Apple, including, for example, patents, publications, user manuals, photographs, and physical examples of prior art devices and specifications and agreements relating thereto (*See e.g.,* Exhibits 300, 308-310, 314, 405, 466-469, 472-476, 478-482, 485);
- Testimony of Sean Kim;
- Testimony of Dr. Scott Nettles;
- Testimony of Ms. Julie Workman;
- Testimony of Mr. Justin Petro.

**Claim 7: Exceptional Case**

**Element 1 (this case stands out from others)**

In general, in support of its request for declaration that this case is exceptional, Pinn will rely on the same evidence in support of its claims of infringement, willful infringement, and for injunctive relief. Pinn will also rely on evidence of Apple's efforts, or lack thereof, to design around the Asserted Patents

18

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805

or otherwise avoid infringement, Apple's litigation tactics and the consequent burden imposed on Pinn, and Apple's parallel proceedings in the PTAB challenging Pinn's patents.

### D.     Plaintiff's Position on Apple's Unclean Hands, Ownership and Inventorship

**Pinn's Position Regarding Apple's Burden on its Affirmative Defense of Unclean Hands**:[10]

Apple below asserts that Pinn has unclean hands by virtue of the circumstances and actions surrounding the correction of inventorship as to the '066 Patent. Pinn does not agree with Apple's incomplete recitation of the applicable legal standard or its erroneous recitation of the applicable burden of proof. A determination of unclean hands may only be reached when "misconduct" of a party

---

[10] **Apple's Position:** Pinn is incorrect in several respects regarding the legal standard for unclean hands.  First, as detailed in Apple's opposition to Pinn's motion for summary judgment regarding affirmative defenses (ECF 258), unclean hands and inequitable conduct are *separate* defenses.  Apple is not required to demonstrate inequitable conduct by Pinn to prevail on its unclean hands defense.  Apple addresses the correct legal standard for unclean hands when outlining the legal standards for its defenses below.  Second, Pinn argued on summary judgment that Pinn's conduct is not sufficiently related to the claims Pinn has asserted against Apple, and also that Pinn's conduct has not injured Apple.  Apple addressed this issue extensively in its briefing, and the Court ultimately ruled in Apple's favor by allowing this defense to proceed to trial.  Third, because the removed inventors are not interested parties in the outcome of this litigation, there is no requirement for corroborating evidence for their testimony.  Regardless, as outlined in Apple's summary judgment opposition, there is in fact extensive corroborating evidence here, including emails exchanged between Mr. Kim and Speck regarding the removed inventors, the listing of the removed inventors on the provisional application that led to the '066 patent, and prosecution documents that continue to list them as inventors . Finally, Apple disagrees that the applicable burden of proof for unclean hands is clear and convincing evidence; as set forth below, it is preponderance of the evidence.  Apple submits that this issue should be resolved through jury instructions.

seeking relief "has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation," i.e., "for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court." *Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018), quoting *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 54 S. Ct. 146, 78 L. Ed. 293, 1934 Dec. Comm'r Pat. 639 (1933).When an unclean hands defense relates to conduct that occurs during patent prosecution (as it does here), the Federal Circuit requires a showing of "egregious misconduct" on a par with "perjury, the manufacture of false evidence, and the suppression of evidence." *Therasense, Inc. v. Becton, Dickinson and Co*., 649 F.3d 1276, 1287, 1293 (Fed. Cir. 2011) (en banc). The test for this species of unclean hands requires Apple to show a "deliberately planned and carefully executed scheme[] to defraud not only the PTO but also the courts." *Id.* (internal quotation omitted) (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co*., 322 U.S. 238 (1944), overruled on other grounds by *Standard Oil Co. v. United States*, 429 U.S. 17 (1976)). The Court must apply a clear and convincing evidence standard to determine whether Apple would be entitled to relief based on any allegations of unclean hands or inequitable conduct.[11] *Chrimar Sys. v. Cisco Sys*., No. 13-cv-01300-JSW, 2019 U.S. Dist. LEXIS 229938, at *28 (N.D. Cal. Dec. 17, 2019), citing *Therasense*, 649 F.3d at 1287. Further, Apple bears the burden to overcome the presumption that the inventor named on the '066 Patent is the correct inventor, and the inventive contribution and conception of the alleged (but unnamed) joint

---

[11] All or part of Apple's so-called "unclean hands" allegations are really inequitable conduct allegations in disguise. Pinn does not consent to trying Apple's fraud-based allegations of unclean hands or Apple's disguised claim of inequitable conduct, because, among other reasons, Apple failed to plead either defense with the specificity required by Fed. R. Civ. P. 9(b), and because Apple effectively withdrew its unclean hands theory based on alleged prosecution misconduct. Dkt. 258 at 13.

20
[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805

inventor must be proven by clear and convincing evidence. *Shum v. Intel Corp.*, 633 F.3d 1067, 1083 (Fed. Cir. 2010). This standard requires corroborating evidence of the co-inventor's testimony. *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998).

**Pinn's Position Regarding Apple's Alleged New Defense of Lack of Consideration:**[12]

Apple's attempt to raise a new defense—lack of consideration for the Speck employees' assignment of patent rights to Pinn—should be rejected because Apple was not a party to the assignment agreement and never pleaded the defense or even articulated it till now. *See, e.g., Newport Yacht Basin Ass'n of Condo. Owners v.*

---

[12] **Apple's Position:** First, lack of consideration for the removed inventors' assignment of patent rights is ***not*** a new defense in this case. Indeed, it is not a defense at all. Pinn bears the burden of proving that it owns the Asserted Patents, which gives it the right to sue for patent infringement. *See, supra*, Section 7.B (Pinn asserting that the right to sue is one of the required elements of patent infringement); *see also Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 (Fed. Cir. 2009) ("In order to seek damages for patent infringement of a patent, a party must have standing at the inception of the lawsuit"); *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1249-50 (Fed. Cir. 2000) ("A party that has been granted all substantial rights under the patent … is considered to have legal title, and therefore standing."). Because Pinn cannot carry its burden at least for the '066 patent, it has a standing problem, which cannot be waived. *See Ass'n of Christian Schools Intern. v. Stearns*, 678 F. Supp. 2d 980, 984 (C.D. Cal. 2008) ("Generally, standing cannot be waived if based on constitutional requirements imposed by Article III."). Second, Apple ***did*** plead an affirmative defense of non-infringement, which includes that Pinn failed to satisfy the elements required to sue for infringement, including ownership. (ECF 104 at 38.) Third, Pinn points to contracts cases that are a distraction; this is not a matter of contract law, but an issue of standing. Finally, Pinn has been on notice regarding the lack of consideration issue for months. Apple questioned the removed inventors regarding this issue during their depositions—which Pinn's counsel defended—and at least one inventor (Mr. Pascual) testified that he was not provided with good and valuable consideration when he assigned his rights associated with the '937 Application to Pinn. (ECF 258 at 4, 19.) Likewise, another inventor that Pinn removed from the '066 patent, Mr. Mishra, testified that he could not recall receiving any consideration.

*Supreme Nw., Inc.*, 168 Wash. App. 56, 80, 277 P.3d 18, 32 (2012) ("a stranger to a contract may not challenge the contract's validity based on inadequate consideration . . . this defense to a contract is personal to the contracting parties") (citing *Spanish Oaks, Inc. v. Hy-Vee, Inc.*, 265 Neb. 133, 138, 655 N.W.2d 390 (2003) ("'[T]he fact that a third party would be better off if a contract were unenforceable does not give him standing to sue to void the contract.'" (quoting *In re Vic Supply Co.*, 227 F.3d 928 (7th Cir. 2000)))).  Apple's Answer, Dkt. 104.

**Pinn's Position Regarding Apple's New Defenses of Lack of Ownership and Incorrect Ownership under 35 U.S.C. § 115:[13]**

Apple's attempt to inject the defense of lack of ownership of the '066 and '198 Patents into this case should be rejected.  Apple has not asserted lack of ownership as an affirmative defense and has not otherwise alleged in a pleading, discovery response, or expert report that Pinn is not the sole owner of the '066 Patent or '198 Patent and, accordingly, Apple should not be permitted to raise that claim as a defense here.  Pinn recognizes that it bears the burden of proving that it possesses the right to sue for infringement of the '066 and '198 Patents to entitle Pinn to an award of damages for Apple's infringement.

Apple's attempt to include the defense of incorrect inventorship pursuant to 35 U.S.C. § 115 of the '066 Patent and '198 Patent should be rejected.  Apple has not asserted incorrect inventorship as an affirmative defense and has not otherwise alleged in a pleading or expert report that the '066 Patent or '198 Patent is invalid

---

[13] **Apple's Position:** First, lack of ownership is not an affirmative defense that must be plead.  Pinn bears the burden of proving that it owns the Asserted Patents, which gives it the right to sue for patent infringement.  *See, supra*, fn. 12.  Second, Apple *did* plead an affirmative defense of non-infringement, which includes that Pinn failed to satisfy the elements required to sue for infringement, including ownership.  (ECF 104 at 38.)  Third, Pinn is wrong that Apple has not asserted in this case that the Asserted Patents are invalid and that they have incorrect inventorship under 35 U.S.C. § 115.  Apple's invalidity contentions laid out this theory in detail in August 2020.  (*See* Exhibit F (Apple's Supplemental Invalidity Contentions) at 34-35.)

because Seung Jin Kim, the sole named inventor, is not the sole inventor of the '066 Patent or '198 Patent and, accordingly, Apple should not be permitted to raise that claim as a defense here.  *See* Pleadings: Dkt. 104 at 50: "One or more claims of the '066 patent fails to meet the conditions of patentability and/or otherwise comply with one or more provisions of 35 U.S.C. §§ 101, et seq., including §§ 101, 102, 103, and/or 112."); Dkt. 104 at 55-56 (quote for '198 patent same as '066); discovery response (*see* Apple's Response to Common Interrogatory No. 9, attached hereto as Exhibit E); expert report (*see* Aug. 14, 2020, Invalidity Report of Jonathan Wells at 207-208, in which 101 challenge does not mention ownership; Report does not mention § 115).  Admittedly, one day before the close of fact discovery, Apple served a supplement to its invalidity contentions to provide two sentences setting forth the factual support for claiming, belatedly, that Sean Kim is not the sole inventor of the '066 Patent and referencing 35 U.S.C. § 115.  Apple made no mention of the '198 Patent in that supplement.

**Apple's Position:**

    **A.**    **Defendant plans to pursue the following counterclaims and affirmative defenses:[14]**

        **Declaration of Non-Infringement of the '066 Patent**

Apple does not now infringe and has never infringed any asserted claim of the '066 patent, either directly or indirectly.  Pinn is not making any claims of infringement under the doctrine of equivalents and has not addressed such infringement or any defenses to the doctrine equivalents, including ensnarement, vitiation, or prosecution history estoppel.  Pinn is not sole owner of the '066 patent and does not have the right to sue for infringement.

---

[14] Since the Court held on summary judgment that Apple does not infringe the '491 patent, Apple does not address it here or elsewhere in this document.  Apple reserves the right to respond to any allegation of infringement of the '491 patent should it come back into the case.

### Declaration of Invalidity of the '066 Patent

The asserted claims of the '066 patent are invalid under at least 35 U.S.C. §§ 101, 102, 103, 112, and 115.

### Declaration of Non-Infringement of the '198 Patent

Apple does not now infringe and has never infringed any asserted claim of the '198 patent, either directly or indirectly.  Pinn is not making any claims of infringement under the doctrine of equivalents and has not addressed such infringement or any defenses to the doctrine equivalents, including ensnarement, vitiation, or prosecution history estoppel.  In order to make a claim for infringement, Pinn must carry its burden to prove ownership of the '198 patent and show that it has the right to sue.

### Declaration of Invalidity of the '198 Patent

The asserted claims of the '198 patent are invalid under at least 35 U.S.C. §§ 102, 103, 112, and 115.[15]

### Affirmative Defense of Patent Non-Infringement

Apple does not now infringe and has never infringed any asserted claim of the '066 or '198 patents, either directly or indirectly.  Pinn is not making any claims of infringement under the doctrine of equivalents and has not addressed such infringement or any defenses to the doctrine equivalents, including ensnarement, vitiation, or prosecution history estoppel.  Pinn is not sole owner of the asserted patents and does not have the right to sue for infringement.

### Affirmative Defense of Patent Invalidity

---

[15] **Pinn's Position:** Apple did not properly and timely plead or assert invalidity under 35 U.S.C. §115.  See Section D above.

**Apple's Position:** As detailed in Apple's response to Pinn's Section D above, Apple disagrees with the same assertions made by Pinn in footnotes 15-21, 29, 31-35.  *See, supra,* fns. 10, 12-13.  Apple incorporates its response in Section D, footnotes 10-12, to each of these footnotes.

The asserted claims of the '066 and '198 patents are invalid under at least 35 U.S.C. §§ 101, 102, 103, 112, and 115.[16]

### Affirmative Defense of Unclean Hands

Pinn's scheme to manipulate inventorship and ownership of the '066 patent constitutes unclean hands and warrants dismissal of all claims against Apple.[17]

### Affirmative Defense of No Injunctive Relief

Pinn's claim for injunctive relief is barred because there exists an adequate remedy at law, and Pinn's claims otherwise fail to meet the requirements for such relief.

### Affirmative Defense of No Willfulness

Pinn will be unable to establish willful infringement.

### Affirmative Defense of Not Exceptional

Pinn will be unable to establish that Pinn's case against Apple is exceptional under 35 U.S.C. § 285 even if Pinn prevails on the merits.  On the other hand, Pinn's requirement that Apple mount a defense of this matter by filing and prosecuting the present lawsuit is exceptional under 35 U.S.C. § 285.

**B.     The elements required to establish Defendant's counterclaims and affirmative defenses are:**

**1.     Non-Infringement of the Asserted Patents**

Apple does not have any burden with respect to its non-infringement defense, and therefore there are no elements to prove.  Plaintiffs always bear the burden of proving infringement for each and every accused product, including

---

[16] **Pinn's Position:** Apple did not properly and timely plead or assert invalidity under 35 U.S.C. §115.  See Section D above.

[17] **Pinn's Position:** Apple has not plead nor asserted any theory that the '198 Patent claims should be dismissed, rendered invalid, rendered unenforceable pursuant to Apple's unclean hands defense. See also Section D, for Pinn's position regarding Apple's burden on its unclean hands defense.

25

separately for each-and-very limitation of each-and-every asserted claim. *See* 35 U.S.C. § 271(a); *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1308 (Fed. Cir. 2002). *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1357 (Fed. Cir. 2005); 2018 AIPLA Model Patent Jury Instructions at 3.0.

Pinn also bears the burden to prove ownership of the '066 and '198 patents.[18] *Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.*, 587 F.3d 1375 (Fed. Cir. 2009). There can be no liability for Apple if Pinn does not prove that it has the right to sue for infringement.

## 2. Invalidity of the Asserted Patents

### a. 35 U.S.C §§ 101 and/or 115[19] – Improper Inventorship of the '066 Patent

Invalidity under 35 U.S.C. §§ 101 and/or 115 requires proof of the following:

(1) By clear and convincing evidence, that at least one inventor who contributed to one or more of the claims of an asserted patent is not named on the patent.

*See* 35 U.S.C. § 115(a); 35 U.S.C. § 101; MPEP 2157.[20]

### b. 35 U.S.C. § 112(a) – Written Description & Enablement

Invalidity under 35 U.S.C. § 112 requires proof of the following:

---

[18] **Pinn's Position:** Although Pinn does own the Asserted Patents, it need not prove ownership of the patents. Pinn must prove that it has the right to sue for infringement and recover damages, which it possesses by virtue of ownership of the Asserted Patents.

[19] **Pinn's Position:** Apple did not properly and timely plead or assert improper inventorship under 35 U.S.C. §115. See Section D above.

[20] **Pinn's Position:** Apple did not properly and timely assert improper inventorship under MPEP 2157 or properly and timely plead or assert improper inventorship under 35 U.S.C. §115. See Section D above.

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805

(1) By clear and convincing evidence, a person having ordinary skill in the art reading the original patent applications would have recognized that it does not describe the full scope of the asserted claims of the asserted patents and thus that the named inventor(s) did not actually possess the full scope of the asserted claims at the time of the filing of these applications; or

(2) By clear and convincing evidence, a person having ordinary skill in the art reading Pinn patents in suit would have recognized that they do not describes the full scope of the asserted claims of the asserted patents and that the named inventor(s) did not actually possess the full scope of the claimed inventions; or

(3) By clear and convincing evidence, a person having ordinary skill in the art reading the original patent application would not have been enabled at the time to make and use the full scope of the invention.

*See, e.g.*, 35 U.S.C. § 112(a); Federal Circuit Bar Association Model Jury Instructions, B.4.2a; *Ariad Pharms. Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1344-46 (Fed. Cir. 2010); *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1369 (Fed. Cir. 2014); *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1337 (Fed. Cir. 2005).

### c.   35 U.S.C. § 102 – Anticipation

Invalidity under 35 U.S.C. § 102 requires proof of the following:

(1) By clear and convincing evidence, the claimed subject matter of one or more of the asserted claims has been made, used, or disclosed before.  Anticipation must be determined on a claim by claim basis.

(2) By clear and convincing evidence, that Pinn's asserted patents are not entitled to claim priority to any provisional application because the earlier provisional applications do not comply with the written description requirement of 35 USC Sec. 112(a).  Once Apple makes a prima facie case that Pinn is not entitled to claim priority, Pinn bears the burden to show its patents are entitled to their claimed priority date.

(3)   By clear and convincing evidence, that certain of Apple's prior art patents are entitled to claim priority based on earlier filed provisional applications.

*See, e.g.*, Federal Circuit Bar Association Model Jury Instructions, B.4.3b-1; *Ivera Med. Corp. v. Hospira, Inc.*, 801 F.3d 1336, 1344 (Fed. Cir. 2015); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*, 229 F.3d 1120, 1129 (Fed. Cir. 2000); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1389 (Fed. Cir. 2008).

### d.   35 U.S.C. § 103 – Obviousness

Invalidity under 35 U.S.C. § 103 requires proof of the following:

(1) By clear and convincing evidence, the subject matter of one or more of the asserted claims would have been obvious to a person having ordinary skill in the art at the time of the invention; or

(2) A person having ordinary skill in the art would have been motivated to combine the teachings of prior art references to achieve the subject matter of one or more of the asserted claims, and would have had a reasonable expectation of success in doing so.

(3)   That secondary considerations relating to the claimed subject matter, including of the commercial success of the Pinn product, long felt and unresolved need, failure of others, skepticism by experts, praise for Pinn's invention, teaching away, and copying, do not support or suggest the non-obviousness of the asserted claims.

*See, e.g.*, Federal Circuit Bar Association Model Jury Instructions, B.4.3c; *Ivera Med. Corp. v. Hospira, Inc.*, 801 F.3d 1336, 1344 (Fed. Cir. 2015); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*, 229 F.3d 1120, 1129 (Fed. Cir. 2000).

### 3.   Unclean Hands

Unclean hands requires proof of the following:[21]

(1) By a preponderance of the evidence, any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct.

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814-815 (1945).  *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1293 (Fed. Cir. 2011) (*en banc*); *Kelley Blue Book v. Car–Smarts, Inc.*, 802 F. Supp. 278, 292 (C.D. Cal. 1992) (applying a preponderance of the evidence standard to unclean hands).

### 4.      No Injunctive Relief

Pinn bears the burden of proving entitlement to injunctive relief. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  To obtain an injunction, Pinn must prove the following:

(1) it has suffered an irreparable injury;

(2) that remedies at law, such as monetary damages, are inadequate to compensate for its injury;

(3) that, considering the balance of hardships between the parties, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction. *Id.*

### 5.      No Willfulness.

Willful infringement requires proof of the following by Pinn:[22]

(1) By a preponderance of evidence that Apple knew about the Pinn asserted patents;

---

[21] **Pinn's Position:** Pinn disagrees that Apple's rendition of the law is correct. For example, the burden of proving unclean hands is clear and convincing evidence *See* Section D.

[22] **Pinn's Position:** Pinn sets forth the elements to prove willful infringement in Section B above.

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805

(2) By a preponderance of evidence that Apple intentionally infringed the asserted claims of the asserted patents; and

(3) By a preponderance of evidence that Apple's conduct was "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful or flagrant, or of the characteristic of a pirate."

*See Halo Elecs.*, 136 S. Ct. 1923 (2016); 2019 AIPLA Model Patent Jury Instructions at 11.0.

Enhanced damages are not to be awarded in a typical infringement case, but are instead designed as a punitive sanction for egregious infringement behavior, and there is no requirement that enhanced damages must follow a finding of egregious misconduct. Courts typically consider the following factors:

(1) whether the infringer deliberately copied the ideas or design of another;

(2) whether the infringer, when it knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that the patent was invalid or not infringed;

(3) the infringer's behavior as a party to the litigation;

(4) the infringer's size and financial condition;

(5) the closeness of the case;

(6) the duration of the infringer's misconduct;

(7) remedial action by the infringer;

(8) the infringer's motivation for harm; and

(9) whether the infringer attempted to conceal its misconduct.

*Halo Elecs.*, 136 S. Ct. 1923 (2016); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992); *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959 (Fed. Cir. 2018).

### 6.    Not Exceptional.

Attorneys' fees are awarded based on the following standard:[23]

(1) Proof by the Court of an exceptional case, meaning the case "stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); *see also* 35 U.S.C. § 285.

**C.    In brief, the key evidence Defendant relies on for each counterclaim and affirmative defense is:**

**1.    Non-Infringement of the Asserted Patents**

Apple's accused AirPods do not infringe the '066 patent or '198 patent for at least the following reasons summarized below.

- First, the AirPods do not initiate pairing in response to pressing a user input button on the case.[24]  The claims require that "in response to pressing of the user input button of the mobile base station, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing" with the smartphone.  Apple's AirPods do not do this.  In the "magic pairing" process, the case lid is flipped open, and the button is

---

[23] **Pinn's Position:** Plaintiff sets forth the elements for exceptional case in Section B above.

[24] **Pinn's Position**: This is a mis-statement of the claim and corresponding claim construction (i.e., where terms were not construed the plain and ordinary meaning applies) and should be precluded pursuant to Pinn MIL No. 10.

**Apple's Position:** It is unclear what Pinn's objection is.  Pinn first made this objection *the very same day* this Order was due for filing.  The claim construction order did not construe this term, and Pinn's MIL No. 10 does not give any specific examples of argument or evidence it seeks to preclude.  This objection should be overruled for reasons set forth in opposition to Pinn's MIL No. 10. Apple will apply the claim constructions provided by the Court, and where terms were not construed will argue the plain and ordinary meaning, as permitted under the law.

not pressed.  Even when the button is used, it places the AirPods into discoverability mode.  To pair, a user must go to the Bluetooth menu of the phone and select the discoverable AirPods using a menu "button" on the phone to initiate and complete the pairing process.

- Second, the AirPods case does not initiate charging of a battery of the AirPods.  The claims require[25] "in response to plugging the wireless earbud into the connection hole, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate charging of a battery of the wireless earbud."   The AirPods case contains a battery that may provide voltage to the AirPods, but it does not store instructions for initiating or managing the charging of the AirPods battery.  The case senses the AirPods being placed into the case and applies a voltage to the metal contacts in the case.  But this doesn't initiate charging.  Rather, each AirPod has a separate, specialized circuit that manages charging.  This circuit manages the charge voltage received from the case, and applies a precise voltage and current to charge the battery of the AirPods

- Third, the accused AirPods do not meet the claim limitations of a "main body," "base station," or "mobile base station."  The AirPods case is not such an apparatus according to the patents and those of

---

[25] **Pinn's Position:** Not all of the Asserted Claims include this limitation. Apple is asserting that the device that it calls a "charging case" in its sales and marketing literature, does not charge the AirPods.

**Apple's Position:**  All of the asserted claims include some variation of this limitation.  Although the wording may vary slightly, Pinn's experts have not asserted that there is any meaningful difference between the variations.  Apple's marketing literature is not intended to describe all of the technical operation of the AirPods as that relates to patent claims.  The case of the AirPods does not charge the battery of the AirPods.  The AirPods have their own charger.

skill in the art, and, as described above and below, each such apparatus has specific characteristics and requires computer program instructions that perform certain functions and operations that the AirPods do not perform, such as initiating pairing and charging.[26]

- Fourth, Apple's accused AirPods do not form an integrated body with the case.  The claims require "a wireless earbud configured for plugging into the connection hole of the base station to form an integrated body with the base station."  The AirPods do not form an integrated body when just one AirPod is inserted into the case.[27]  The AirPods can also be removed with minimal force and protrude above the case, and thus are not integrated or an integrated body with the case.

- Fifth, the case of Apple's accused AirPods cannot wirelessly pair with a smartphone.  Claim 1 of the '066 patent requires "the system is capable of wirelessly pairing with a smartphone," where the system is

---

[26] **Pinn's Position:** Because the "main body", "base station" and "mobile base station" terms have not been construed, plain and ordinary meaning is applied. Accordingly, Apple's position is a mis-statement of the claim construction and should be precluded pursuant to Pinn MIL No. 10.  Apple's position that "Pinn first articulated this objection at 9:52 p.m. the day this Order was due for filing" ignores the fact that Pinn provided its objections to each of these applications of claim language in prior versions of this document with the exception of the quoted phrases.

**Apple's Position:** Pinn first articulated this objection at 9:52 p.m. the day this Order was due for filing.  *See* Apple's response to fn. 24, *supra*.

[27] **Pinn's Position:** Because the "integrated body" term has not been construed, plain and ordinary meaning is applied.  Accordingly, Apple's position is a mis-statement of the claim construction and should be precluded pursuant to Pinn MIL Nos. 9-10.

**Apple's Position:** Pinn first articulated this objection at 9:52 p.m. the day this Order was due for filing.  *See* Apple's response to fn. 24, *supra*.

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805

comprised of a base station and a wireless earbud.  The AirPods case
is not capable of wirelessly pairing, thus the accused system does not
satisfy the claim language.

- Sixth, pressing the user input button does not cause Apple's accused
AirPods to receive and play audio data.[28]  Claim 1 of the '066 patent
requires that "in response to pressing of the user input button, the at
least one processor is configured to execute computer program
instructions stored in the at least one memory to initiate processing
for the wireless pairing with the smartphone such that the wireless
earbud receives audio data originated from the smartphone and plays
audio using the audio data from the smartphone."  Pressing the button
of the AirPods case does not cause the AirPods to receive and play
audio data.  If the AirPods are in the case when the case button is
pressed, the AirPods will not play music because the AirPods are not
placed in-ear.  If the case button is pressed when the AirPods are out
of the case, there is no impact on the functionality of the AirPods,
because the AirPods case does not have wireless communication
capability with the AirPods.

- Seventh, Apple's accused AirPods lack circuitry that obtains and
sends earbud characteristics to the case processor.  The claims require
"circuitry…configured to obtain characteristics of the wireless earbud
and send the characteristics to the at least one processor."  The

---

[28] **Pinn's Position:** Because the "in response to . . . plays audio using the audio
data from the smartphone" term has not been construed, plain and ordinary
meaning is applied.  Accordingly, Apple's position is a mis-statement of the claim
construction and should be precluded pursuant to Pinn MIL No. 10.

**Apple's Position:** Pinn first articulated this objection at 9:52 p.m. the day this
Order was due for filing.  *See, supra,* Apple's response to fn. 24.

AirPods lack any such circuitry.  The circuitry that Pinn accuses does not perform this function because it does not obtain and send AirPod characteristics to the case processor.

- Eighth, Apple's accused AirPods do not include a mobile application that causes the AirPods to play sound while the mobile application is searching for the AirPods.  The claims require "wherein the mobile system is configured to generate sound when a mobile application installed on the smartphone is searching for the mobile system while the wireless earbud is paired with the smartphone." Apple's accused Find My application does not perform this function for multiple reasons.  First, the mobile application does not search for the mobile system.   Second, AirPods never play sound while the mobile application is attempting to connect.  AirPods only play sounds once connected to the mobile application, while the claim requires that the wireless earbud play sound *when* the mobile application is searching, not when connected.  Third, the claim requires that the mobile system comprised of the base station and the wireless earbud generate sound.  The AirPods case is not capable of wireless communication with a mobile application or playing sound.

- Ninth, Apple's accused AirPods are capable of wirelessly sending data to the case.  All claims of the '198 patent require "wherein the wireless earbud is not capable of wirelessly sending data to the mobile base station."  The AirPods are capable of wirelessly sending data to the case, the case just is not configured for receiving data.

Evidence to support Apple's defense of no direct infringement includes but is not limited to the following:

- The asserted patents and their prosecution histories (*see, e.g.*, JTX-2, 3, 8, 9).

- Testimony and evidence related to the claim constructions.
- Testimony and evidence that Pinn has failed to identify any evidence of direct infringement of the asserted patents by Apple or consumers, including testimony by Apple engineers and Apple's technical expert, Jonathan Wells.
- Testimony of Apple's source code expert Dr. Jeremy Cooperstock regarding the operation of the source code of the accused products.
- Operation of the accused products, the source code, Apple development documents, and any other evidence available in the case that illustrates that Apple does not infringe the asserted claims.
- All evidence identified in the expert reports of Dr. Jonathan Wells that support non-infringement.
- Testimony and evidence that the AirPods case does not include a processor that executes code to "initiate pairing" between a smartphone and AirPods.
- Testimony and evidence that the AirPods case does not include a processor that executes code to "initiate charging" the battery of the AirPods.
- Testimony and evidence that the accused AirPods lack the claimed main body, base station, or mobile base station.
- Testimony and evidence that the accused AirPods do not form an integrated body with the case.
- Testimony and evidence that the accused AirPods case cannot wirelessly pair with a smartphone.
- Testimony and evidence that the accused AirPods case does not charge the battery of AirPods.
- Testimony and evidence that pressing the user input button does not cause AirPods to receive and play audio data.

36

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

Case No. 8:19-cv-1805

- Testimony and evidence that the accused AirPods lack circuitry that obtains and sends earbud characteristics to the case processor.

- Testimony and evidence that the accused AirPods do not include a mobile application that causes AirPods to play sound while the mobile application is searching for AirPods.

- Testimony and evidence that the accused AirPods are capable of wirelessly sending data to the case.

- Any other testimony and documentary evidence that supports Apple's non-infringement.

Pinn cannot prove ownership of at least the '066 patent. Evidence to support non-ownership includes but is not limited to the following: testimony from Mr. Pascual, Mr. Mishra, and Mr. Fisher regarding inventorship of the '066 patent; documents relating to the same; declaration and assignment documentation relating to the '066 patent; testimony and documentary evidence relating to lack of consideration for the assignment; any other testimony and documentary evidence that bears on Pinn's lack of ownership.

Apple has detailed its key evidence related to the issue of willful infringement below.

## 2. Invalidity of the Asserted Patents.

### a. Invalidity of the '066 Patent Under 35 U.S.C. §§ 101 and/or 115

Invalidity of the '066 patent Under 35 U.S.C. §§ 101 and/or 115[29] is proven by the following element: that at least one inventor who contributed to one or more of the claims of an asserted patent was not named on the patent. Evidence to support Apple's defense includes but is not limited to the following:

---

[29] **Pinn's Position**: Apple did not properly and timely plead or assert an inventorship defense under 35 U.S.C. § 115. *See* Section D above.

- Testimony and evidence from the deleted inventors, including Mr. Pascual, Mr. Mishra, and Mr. Fisher, relating to their work at Speck on the Pinn Clip, their inventorship of the claims of the '066 patent, the declaration and purported assignment of their rights, and their deletion from the patent application without notice.
- Testimony and evidence from current Speck employee Denise Pliskin.
- Documentary evidence from Speck and Pinn (*see, e.g.*, JTX-11, 12, 15, 31, 34, 35, 36, 37, 38, 39).
- Testimony and evidence from Mincheol Kim.
- Testimony and evidence from Sean Kim, including his email correspondence with Speck regarding the decision to include the deleted Speck inventors on the application that led to the '066 patent.
- The '066 patent and its prosecution history (*see, e.g.*, JTX-2, 8, 16, 17, 18, 19).
- Testimony and evidence concerning the decision to include the Speck inventors on the application that led to the '066 patent.
- Testimony and evidence concerning the timing of when the Speck inventors were deleted, why they were deleted, and how they were deleted.
- Testimony and evidence concerning the contributions made by the Speck inventors to the claimed invention and Speck documents showing the contributions.
- Testimony and evidence concerning the work product and contribution by Speck and its employees to develop a prototype for the Pinn Clip.
- Any other testimony and documentary evidence that supports Apple's defense.

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805

### b.      Invalidity Under 35 U.S.C. § 112

Evidence to support Apple's 35 U.S.C. § 112 defenses include but is not limited to the following:

- The '066 patent, the patents and patent applications cited therein, and the '066 patent prosecution history (*see, e.g.*, JTX-2, 8).

- The '198 patent, the patents and patent applications cited therein, and the '198 patent prosecution history (*see, e.g.*, JTX-3, 9).

- Testimony and evidence to show that the claims fail to meet the written description and/or enablement requirement, including testimony from Apple's and Pinn's expert witnesses, from Mr. Kim, and from current and former Speck employees.

- All evidence regarding claim construction and invalidity in Apple's expert reports.

- Any other testimony and documentary evidence that supports Apple's defenses.

### c.      Invalidity Under 35 U.S.C. §§ 102 and 103

Apple may rely on the following exemplary key facts and evidence to prove anticipation and/or obviousness of the asserted patents:

- The '066 patent and its prosecution history (*see, e.g.*, JTX-2, 8).

- The '198 patent and its prosecution history (*see, e.g.*, JTX-3, 9).

- Testimony and documents from Speck employees.

- Testimony and documents from Sean Kim.

- All evidence and testimony related to the parties' claim constructions.

- The following primary prior art references (printed publications and systems): BT Headset (*see, e.g.*, JTX-466, 467), Watson I (*see, e.g.*, JTX-0269, 272), Watson II (*see, e.g.*, JTX-270, 273), Lydon (*see, e.g.*, JTX-260), Bragi (*see, e.g.*, JTX-703, 704, 105), Sennheiser (*see, e.g.*, JTX-

617, 618, 619, 620, 621, 622), and Jabra Eclipse (*see, e.g.*, JTX-592, 594, 686, 689).

- The following secondary prior art references (printed publications and systems): Kalayjian (*see, e.g.*, JTX-274), the Hankey Group[30] (*see, e.g.*, JTX- 308, 309, 310), Jobs (*see, e.g.*, JTX-591), Mousseau (*see, e.g.*, JTX-603), Savi (*see, e.g.*, JTX-469, 711, 1103), iOS 7 (*see, e.g.*, JTX-474, 572, 579), Jabra Stone3 (*see, e.g.*, JTX-468, 481, 610, 611, 612, 616, 815, 1102), Neumeyer (*see, e.g.*, JTX-604), prior art iterations of Apple's "Find My" feature (*see, e.g.*, JTX-576, 577, 578, 579, 630, 631, 632, 633, 634, 638, 639, 640, 641, 642), and Dua (*see, e.g.*, JTX-590).

- Additional background prior art that shows the state of the art at the time of the alleged inventions, including printed publications and systems showing pairing buttons on wireless devices, charging cases for wireless earbuds having processing and "distributed intelligence", wireless earbud finder applications, wireless earbuds, Bluetooth technology, Apple's own wireless earbud development documents, and other background art.

- Testimony and evidence concerning the public accessibility of any asserted prior art.

- Testimony and evidence concerning the operation of Apple's system art, including source code (*see, e.g.*, JTX-1109).

- Testimony of Apple's expert witness Dr. Jonathan Wells that the asserted claims are anticipated and/or obvious in view of the prior art.

---

[30] Hankey Group refers to the Hankey, Rabu, and Sanford patents. Apple stipulated to not rely on the Hankey Group as a primary reference. Pinn has moved to amend its complaint to add a declaratory judgment claim that the claims of the asserted patents are not invalid over the Hankey Group. Apple reserves the right to assert Hankey Group as a primary reference if Pinn's motion is granted.

- Testimony and evidence establishing a lack of secondary considerations of non-obviousness, including the lack of commercial success of the Pinn product, lack of long felt and unresolved need, lack of failure of others, lack of skepticism by experts, lack of praise for Pinn's invention, lack of teaching away, lack of copying, and a lack of any other evidence supporting the non-obviousness of the asserted claims.

- Testimony of Apple's expert witness Dr. Jeremy Cooperstock regarding the operation of the source code of Apple's BT Headset.

- Testimony from Pinn's expert Dr. Scott Nettles.

- The arguments set forth in Apple's expert reports regarding invalidity.

- Testimony and evidence concerning the claim of priority for Pinn's patents in suit, including the April 3, 2015 provisional application.

- Testimony and evidence concerning the claim of priority for Apple's Watson patents, including the June 5, 2015 provisional applications.

- Any other testimony and documentary evidence that supports Apple's defenses.

### 3.    Unclean Hands

Unclean hands is proven by the following element: any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct.[31]   Evidence to support this defense includes, but it is not limited to, the following:

- Testimony and evidence concerning development of the prototype by Pinn and contributions made by the Deleted Inventors, including testimony from Mr. Pascual, Mr. Mishra, Mr. Fisher, and Denise Pliskin

---

[31] **Pinn's Position:** Pinn does not agree with Apple's stated standard for unclean hands.  See Section D above.

(from Speck) (*see, e.g.*, JTX-11, 12, 15, 16, 17, 18, 19, 31, 34, 35, 36, 37, 38, 39, 45, 38, 49, 50, 53, 55).

- Testimony and evidence concerning filing of the patent application that led to the '066 patent, including documents and testimony from Mr. Kim and from Speck (*see, e.g.*, JTX-2, 8, 16, 17, 18, 19).

- Testimony and evidence concerning prosecution of the '066 patent, including the original provisional patent application and the file history for the '066 patent (*see, e.g.*, JTX-2, 8, 16, 17, 18, 19).

- Testimony and evidence from Mincheol Kim regarding the facts underlying Apple's unclean hands defense (as detailed in ECF 258).[32]

- Testimony and evidence from the Deleted Inventors as to their contribution to the claims of the '066 patent.

- Testimony and evidence showing the need to remove the Deleted Inventors from the '066 patent in order to try to avoid the Watson prior art.

- All testimony and evidence cited in Apple's summary judgment briefing (ECF 258) concerning unclean hands.

- Any other testimony and documentary evidence that supports Apple's defense.

### 4.    No Injunctive Relief

In support of its position that Pinn is not entitled to injunctive relief, Apple will rely on at least the following facts and evidence:

Element 1: Pinn has suffered an irreparable injury.  Evidence to support Apple's position on this element includes but is not limited to the following:

---

[32] **Pinn's Position:**  Apple dropped unclean hands based upon failure to disclose prior art to the patent office.  *See* ECF 258 at p. 13; and Pinn's MIL 13.

- All evidence demonstrating that Defendants have not infringed and do not infringe any of the asserted claims of the asserted patents (see above).

- All evidence that all of the asserted claims of the asserted patents are invalid (see above).

- Testimony and evidence that Pinn does not sell in the United States consumer products that compete with the accused AirPods products.

- Testimony and evidence that Pinn does not currently sell in the United States products that embody the asserted patents.

- Testimony and evidence showing that the asserted patents have been licensed to Google and Samsung, at least.  E.g., JTX-239, 240.

- Expert testimony evidence that Pinn has not suffered and will not suffer any irreparable injury.

Elements 2 and 3: Remedies at law, such as monetary damages, are inadequate to compensate for Pinn's alleged injury; considering the balance of hardships between the parties, a remedy in equity is warranted.  Evidence to support Apple's position on these elements includes but is not limited to the following:

- Testimony and evidence that Pinn does not sell in the United States consumer products that compete with the accused AirPods products.

- Testimony and evidence that Pinn does not currently sell in the United States products that embody the asserted patents.

- Testimony and evidence showing that the asserted patents have been licensed to Google and Samsung, at least.  E.g., JTX-239, 240.

- Expert testimony that Pinn has an adequate remedy at law.

Element 4: The public interest would not be disserved by a permanent injunction.  Evidence to support Apple's position on this element includes but is not limited to the following

43

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805

- Testimony and evidence that Pinn does not sell in the United States consumer products that compete with the accused AirPods products.

- Testimony and evidence that Pinn does not currently sell in the United States products that embody the asserted patents.

- Testimony and evidence showing that the asserted patents have been licensed to Google and Samsung, at least.  E.g., JTX-239, 240.

- Testimony and evidence that the public interest would be disserved if Apple were enjoined.

- Any other testimony and documentary evidence that shows Apple should not be enjoined.

### 5.     No Willfulness

In support of its position that alleged infringement was not willful, Apple will rely on at least the following facts and evidence.

Element 1: Apple knew about the Pinn asserted patents.  Evidence to support this element includes but is not limited to the following:

- Testimony and evidence that the asserted patents did not issue until after Pinn filed its complaint against Apple.  E.g., JTX-2, 3, 1036.

- Testimony and evidence concerning the timing of the complaint versus issuance of the asserted patents, and concerning emails from Sean Kim to Apple executives.

Elements 2 and 3: Apple intentionally infringed the asserted claims of the asserted patents; Apple's conduct was "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful or flagrant, or of the characteristic of a pirate". Evidence to support this element includes but is not limited to the following:

- Testimony and evidence that Pinn is guilty of unclean hands.

- Testimony and evidence supporting the merits of Apple's defenses in this litigation, including evidence supporting non-infringement, evidence supporting invalidity based on prior art, evidence supporting invalidity

44

under 35 U.S.C. § 112, and evidence supporting all other defenses asserted in this litigation.

- Testimony and evidence concerning Apple's development of the accused AirPods products, including from Apple's engineers and Apple's expert witnesses Dr. Wells and Ms. Knox.

- All evidence cited in Apple's summary judgment briefing on willful infringement.

- Testimony and evidence related to Mr. Kim's failed attempts to interest numerous other companies in Pinn (*see, e.g.*, JTX-961 – JTX-1002).

- Testimony and evidence that Apple was not willfully blind to the asserted patents.

- Testimony and evidence proving independent development and no copying by Apple.

- Testimony and evidence relating to Pinn's delay in filing suit and failure to provide advance notice.

- Testimony and evidence that the '491 patent, which is the only patent that issued before the lawsuit was filed, was found not to be infringed.

- Testimony and evidence that Apple does not infringe, let alone intentionally, and that Apple's conduct was not "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful or flagrant, or of the characteristic of a pirate."

- Any other testimony and documentary evidence that supports Apple's non-willfulness.

As to enhanced damages, including the *Read v. Portec* factors recited above, Apple has provided a non-exhaustive list of Pinn's conduct in this case that justifies awarding Apple its attorneys' fees and costs, and those same factors are incorporated by reference here and may be applicable to the question of enhanced damages, should that become an issue after the trial.  Moreover, since enhanced

45

damages is not an issue for the trial, Apple reserves its rights to address this issue after trial and to respond to any claim that Pinn may make, assuming it prevails on willful infringement.

### 6.     Not Exceptional

Pinn's case against Apple is not exceptional under 35 U.S.C. § 285.  As examples, for all the reasons stated above regarding the merits of Apple's noninfringement, invalidity, and non-willfulness defenses, Pinn cannot show this to be an exceptional case.  As another example, Apple won several motions for summary judgment and had victories in its *Daubert* motions.  This is further evidence that this cannot be an exceptional case.

To the contrary, Pinn's requirement that Apple mount a defense of this matter by filing and prosecuting the present lawsuit is exceptional under 35 U.S.C. § 285.  More specifically, as detailed in Apple's Memorandum of Contentions of Law and Fact (ECF 338), Pinn's litigation conduct justifies an award of fees and costs to Apple.

**8.     In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried:**

- Whether Defendant has infringed one or more of claims 9, 10, 14, 30, and 34 of the '066 patent.

- Whether Defendant has induced others to infringe one or more of claims 9, 10, 14, 30, and 34 of the '066 patent.

- Whether Defendant has infringed one or more of claims 1, 3, 5, 21, and 25 of the '198 patent.

- Whether Defendant has induced others to infringe one or more of claims 1, 3, 5, 21, and 25 of the '198 patent.

- Whether the asserted claims of the '066 and '198 patents are invalid under at least 35 U.S.C. §§ 101, 102, 103 and 112.

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

- Whether Plaintiff is entitled to any damages, and if so, then the amount of damages to which Plaintiff is entitled.
- Whether Defendants have willfully infringed either the '066 patent or the '198 patent.
- Whether Plaintiff is entitled to an injunction.
- Whether this is an exceptional case entitling Plaintiff or Defendant to attorney fees under 35 U.S.C. § 285.

**Apple's Position:**

In addition to the above issues, Apple contends that the following issues remain to be tried:

- Whether Plaintiff is the sole owner of the '066 and '198 patents.[33]
- Whether Pinn's conduct constitutes unclean hands that warrants dismissal of all claims against Apple.[34]
- Whether the asserted claims of the '066 patent are invalid under 35 U.S.C. § 101 in combination with 115.[35]

**9.     All discovery is complete except as discussed in the following paragraph.**

Pinn has objected to the admissibility of the source code produced by Apple that is purported to be for the Apple Bluetooth Headset.  On December 2, 2020 [ECF 317], the Court granted the parties' Joint Motion to Re-Open Discovery for a Limited Purpose so that Pinn may depose Apple's BT Headset Witness for one-hour concerning the authentication of the Apple Source Code for the Apple BT

---

[33] **Pinn's Position:** Apple has not properly and timely raised the defense of ownership with respect to the '066 or '198 Patent.  See Section D above.

[34]**Pinn's Position:** Apple has not properly and timely plead or asserted any theory that the '198 Patent claims should be dismissed, rendered invalid, rendered unenforceable pursuant to Apple's unclean hands defense. See also Section D, for Pinn's position regarding Apple's burden on its unclean hands defense.

[35] **Pinn's Position:** Apple has not properly and timely plead or asserted a defense under 35 U.S.C. § 115.  See Section D above.

47

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

Case No. 8:19-cv-1805

Headset.  On January 6, 2021, the Court extended the deadline for the competition of this deposition to January 22, 2021 (ECF 336).

**Pinn's Position:**

Unless and until Apple provides a witness pursuant to the Court's Order (ECF 317), Pinn maintains its objection to the purported Bluetooth Headset source code.

**Apple's Position:**

Apple has not yet provided such a witness, but intends to do so by the deadline set by the Court.  Apple maintains that, irrespective of testimony authenticating the 2007 BT Headset source code, the asserted patents are invalid based on the 2007 BT Headset product.

**10.    All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.**

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6-1.  Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:

Plaintiff objects to Exhibit Nos. JTX 11-13, JTX 15-17, JTX 20, JTX 31, JTX 34-35, JTX 37-39, JTX 41-44, JTX 48-62, JTX 65-95, JTX 100, JTX 102-108, JTX 110, JTX 112-114, JTX 198, JTX 204-208, JTX 221, JTX 224, JTX 229, JTX 233-235, JTX 248-253, JTX 259, JTX 261, JTX 269-282, JTX 321-329, JTX 571, JTX 573-585, JTX 587-604, JTX 606-792, JTX 795-849, JTX 851-881, JTX 883-908, JTX 910-921, JTX 924-944, JTX 950, JTX 955-982, JTX 984-1003, JTX 1005-1103, JTX 1106, JTX 1109-1153, JTX1168-1183, JTX 1203-1207.

Defendant objects to Exhibit Nos. JTX-0001, JTX-0007, JTX-0028, JTX-0036, JTX-0047, JTX-0051, JTX-0115–JTX-0131, JTX-0140, JTX-0147–JTX-0150, JTX-0157, JTX-0159–JTX-0168, JTX-0176–JTX-0179, JTX-0181, JTX-0183–JTX-0187, JTX-0189, JTX-0191, JTX-0195–JTX-0197, JTX-0200–JTX-0203, JTX-0211–JTX-0216, JTX-0221, JTX-0223, JTX-0225–JTX-0228, JTX-0230–JTX-0232, JTX-0236–JTX-0237, JTX-0242–JTX-0247, JTX-0254–JTX-

48

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805

0255, JTX-0258, JTX-0266–JTX-0268, JTX-0278, JTX-0283, JTX-0285–JTX-0286, JTX-0288–JTX-0289, JTX-0291–JTX-0295, JTX-0300, JTX-0302–JTX-0304, JTX-0313–JTX-0314, JTX-0317–JTX0319, JTX-0330–JTX-0333, JTX-0342–JTX-0369, JTX-0372–JTX-0406, JTX-0409–JTX-0465, JTX-0470–JTX-0471, JTX-0474–JTX-0570, JTX-0724–JTX-0726, JTX-0777–JTX-0778, JTX-0782, JTX-0786–JTX-0788, JTX-0824, JTX-0826, JTX-0837–JTX-0839, JTX-0844, JTX-0854–JTX-0855, JTX-0863–JTX-0879, JTX-0884–JTX-0886, JTX-0901, JTX-0908, JTX-1006–JTX-1039, JTX-1109, JTX-1187–JTX-1188, JTX-1205–JTX-1207.

The objections of each party and the grounds therefore are set forth in Exhibit B.

**11.   Witness lists of the parties have been filed with the Court.**

Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment).

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

**<u>Designations by Plaintiff (including counter-designations):</u>**

- Apple (Jonathan Adams as corporate representative) (July 17, 2020)
- Apple (Jeffrey L. Bruksch as corporate representative) (July 31, 2020)
- Apple (Jeff Terlizzi as corporate representative) (July 24, 2020)
- Apple (Robert Watson as corporate representative) (July 28, 2020)
- Apple (Jayna Whitt as corporate representative) (July 24, 2020)
- Daniel A. Leiva (July 30, 2020)
- Sang Hoon Lee (July 15, 2020)
- Vincent Sarcia Pascual (June 26, 2020)
- Kurt Stiehl (July 14, 2020)

- Pinn has additionally provided counter-designation in response to all of Apple's opening designations listed below.

**Designations by Defendant (including counter-designations):**

- Herbert Lawson Fisher (July 6, 2020)
- Brian Hwang (July 7, 2020)
- Mincheol Kim (July 9, 2020)
- Seung Jin "Sean" Kim (July 30, 2020)
- Seung Jin "Sean" Kim (July 31, 2020)
- Sang Hoon Lee (July 15, 2020)
- Daniel A. Leiva (July 30, 2020)
- Devjeet Mishra (July 1, 2020)
- Vincent Sarcia Pascual (June 26, 2020)
- Denise Pliskin (June 30, 2020)
- Apple has additionally provided counter-designation in response to all of Pinn's opening designations listed above.

**Pinn's Position:**

Plaintiff objects to the presentation of testimony by deposition of the following witnesses:

- Mincheol Kim
- Seung Jin "Sean" Kim

Plaintiff Pinn objects to the presentation of testimony by deposition of these witnesses because both witnesses are within the subpoena power of the Court and are not otherwise unavailable.

Plaintiff's specific objections to the designated deposition testimony are identified in Exhibit C.

**Apple's Position:**

Defendant objects to the presentation of testimony by deposition of the following witnesses:

50

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805

- Jayna Whitt
- Dan Leiva

Pinn served opening objections for Ms. Whitt and Mr. Leiva on January 5, 2021, nearly a month after the December 11, 2020 deadline by which the parties agreed to exchange opening deposition designations.  Apple therefore objects to the presentation of testimony by deposition for these witnesses as untimely.

Apple additionally objects to Pinn's designation of deposition testimony from Mr. Leiva that is irrelevant to this case.  Mr. Leiva is now a third-party and was a web-designer for Apple who had no involvement with the AirPods.  He received an unsolicited email from Mr. Kim that he testified he could not remember.  Nevertheless, Pinn has designated Mr. Leiva's testimony relating to the email, Apple's document retention policies, Mr. Leiva's views on intellectual property and patent rights, and his representation by Apple's counsel.  This testimony is irrelevant and should not be played for the jury.  Apple does not believe Mr. Leiva's testimony is probative of any issue in the case.

Defendant's specific objections to the designated deposition testimony are identified in Exhibit D.

**12.     The following law and motion matters and motions *in limine*, and no others, are pending or contemplated:**

**Plaintiff's Motions:**

- [ECF 301] Pinn's Motion for Relief in Response to Apple's Notice of Stipulation Regarding the Hankey Group Prior Art Dated October 30, 2020; and [ECF 315] Pinn's Reply Brief in Support of Pinn's Motion for Leave to Amend Pleadings to Conform to Parties' Litigated Issues Regarding the Hankey Group Prior Art.
- [ECF 345] Pinn's Motions *in Limine*:

     **MIL No. 1**. Gratuitously commenting on, or making negative statements

51

about, the nationality, citizenship, place of residence, native language, or   choice to testify in the native language of any witness.

**MIL No. 2**. The location where each party's counsel practices, and the location or size of each party's counsel's law firms.

**MIL No. 3**. Attorney compensation, litigation funding, or contingency

arrangements.

**MIL No. 4**. Derogatory terms to refer to Pinn or the inventor of the Asserted Patents, the propriety of asserting patents without practicing them, and that patents held by a non-practicing entity are less valuable.

**MIL No. 5.** The quality of the USPTO and its examiners, including that examiners are overworked or that the USPTO is prone to error.

**MIL No. 6**. The number of patents Apple has been granted or Apple's propensity to be granted patents.

**MIL No. 7.** Objections to discovery requests or testimony including assertions of privilege or work product.

**MIL No. 8.** Comparing embodiments in the Asserted Patents to the Accused Products, the prior art, or Pinn's product / Arguing that Apple practices the prior art / Arguing that if the Accused Products infringe, then the Asserted Claims are invalid.

**MIL No. 9**. Argument that the Accused Products do not infringe because

they have two earbuds rather than only one.

**MIL No. 10.** Arguing in a manner inconsistent with the Court's claim construction or that questions or disparages it.

**MIL No. 11**. Testimony or argument that the Accused Products do not infringe because their charging cases do not have (1) wireless communication capability, (2) an information display, or (3) a clip.

**MIL No. 12**. Evidence that Pinn has marked any of its products with the

numbers of any Pinn Patents.

**MIL No. 13**. Suggesting inequitable conduct was committed during the prosecution of any of the Asserted Patents or any related patents.

**MIL No. 14**. Evidence that Pinn no longer asserts certain claims, accuses the PowerBeats Pro of infringement, or of Summary Judgment of Non-infringement.

**MIL No. 15**. Opinions of non-disclosed experts or employees of Apple concerning infringement, non-infringement, validity, or invalidity.

**<u>Defendant's Motions:</u>**

- [ECF 318] Apple's Motion to Dismiss Without Prejudice Apple's Declaratory Judgment Counterclaim of Invalidity of the '491 Patent;

- [ECF 340] Apple's Motion *in Limine* No. 1 – Exclude Argument, Evidence, or Questions Regarding Unannounced, Non-Accused Apple Products.

- [ECF 340] Apple's Motion *in Limine* No. 2 – Exclude Argument, Evidence, or Questions as to Unrelated Litigations and Investigations.

- [ECF 340] Apple's Motion *in Limine* No. 3 – Exclude Evidence or Argument Regarding Apple's Foreign Operations and Contract Manufacturers.

- [ECF 340] Apple's Motion *in Limine* No. 4 – Exclude Evidence or Argument Regarding Apple Witness Compensation Unrelated to this Case.

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805

- [ECF 340] Apple's Motion *in Limine* No. 5 – Exclude Evidence Regarding Steve Jobs and Political Positions Taken by Apple or its Leadership.

- [ECF 343-1] Apple's Motion *in Limine* No. 6 – Exclude Argument, Evidence, or Questions Regarding the '446 Patent and Associated Testimony.

- [ECF 343-1] Apple's Motion *in Limine* No. 7 – Exclude Argument That Wirelessly Pairing Requires Establishing Pairing by Wireless Means, as Opposed to Establishing a Trusted Relationship Regardless of Mechanism.

- [ECF 343-1] Apple's Motion *in Limine* No. 8 – Exclude Comparisons of Burden of Proof Standards to Other Areas of Law.

- [ECF 343-1] Apple's Motion *in Limine* No. 9 – Exclude Argument, Evidence, or Questions as to the Identity, Presence, or Absence of Corporate Representatives or Parties' Employees or Officers in the Courtroom.

- [ECF 343-1] Apple's Motion *in Limine* No. 10 – Exclude Unproduced and Untimely Disclosed Documents Requested During Discovery, Except Documents Being Offered for Impeachment.

- [ECF 343-2] Apple's Motion *in Limine* No. 11 – Exclude Argument, Evidence, or Questions Regarding Apple's Revenue and Profits for Accused Products Prior to Issuance of the '066 Patent.

- [ECF 343-2] Apple's Motion *in Limine* No. 12 – Exclude Argument, Evidence, or Questions Regarding Total Revenue and Total Profits for AirPods.

- [ECF 343-2] Apple's Motion *in Limine* No. 13 – Exclude Argument, Evidence, or Questions Regarding Apple's Technology Agreements.

- [ECF 343-2] Apple's Motion *in Limine* No. 14 – Exclude Argument, Evidence, or Questions Regarding Certain Agreements.

- [ECF 343-2] Apple's Motion *in Limine* No. 15 – Exclude Argument, Evidence, or Questions Regarding Redesign Acceptability Based on Timing of '491 Patent Issuance.

**13.   Bifurcation of the following issues for trial is ordered.**

None.

**14.   Miscellaneous provisions the parties have agreed to:**

**A.   Agreed Motions *in Limine***

1. Exclude argument, evidence, or questions regarding the Beats acquisition price.

2. Exclude argument, evidence, or questions regarding discovery disputes, including the subject matter of same, correspondence relating to same, and any corresponding motions to compel.

3. Exclude any mention of any IPR and/or PGR petition related to the '491, '066, and '198 patents.

4. Exclude any use of the term "patent troll" or "patent terrorist" in reference to Pinn.

5. Exclude introduction of the claim construction order and related briefing, or orders of the Court on pretrial matters except those specifically allowed by the Court.

6. Exclude any discussion about mediation or settlement offers between the parties.

7. Exclude any references to Apple systematically operating to deprive small inventors of their patent rights.

8. Exclude argument, evidence, or questions attributing to a party the requirement that the jury be at trial during the pandemic.

9. Exclude argument, evidence, or questions regarding the religion, religious beliefs (including tithing or performing any other religious activity), or political affiliation of any witness.

10. Exclude argument, evidence, or questions that Pinn at one time asserted a group of the patent claims that it later dropped in order to narrow the issues for trial.

**B.     Order of Proof at Trial**

- Plaintiff will present first at trial on the issues of infringement and damages as part of its case-in-chief.

- Defendant will then present first at trial on the issues of invalidity, affirmative defenses, and counterclaims as part of its case-in-chief, and will also respond to Plaintiff's presentation on infringement and damages.

- Plaintiff will then present its rebuttal case.

- Defendant will then present its rebuttal case.

**C.     Identification of Live Witnesses and Deposition Designations**

The parties agree to identify seven days before trial the witnesses that each side intends to call live versus by deposition.  This identification may be modified if good cause is shown.

**D.     Disclosure of Demonstratives**

The parties agree to waive the requirements of L.R. 16-3 to the extent it requires the exchange of demonstratives "at least eleven (11) days before trial." The parties' respective positions regarding the exchange of demonstratives is set forth below.

**E.     Designated Testimony Disclosure Procedures**

Each party will provide the other party a list of deposition designations that it expects to play and exhibits it expects to introduce with the designations by 7:00 p.m. PT three calendar days before the designations are intended to be used in

court.  The other party will provide counter-designations and objections by 5:00 p.m. PT two calendar days before the designations are intended to be used in court. The originally designating party will provide any rebuttal designations and objections to the counter-designations by 9:00 p.m. PT two calendar days before the designations are intended to be used in court.  The parties will meet and confer on any objections by 10:00 p.m. PT two calendar days before the designations are intended to be used in court and will present any unresolved issues to the Court the morning of the proposed use of the disputed testimony.

### F.   Disclosure Procedures Concerning Physical Exhibits

Each party will make available for inspection any physical exhibits they intend to use at trial no later than 7:00 p.m. PT two calendar days before such physical exhibits are first used.  Objections to physical exhibits, if any, shall be due by 11:00 a.m. PT two calendar days before their intended use.  The parties will meet and confer by 8:00 p.m. PT two calendar days before their intended use.

### G.   Procedures Concerning Sealing the Courtroom, Testimony, and Exhibits

The parties request that the trial be open to the public and not sealed unless a party requests that a particularly sensitive portion be sealed and not open.  If a party makes such a request, subject to the Court's approval, and for good cause shown, the courtroom should be cleared for those individuals not qualified under the Protective Order entered in this case, including any corporate representatives of the party not making the request.

Transcripts of any sealed testimony, and exhibits entered while the courtroom is sealed, shall remain under seal until thirty (30) days after the conclusion of the trial.  Prior to that time, the parties may designate, by page and line, the portions of the transcript they seek to have filed under seal and the exhibits they seek to have placed under seal, subject to the Court's approval.  Counsel for

the parties shall be responsible for supplying the envelopes and labels necessary for any materials placed under seal.

**H.    Federal Rule of Evidence 615**

**Plaintiff's Position:**

Pinn seeks to invoke Federal Rule of Evidence 615.

**Defendant's Position:**

Apple seeks to invoke Federal Rule of Evidence 615.

**15.    Miscellaneous provisions to which the parties disagree:**

**A.    Disclosure of Exhibits**

**Plaintiff's Position:**

The parties have exchanged exhibits and each side will have had the exhibits for months before the trial begins.  Pinn opposes Apple's proposed schedule.

Pinn shall follow the procedures and preferences of the Court with respect to exhibits and exhibit objections.

**Defendant's Position:**

Each party will provide to the other party the names and order of witnesses it intends to call on direct examination (whether live or by deposition) no later than 12:00 PT three calendar days before calling the witness.  For witnesses to be presented "live," including adverse witnesses the party intends to call on direct examination, the presenting party shall also include at the time of disclosure a list of exhibits to be used with each witness.  Any objections shall be provided by 7:00 p.m. PT two calendar days before the witness is called.

The party cross examining the witness will provide a list of exhibits that may be used with a witness (other than impeachment) during cross examination by 7:00 p.m. PT two calendar days before the witness is to be called.  Objections to proposed cross examination exhibits shall be provided by 9:00 p.m. PT two calendar days before the witness is expected to testify.

The parties shall confer regarding any objections by no later than 10:00 pm PT two calendar days before the witness is expected to testify at trial to narrow their disputes and identify any remaining objections to be presented to the Court.[36]

**B.     Disclosure of Demonstratives**

**Plaintiff's Position:**

Plaintiff agrees to waive the requirements of L.R. 16-3 to the extent it requires the exchange of demonstratives "at least eleven (11) days before trial." Pinn instead proposes that demonstratives not created on the fly be disclosed by 8:00 p.m. the night before the witness is expected to testify and objections to such demonstratives are to be served by 10:00 p.m. and such objections are to be addressed the following morning or before the witness takes the stand.

**Defendant's Position:**

Pinn's proposal does not allow sufficient time for the parties to assess objections or change testimony based on such objections or rulings from the Court. Apple proposes an additional day of advance disclosure to allow the parties to identify and resolve disputes, as set forth below.

Copies of demonstratives to be used on direct examination shall be provided at 12:00 PT three calendar days before the calling the witness.  Any objections to the direct examination demonstratives shall be provided by 7:00 p.m. PT two calendar days before the witness is called.

The party cross examining the witness will provide copies of demonstratives to be used with a witness (other than impeachment) during cross examination by 7:00 p.m. PT two calendar days before the witness is to be called.  Any objections

---

[36] These disclosure procedures are based on the assumption that the Court will hear argument on evidentiary objections one calendar day before the witness is to be called. To the extent the Court indicates a different procedure, the parties will follow the Court's instruction and this schedule may need to be adjusted.

59

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805

to the cross examination demonstratives shall be provided by 9:00 p.m. PT two calendar days before the witness is expected to testify.

The parties shall confer regarding any objections to demonstratives by no later than 10:00 pm PT two calendar days before the witness is expected to testify at trial to narrow their disputes and identify any remaining objections to be presented to the Court.

### C.    Presentation of Deposition Designations

**Plaintiff's Position:**

Plaintiff proposes that a party calling a witness via deposition be allowed to play or read its designations of the deposition on direct and that the opposing party's designations be read or played next.  Plaintiff proposes that the jury be told which portion of the deposition is the offering party's direct and which portion is the cross.  Plaintiff's proposal will allow the jury to understand which party is offering the evidence and will aid in assessing the time spent by both parties.  If the opposing party is allowed to insert hours of testimony into the direct examination, the evidence that the offering party is providing to the jury will be diluted and obscured.   Plaintiff submits that providing the jury deposition testimony via video should not change the method and manner of presentation. Plaintiff seeks guidance as to whether video deposition testimony may be played twice.  Defendant has taken the position in meet and confer sessions that it can play video deposition testimony as a counter designation in Plaintiff's case in chief and again in Defendant's case in chief.

**Defendant's Position:**

All designated testimony (original, counter, rebuttal) should be read or played to the jury as one consecutive segment.  Time will be apportioned by the parties with original testimony charged against the offeror and counter testimony charged against the other party.

### D.     Length of Meet and Confers During Trial

**Plaintiff's Position:**

Plaintiff does not see a need to artificially limit the length of time for meet and confers.

**Defendant's Position:**

No party shall be required to meet and confer for more than a reasonable amount of time to assess the parties' positions, and in no event beyond ninety minutes per evening regarding evidentiary objections absent agreement of both parties, unless otherwise ordered by the Court.

**16.     The foregoing admissions have been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to present manifest injustice.**

Dated: _____, 2021.

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

Approved as to form and content.


*Cabrach Connor*
Attorney for Plaintiff


*Christopher S. Marchese*
Attorney for Defendant

1

2

3
Dated: January 14, 2021                    Law Office of Ryan E. Hatch, P.C.

4
                                           /s/ Ryan Hatch
                                           **Ryan E. Hatch**
5                                          ryan@ryanehatch.com
                                           California Bar No. 235577
6                                          **LAW OFFICE OF RYAN E. HATCH, P.C.**
                                           13323 Washington Blvd., Ste. 100
7                                          Los Angeles, CA 90066
                                           Tel: (310) 279-5076
8                                          Fax: (310) 693-5328

9

10                                         **David A. Skeels** (admitted *pro hac vice*)
                                           dskeels@whitakerchalk.com
11                                         Texas Bar No. 24041925
                                           **WHITAKER CHALK SWINDLE & SCHWARTZ**
12                                         **PLLC**
                                           301 Commerce St., Ste. 3500
13                                         Ft. Worth, TX 76102
                                           Tel: (817) 878-0500
14                                         Fax: (817) 878-0501

15

16                                         **Cabrach J. Connor** (*admitted pro hac vice*)
                                           cab@connorkudlaclee.com
17                                         Texas Bar No. 24036390
                                           Jennifer Tatum Lee (*admitted pro hac vice*)
18                                         jennifer@connorkudlaclee.com
                                           Texas Bar No. 24046950
19                                         Kevin S. Kudlac (*admitted pro hac vice*)
                                           kevin@connorkudlaclee.com
20                                         Texas Bar No. 00790089
21                                         **CONNOR KUDLAC LEE PLLC**
                                           609 Castle Ridge Rd., Ste. 450
22                                         Austin, TX 78746
                                           Tel: (512) 777-1254
23                                         Fax: (888) 387-1134

24

25                                         Attorneys for Plaintiff PINN, INC.

26

27

28
                                    62
                [PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
                                              Case No. 8:19-cv-1805

1    Dated:  January 15, 2021                    FISH & RICHARDSON P.C.

2

3                                                By: */s/ Christopher S. Marchese*

4                                                    Christopher S. Marchese (SBN 170239)
5                                                    marchese@fr.com
                                                     633 West Fifth Street, 26th Floor
6                                                    Los Angeles, CA 90071
                                                     Tel: (213) 533-4240
7                                                    Fax: (858) 678-5099

8                                                    Seth M. Sproul (SBN 217711)
9                                                    sproul@fr.com
                                                     John W. Thornburgh (SBN 154627)
10                                                   thornburgh@fr.com
                                                     Tucker N. Terhufen (SBN 311038)
11                                                   terhufen@fr.com
                                                     FISH & RICHARDSON P.C.
12                                                   12860 El Camino Real, Suite 400
                                                     San Diego, CA 92130
13                                                   Tel: (858) 678-5070
                                                     Fax: (858) 678-5099
14

15                                                   Joy B. Kete *(pro hac vice)*
16                                                   kete@fr.com
                                                     Fish & Richardson P.C.
17                                                   One Marina Park
                                                     Boston, MA 02210
18                                                   Tel: 617-542-5070
                                                     Fax: 617-542-8906
19

20                                                   Attorneys for Defendant APPLE INC.

21

22

23

24

25

26

27

28

## ECF ATTESTATION

I, Ryan Hatch, am the ECF User whose identification and password are being used to electronically file this [PROPOSED] FINAL PRETRIAL CONFERENCE ORDER. In accordance with Local Rule 5-4.3.4, concurrence in and authorization of the filing of this document has been obtained from the counsel for Defendants, and Plaintiff's Counsel shall maintain records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request by a party.

*/s/ Ryan Hatch*
Ryan Hatch

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 15, 2021, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

/s/ *Ryan Hatch*
Ryan Hatch

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
Case No. 8:19-cv-1805