RYAN E. HATCH
ryan@ryanehatch.com
California Bar No. 235577
**HATCH LAW P.C.**
13323 Washington Blvd., Ste. 100
Los Angeles, CA 90066
Tel: (310) 279-5079 / Fax: (310) 693-5328

DAVID A. SKEELS (admitted *pro hac vice*)
dskeels@whitakerchalk.com
Texas Bar No. 24041925
**Whitaker Chalk Swindle & Schwartz PLLC**
301 Commerce St., Ste. 3500
Ft. Worth, TX 76102
Tel: (817) 878-0500 / Fax: (817) 878-0501

CABRACH J. CONNOR (admitted pro hac vice)
Cab@CLandS.com
Texas Bar No. 24036390
**CONNOR LEE & SHUMAKER PLLC**
609 Castle Ridge Rd., Ste. 450
Austin, TX 78746
Tel: (512) 777-1254 / Fax: (888) 387-1134

*Attorneys for Plaintiff PINN, INC.*

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| PINN, INC.,<br><br>             Plaintiff,<br><br>  v.<br><br>APPLE INC.,<br><br>             Defendant. | **Case No. 8:19-cv-1805-DOC-JDE**<br><br>**PLAINTIFF PINN INC.'S RESPONSE IN OPPOSITION TO APPLE'S MOTION TO PRE-ADMIT CERTAIN TRIAL EXHIBITS [ECF 515-1]**<br><br>District Judge: Hon. David O. Carter<br>Magistrate Judge: John D. Early<br>Tech. Special Master: David Keyzer |

## I.  PRE-ADMISSION OF APPLE'S DISPUTED EXHIBITS IS IMPROPER AND VIOLATES THE COURT'S INSTRUCTION.

Apple is asking the Court to do the very thing the Court warned the parties it would not do: hear argument and rule on disputed opening statement PowerPoint slides and pre-admission of exhibits.  ECF 516, Exhibit A, Sept. 10, 2021 Hearing Transcript at 39:5-40:19.  At the pretrial hearing, the Court instructed the parties that if they agree, an exhibit can go up in opening but if there is a "disagreement and [the Court] has to get down to a discussion of 'Is this appropriate?'—I'm not going to allow anything," because "[i]t's a waste of [the Court's] time."  *Id.*

Apple ignored the Court's instructions and took a hard line in negotiating pre-admitted exhibits.  Apple refused to agree to the pre-admission of exhibits Pinn proposed (even those that Apple did not object to) unless and until Pinn agreed to the pre-admission of the Watson Patent Applications, which Pinn contends are not prior art.  Apple was insistent that no deal could ever be struck unless Apple was allowed to show the Watson patent applications to the jury in opening statement and call them "prior art" before the first witness took the stand.[1]

Admissibility of the Watson Patent Applications is hotly disputed because they do not predate the Pinn provisional application to which the asserted patents claim

---

[1] It was only when Apple conferenced about filing their *ex parte* motion that they unequivocally agreed to the pre-admission of the patents, file histories and accused products, because they wanted to be able to argue "fairness" to the Court. Pinn asked Apple to stay at the negotiating table, but Apple said it would be pointless without an agreement on the disputed exhibits they are now presenting to the Court.

priority.  Watson is not prior art, Pinn contends, because they post-date Pinn's priority date.  Apple contends that Watson can be proven as prior art once the effective filing date of Pinn's patents is shown to be *after* the Pinn provisional application (and after the Watson filing date).  Apple bears the burden to show and prove this at trial, which will require Apple to present expert testimony and will likely involve cross-examination of Pinn's inventor, Sean Kim, before that evidentiary threshold is met.  Apple wants to skip all of that and present in its opening statement the Watson references as "prior art."

Allowing Apple to argue in opening about "prior art" Watson references with no context about Pinn's filing date or the legal threshold Apple must satisfy first will affect the substantial rights of Pinn to present its case in the manner and in the order it sees fit.  Apple bears the burden to establish as part of its invalidity case that the Watson Applications are prior art.  *See, e.g., Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 131 S. Ct. 2238, 2240, 180 L. Ed. 2d 131 (2011); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009) ("[A]n alleged infringer who raises invalidity as an affirmative defense has the ultimate burden of persuasion to prove invalidity by clear and convincing evidence, as well as the initial burden of going forward with evidence to support its invalidity allegation.").  There is no need or burden to prove an earlier priority date until prior art that predates the asserted patent is established and proven. *Titan Tire Corp.*, 566 F.3d at 1376 ("Once the

challenger presents initially persuasive evidence of invalidity, the burden of going forward shifts to the patentee to present contrary evidence and argument.").

Even Apple admits that Watson's later-filed applications are only prior art when Apple "establish[es] through documents and expert testimony that they predate the Pinn patents, and thus invalidate them." ECF 515-1 at 11-12. None of that context, testimony or evidence will be presented in opening statements.[2] The Federal Circuit has established that procedural rules regarding burdens of proof dictate the order of presentation of evidence in an invalidity context. Specifically, the accused infringer first presents evidence of prior art status to support an invalidity argument, including evidence of entitlement to a prior art date antedating the asserted patent, followed by the patentee offering evidence showing the subject matter of the asserted patent was invented before that date. *Mahurkar v. C.R. Bard, Inc*., 79 F.3d 1572, 1576–77 (Fed. Cir. 1996).

The rest of Apple's list fares no better. Apple wants to do exactly what it told the Court it would not do: compare the Pinn product to the AirPods. Apple claims

---

[2] The Watson Patent Application issue is so complex that the parties were unable to agree on a preliminary or final jury instruction or verdict question on the issue, yet Apple contends that the Watson Patent Applications are "dead bang" prior art exhibits that it must show the jury during opening statement. ECF 478. Apple wants to show these exhibits to the jury in its PowerPoint without telling the Jury what constitutes prior art. ECF 478. Apple seeks to turn the opening statements into an opportunity to confuse the jury about these exhibits and to thereby invite error into the trial before the first witness even takes the stand.

that it wants to show the jury a Pinn product video (the Pinn Kickstarter video) for "damages" purposes.   Apple's explanation rings hollow.   The Kickstarter video, Apple claims, must be shown to the jury in opening because "the way Pinn marketed and sold its product is also relevant to Pinn's understanding of its device, especially vis-à-vis other products such as the Apple Airpods, which Mr. Kim has said destroyed his market." ECF 515-1 at 15.  But there is no lost profits damages theory in this case.

No expert or fact witness in this case will testify that the Pinn product embodies the asserted claims of either patent.   Rather, Apple wants to confuse the Jury by showing them the Pinn product in opening statements and telling the Jury that "Pinn has clearly associated its product with the asserted patents."  ECF 515-1 at 13-14.[3] There is no jury question on this issue.  The prejudice to Pinn that Apple seeks to impose is an improper (and confusing) argument to the Jury comparing the AirPods and the Pinn Product for the purpose of arguing non-infringement.  Even a limiting instruction would do little to help the jury during opening when they do not yet

---

[3] *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc) ("Infringement, literal or by equivalents, is determined by comparing an accused product not with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee, but with the properly and previously construed claims in suit."); *Johnson & Johnson Assocs., Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (citing *SRI Int'l*); *Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("[I]t is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent").

understand "infringement" or "validity."[4]  The only purpose of presenting the Pinn Kickstarter video is illegitimate: to compare the Pinn product, which neither party contends practices the asserted claims, to the accused Apple product.

Apple's "pre-admit" exhibit list epitomizes the types of exhibits that require context, foundation, a sponsoring witness, and testimony to present to the jury.  They should not be introduced to the jury through opening PowerPoint "argument" by counsel before any evidence or burdens have been met.

Pinn cannot and does not agree to the pre-admission of these exhibits, Fed. R. Evid. 103(a)(1)(A), and pre-admission by the Court sows the seeds of reversible error if Apple fails to satisfy its burden at trial because Pinn's rights would be substantially affected.  Fed. R. Civ. P. 61.  The Court has exercised its control over the mode and order of presenting evidence by admonishing the parties to agree on what they can agree on.  Fed. R. Evid. 611(a)(1)-(2).

Pinn asked Apple to not file this motion, which disobeys the Court's clear instructions.  If the Court is inclined the hear argument and make rulings on the pre-admission of exhibits, Pinn asks that the following exhibits (that Pinn previously discussed with Apple) also be considered for pre-admission:

---

[4] Apple argues that the limiting instruction agreed to by the parties will solve all issues, but that instruction was contemplated only "during the presentation of evidence regarding the Pinn Product: "The jury shall not compare the accused AirPods products to the Pinn Product for purposes of infringement or validity."

| Exhibit Number | Description |
|---|---|
| JTX 4 | Pinn's Provisional Patent Application ('978 Application) filed on April 3, 2015 which predates Watson Patent Applications |
| JTX 6 | Pinn Application No. PCT/US16/25936 |
| PTX 115 | Apple Patent: United States Patent No. 10,681,446 (*see* ECF 459 at 16-17) |
| JTX 239 | Pinn License Agreement (Apple's Expert admits is comparable, Knox at ¶ 55-56) |
| JTX 240 | Pinn License Agreement (Apple's Expert admits it is comparable, Knox at 83-84) |
| PTX 363 | Apple Financial Document (produced by Apple) |
| PTX 394 | 2019-03-20 Apple Press Release: AirPods, the world's most popular wireless headphones, are getting even better |
| PTX 406 | Apple Accused Product Model Numbers and Product Codes (Apple's product code names that are not in dispute and will help the Jury decipher Apple's documents) |
| PTX 413 | Reset your AirPods webpage |
| PTX 414 | Setup AirPods with your Mac and Other Bluetooth Devices Webpage |
| PTX 416 | Apple AirPods 2nd Generation Apple Website Excerpt |
| PTX 418 | Picture of AirPods hold button |

Pinn Inc.'s Response to Apple Inc.'s Motion to Pre-Admit Certain Trial Exhibits
Case No. 8:19-cv-1805-DOC-JDE

| PTX 421 | Apple's Responses to Pinn's Requests for Admission (Nos. 3-10, 16-19, 21-23, 27, 32, 42, 44-47, 49, 53, 62, 64, 72, 76, 81, 82, 90, 91, 94, 95, 98, 99, 106, 107, 110, 111, 127, 135, 138 & 146) |
|---------|------|
| DTX 870-875, 877-879 | Apple Financial Spreadsheets (produced by Apple) |
| JTX 1190 | Pinn's published Patent Application Document: U.S. Patent Application No. 2018/0131793 A1 |
| JTX 1191 | Pinn's published Patent Application Document: U.S. Patent Application No. 2017/0374184 A1 |
| PTX 1216-1218, 1318-1319 | Apple Line of Business Reports and Sales Numbers (produced by Apple) |
| PTX 1265 | Apple Stipulation on Number of Products Sold |
| PTX 1324 | Picture of Apple Headquarters |

Pinn is mindful of the Court's clear instructions and admonition at the pretrial conference (excerpted below) and makes this request only to the extent the Court decides that it will take up, hear, and decide pretrial evidentiary issues for the parties' opening statements. To be clear, Pinn understood the Court to direct the parties to prepare traditional opening statements previewing, but not showing and arguing, the evidence that the Jury will see during trial.

8:19-CV-01805-DOC - 9/10/2021 - Item Number 2

39

```
 1   12:00 noon.  Let's just say we got lucky and only took --
 2   first day, we'll take hour and 15 minutes or hour and a
 3   half.  We won't push it so the jurors get to know the
 4   area -- restaurants in the area.  Okay?  1:30.
 5           Now, you make your opening statements.  I don't
 6   anticipate or know how long -- and let's walk through that.
 7   If you both agree and are courteous and look at the other
 8   person's product, you can put it up.  But if you don't,
 9   there is nothing that's going up on a display.
10           And the reason for that is, in the past, 20 years
11   ago, I might spend my time wading through what each of you
12   thought you were going to display in an opening statement,
13   and it was objectionable.  So we were going through a whole
14   series of objections, taking a day or so beforehand, on
15   other cases unrelated to patent cases as well as some patent
16   cases.
17           And so, if you can work with, you know,
18   barebones -- you've been working well together -- if you
19   both agree, I'm happy to let you put a display up.  But if
20   there's a disagreement and I have to get down to a
21   discussion of "Is this appropriate?" -- I'm not going to
22   allow anything.  Just give a barebones opening and that's --
23   you wouldn't have any projections.  So I leave that to you
24   and your cooperation level.
25           MR. MARCHESE:  Your Honor, may I asked a
```

Pinn Inc.'s Response to Apple Inc.'s Motion to Pre-Admit Certain Trial Exhibits
Case No. 8:19-cv-1805-DOC-JDE

8:19-CV-01805-DOC - 9/10/2021 - Item Number 2

40

1   clarification?

2           THE COURT:  Well, certainly, Mr. Marchese.

3           MR. MARCHESE:  Can we show exhibits in our

4   openings?

5           THE COURT:  No.  No.  Because I haven't received

6   them yet.

7           Now, if they're "dead bang" exhibits, I would

8   certainly allow that.  But I don't want to get into -- in

9   other words, if you both have agreed upon an exhibit and

10  you're -- absolutely.  But I'm not going to assume that that

11  exhibit has been received into evidence until I received it

12  into evidence.

13          And I've gotten in -- gone down this road so many

14  times and wasted so much time with the bickering that goes

15  on about whether this is properly received or not --

16  including expert reports, by the way.  I'm just not going to

17  do that.  It's a waste of my time.  Okay?  So work together.

18  If you cooperate, fine.

19          But we're wasting time.

20                  DISCUSSION RE *ALICE*

21          THE COURT:  All right.  Now, the second thing that

22  was raised was the -- that David Keyzer called to my

23  attention what I'm going to call an "*Alice*" issue and the

24  proposal instruction on eligible subject matter.  I'd like

25  to hear a little bit more argument on that for just a

9

## II.   Apple's Motion Disregards Pinn's Legitimate Objections and Timing Concerns for the Orderly Presentation of Evidence at Trial.

### A.   Apple's Alleged Prior Art

The parties have agreed on pre-admission of numerous exhibits.  As the Court predicted, however, Apple held the process hostage by insisting that alleged prior art – particularly the so-called Watson Patent Applications – must be pre-admitted before Apple will consider any further agreement. Dkt. 515-1 at 2 (making misleading references to the "prior art Watson patent applications").

The Watson patent applications were filed two months *after* Pinn filed its provisional application to which the asserted patents claim priority.  The Watson references are *not* prior art.  In addition, the Court has not yet finalized its pretrial jury instructions, and it would be inappropriate and unduly prejudicial to publish non-prior art references to the jury before it has even been instructed on the issue of priority dates. Apple demands pre-admission so that it can preview this evidence to the jury during opening statements without having to meet its burden of showing that Pinn's priority date is actually later than April 3, 2015, which appears on the face of the asserted patents.

Apple also complains about Pinn's evidentiary objections to the alleged prior art, which Pinn will address in turn.

First, the Watson Patent Applications are not relevant. *See* Fed. R. Evid. 402. It is undisputed that the Watson Patent Applications post-date Pinn's provisional

10

patent application, dated April 3, 2015. The Watson Patent Applications must qualify as prior art first before they can invalidate Pinn's patents. To establish that they qualify as prior art, Apple must show that Pinn's patents are not entitled to the April 3, 2015, priority date. Lack of entitlement to the asserted priority date is a fact issue that Apple must prove by clear and convincing evidence. *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1328-29 (Fed. Cir. 2008) (clarifying that *PowerOasis* did not modify the "long-standing rule of patent law that, because an issued patent is by statute presumed valid, a challenger has the burden of persuasion to show by clear and convincing evidence that the contrary is true . . . [t]hat ultimate burden never shifts"). "The burden of persuasion . . . 'never shifts however much the burden going forward may jump from one party to another as the issues in the case are raised and developed.'" *Positive Techs. Inc. v. Sony Elecs. Inc.*, No. C 11-02226 SI, 2012 U.S. Dist. 6467, at *17 (N.D. Cal. Jan. 19, 2012) (citing *Tech. Licensing Corp.*, 545 F.3d at 1329). "Once that showing is made [by patent holder], the burden of production shifts back to the alleged infringer, to 'convince the court that [the patent holder] is not entitled to the benefit of the earlier filing date. 'Convince' is the operative word, because if the court is not persuaded by clear and convincing evidence that [the alleged infringer] is correct, [it has] failed to carry its ultimate burden of persuasion, and its defense of invalidity, based on anticipation by the [prior] art, fails." *Id*. at *19. Apple seeks to publish that evidence to the jury during opening statements and to refer

to it as "prior art" – before it has made the requisite showing on priority. The Watson Patent Applications are not relevant unless and until Apple has met this burden.

Second, the Watson Patent Applications are hearsay because they are out of court statements offered to prove the truth of the matter asserted.  Apple seeks to pre-admit this evidence, show it to the jury during opening statements, and at the same time argue that it is not offering the statements in the Applications for the "truth of the matter asserted."  Apple is offering these statements for the truth (e.g., the date, the substance of the disclosure in the Watson Applications, and the allegation that they are "prior art" to the Pinn patents).  Apple invites error by seeking to present these exhibits to the jury without any instruction or understanding that they are not offered for the truth of the matter asserted.  Without a sponsoring witness and an understanding of the context in which these exhibits are offered (i.e., *not* for the truth), the jury will be confused, and Pinn will be unfairly prejudiced.

Third, without a sponsoring witness, Apple cannot authenticate these exhibits. If these exhibits are pre-admitted, Apple will be able to present their contents to the jury without any sponsoring witness, limiting instruction, or necessary context. Apple offers no evidence to demonstrate that these exhibits meet the requirements of Rule 901.

Finally, Apple's arguments ring hollow in view of its opposition to preliminary instructions that would properly define prior art, explain the "first inventor to file"

rule, and written description requirements. Dkt. 478 (contested instruction on first to file and written description jury verdict question).  **In a tacit admission that the priority date is hotly contested, Apple has simultaneously withdrawn its previous agreement to pre-admit the Pinn provisional patent application (Joint Exhibit 4)**.  This exemplifies the bad-faith negotiation on pre-admission of exhibits that has characterized the parties' discussions.

Pinn is prepared to discuss the priority issue during its opening statement ("The evidence will show . . .") but views the Court's instruction as a clear prohibition against pounding its fist and demanding the right to preview that exhibit to the jury during opening statements. The purpose of opening statements is simply to preview the evidence, not to present it or to argue its merits.  Previewing patent applications that are not prior art would cause confusion that cannot be cured by instructions later.

### B. Pinn's Product, the Pinn Kickstarter Video, and the Apple AirPods (1st Generation) Video Are Not "Dead Bang" Admissible.

Apple seeks to mislead the jury by improperly presenting the Pinn product as a proxy for the patented inventions described in the Asserted Patents: "[T]he Pinn product is relevant to damages as *an embodying product of the asserted patents*. It is also relevant to commercial success of *the alleged invention* …." Motion at 11-12 (emphasis added).  These statements are grossly inaccurate and misleading, since

there is *no evidence* – from any party, witness, or expert – that the Pinn product practices any of the three asserted claims that remain in the case.

During the discovery phase, Apple utterly failed to secure an expert opinion showing how the Pinn product practices any claim of any Pinn patent. Pinn now seeks to fill that void by creating the impression during opening statements that "the Pinn product" is equivalent to "Pinn's patented inventions." Pinn will be unduly prejudiced if Apple is permitted to lay the groundwork for this ruse before the trial record has been developed in a way that provides the appropriate context.

If the Pinn product does not practice (or "embody") the claimed inventions from any of the three asserted claims, then the Pinn product is irrelevant. Pinn initially asserted dozens of claims from three different patents. For example, the fact that the Pinn product may (or may not) practice some claim that is no longer a part of this case from a patent that is no longer asserted in this case is irrelevant to the commercial success of the inventions claimed in the three remaining asserted claims.

Apple's secondary goal is to distract the jurors by focusing their attention *on to* Pinn's product, which is not accused of anything in this case, and *off of* the Accused Products in this case: Apple's 2nd Generation AirPods and the AirPods Pro. Apple insists the Pinn product is relevant because "Pinn has clearly associated its product with the asserted patents" by referencing those two patents (along with two other patents that are not asserted) on product packaging. This alleged "association" does

not establish that the Pinn product is relevant, and Apple fails to identify any issue in dispute that makes it so.

As for the videos, Apple's request highlights the very concerns that prompted Pinn's Motion in Limine No. 8 – a motion that was only denied after Apple agreed to a limiting instruction: "The jury shall not compare the accused AirPods to the Pinn Product for purposes of infringement or validity." Apple's Motion confirms Pinn's original instincts and concerns – namely, that Apple seeks to improperly compare the two products for purposes of infringement or validity. The Pinn video is not relevant for either side on the contested issues of infringement and invalidity. Nevertheless, Apple argues that the Pinn video is relevant on the issue of damages, because "Pinn's product was a commercial failure." But again, there is no evidence – from either side – that the Pinn product practices one of the three asserted claims to be litigated at trial. Premature presentation of the Pinn video – before Apple has established that the Pinn product actually practices an asserted claim – would be unduly prejudicial and confusing, because the jury may believe (and Apple hopes the jury will believe) that "the Pinn Product" is shorthand for "the patented inventions."

In addition, the video contains hearsay (statements made by third parties), and Apple fails to show how any of the statements are "statements against interest." To determine whether the statements are "statements against interest," Apple must

present the statements and explain how they are against Pinn's interests with respect to a disputed fact or issue that the jury will determine.

Finally, without a sponsoring witness, Apple cannot authenticate the Pinn Kickstarter video. Pinn has therefore objected on the additional grounds of authentication. Fed. R. Evid. 901.

The Apple AirPods (1st Generation) Trailer video is objectionable for additional reasons – regardless of whether or not Apple juxtaposes it with the Pinn Kickstarter video. The Apple video shows the AirPods (1st Generation) product, for which Pinn is no longer seeking damages, because Apple contends (and Pinn agrees) that Apple has not sold any First Generation units during the damages period that starts in October 2019; rather, all such sales started in December 2016 and concluded before October 2019. For that reason, the video is not relevant or, at a minimum, is misleading. Pinn's damages expert, Ms. Keiko Hikino, *may* discuss the First Generation product in connection with Georgia-Pacific Factor Number 11, which focuses on the extent to which the accused infringer (in this case, Apple) has made use of the patented inventions (in this case, the three remaining asserted claims).  But unless and until she does so, a video about the First Generation product is totally irrelevant, and Apple should not be permitted to preview it during opening statements.

In addition, the video contains hearsay and hearsay within hearsay. Even if Apple claims to offer the video for reasons other than the truth of the matter asserted,

the request for pre-admission presents additional complications and would require additional jury instructions before and after the opening statements. In any event, Apple has not identified which statements it offers for truthful for purposes or which statements it offers for other purposes.

Finally, presentation of the two videos also violates Pinn's MIL 8 and Apple's agreement that the Pinn product and the AirPods cannot be compared for purposes of infringement or validity.

### C. Apple Precedent on Admissibility Does Not Support the Pre-Admission that It Seeks.

Apple does not cite a single case that entitles them to preadmission of exhibits or that requires the Court to preadmit disputed exhibits so that they may be included in PowerPoint presentations in opening. *See Thompson v. TRW Auto., Inc.*, No. 2:09-cv-1375-JAD-PAL, 2014 U.S. Dist. LEXIS 75562, at *32 (D. Nev. 2014) (denying request to preadmit exhibits including award, certificate and trophies subject to Plaintiff's introduction of them "through a witness [] with personal knowledge of the authenticity of the[] documents and their relevance"). Apple found one case that used the term "dead bang," but that case did not address pre-admission of exhibits.

Pinn maintains legitimate objections to these disputed exhibits – that Pinn cannot waive.

## III.    Conclusion

Apple's Motion threatens to waste valuable time and violates clear instructions from the Court.  On the merits, Apple fails to make a compelling case that these issues must be addressed immediately, rather than in the normal course of this Court's procedures and during trial. By contrast, Pinn has demonstrated its legitimate concerns and objections about the undue prejudice that would result if Apple is permitted to circumvent the procedural rules, the evidentiary rules, and this Court's stated position. Apple's Motion should be denied.

If the Court is inclined to hear argument or decide pre-admission issues, Pinn requests an opportunity to present to the Court the exhibits it identified above, which Pinn presented to Apple during their negotiations.  If Apple's cherry-picked exhibits are available for it to characterize in its opening PowerPoint, Pinn should be afforded the same opportunity to show the jury certain exhibits that will feature in its case-in-chief.  Otherwise, the parties should be held to the Court's instruction and present opening statements that comply with the Rules and Your Honor's directive.

Dated:  March 7, 2021

/s/ *Cabrach Connor*

**Ryan E. Hatch**
ryan@ryanehatch.com
California Bar No. 235577
**LAW OFFICE OF RYAN E. HATCH, P.C.**
13323 Washington Blvd., Ste. 100
Los Angeles, CA 90066

18

Pinn Inc.'s Response to Apple Inc.'s Motion to Pre-Admit Certain Trial Exhibits
Case No. 8:19-cv-1805-DOC-JDE

Tel: (310) 279-5076
Fax: (310) 693-5328

**David A. Skeels** (admitted *pro hac vice*)
dskeels@whitakerchalk.com
Texas Bar No.  24041925
**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**
301 Commerce St., Ste. 3500
Ft. Worth, TX 76102
Tel:  (817) 878-0500
Fax:  (817) 878-0501

**Cabrach J. Connor** (*admitted pro hac vice*)
cab@clands.com
Texas Bar No. 24036390
Jennifer Tatum Lee (*admitted pro hac vice*)
jennifer@clands.com
Texas Bar No. 24046950
**CONNOR LEE & SHUMAKER PLLC**
609 Castle Ridge Rd., Ste. 450
Austin, TX 78746
Tel:  (512) 777-1254
Fax:  (888) 387-1134

**Attorneys for Plaintiff PINN, INC.**

Pinn Inc.'s Response to Apple Inc.'s Motion to Pre-Admit Certain Trial Exhibits
Case No. 8:19-cv-1805-DOC-JDE

## <u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 7, 2022, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.


*/s/ Cabrach Connor*
Cabrach Connor