Ryan E. Hatch (SBN 235577)
ryan@hatchlaw.com
HATCH LAW, P.C.
13323 Washington Blvd., Suite 100 Los Angeles, CA 90066
Tel: 310-279-5079

David A. Skeels (*pro hac vice*)
dskeels@whitakerchalk.com
WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
301 Commerce Street, Suite 3500 Fort Worth, Texas 76102
Tel: 817-878-0500

Cabrach J. Connor (*pro hac vice*)
cab@clands.com
Jennifer Tatum Lee (*pro hac vice*)
jennifer@clands.com
CONNOR LEE & SHUMAKER PLLC
609 Castle Ridge Road, Suite 450
Austin, Texas 78746
Tel: 512-777-1254

Attorneys for Plaintiff PINN, INC.

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 533-4240 / Fax: (858) 678-5099

Seth M. Sproul (SBN 217711)
sproul@fr.com
John W. Thornburgh (SBN 154627)
thornburgh@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Joy B. Kete (*pro hac vice*)
kete@fr.com
FISH & RICHARDSON P.C.
One Marina Park
Boston, MA 02210
Tel: 617-542-5070 / Fax: 617-542-8906

Attorneys for Defendant APPLE INC.

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| PINN, INC.,<br><br>                Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>                Defendant. | Case No. 8:19-cv-1805-DOC-JDE<br><br>**JURY INSTRUCTIONS PURSUANT TO THE COURT'S MARCH 16, 2022 ORDER (ECF 526)**<br><br>District Judge: Hon. David O. Carter<br>Magistrate Judge: John D. Early<br>Technical Special Master: David Keyzer |

# PRELIMINARY INSTRUCTIONS[1]

---

[1] The parties submit these instructions pursuant to the Court's March 16, 2022 Order (ECF 526) and do not waive their previous objections or withdraw their previous proposed questions and instructions.  As noted herein, Apple submits that the Court has not addressed its additional language in the effective filing date instruction.  *See* ECF 526.

## <u>PRELIMINARY INSTRUCTION NO. 1</u>

### DUTY OF JURY

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, 1.3 Duty of Jury (2017 Edition) (last Updated March 2021).

## PRELIMINARY INSTRUCTION NO. 2

## WHAT A PATENT IS AND HOW ONE IS OBTAINED

This case involves a dispute relating to United States patents. Before summarizing the positions of the parties and the issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right for up to 20 years from the date the patent application was filed to exclude others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons or entities believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents.  The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification concludes with one or more numbered sentences. These are the patent "claims." If a patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

The Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews information that is publicly available or that is submitted by the applicant. This information is called "prior art."

The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of technology that existed before the application was filed. A patent lists the prior art that the Examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and, thus, would be "allowed." This writing from the Examiner is called an "Office Action." If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims; the applicant also has an opportunity to change the claims, or to cancel the claims, or to submit new claims. This process may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue.  The papers generated during these communications between the Examiner and the applicant are called the "prosecution history."

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. In addition, there is the possibility that mistakes were made or that information was overlooked. Examiners have a lot of work to do, and no process is perfect. Also, unlike a court proceeding, patent prosecution takes place without input from those who are later alleged to infringe the patent. A person accused of infringement has the right to argue here in federal court that a claimed invention in

the patent is invalid because it does not meet the requirements for a patent. A person accused of infringement also has the right here in federal court to deny infringement.

It is your job to consider the evidence presented by the parties and determine independently whether or not Pinn has proven that Apple infringes the patents at issue and whether or not Apple has proven that the patents at issue are invalid.

Source:  Federal Circuit Bar Association Model Jury Instructions, last edited May 2020, ("FCBA") No. A.1 Preliminary Instructions.

## PRELIMINARY INSTRUCTION NO. 3

### THE PATENTS AT ISSUE

The case involves United States Patent Nos. 10,455,066 and 10,609,198.  For your convenience, the parties and I will often refer to U.S. Patent No. 10,455,066 by its last three numbers, namely, as the "'066 patent." The parties and I will often refer to U.S. Patent No. 10,609,198 by its last three numbers, namely, as the "'198 patent."

The '066 patent is titled: "Mobile System with Wireless Earbud."

The '198 patent is titled: "Personal Media System Including Base Station and Wireless Earbud."

The '066 patent is directed to a personal wireless media station including a base station and a wireless earbud.  The personal wireless media station may detect that the wireless earbud is docked to the base station, detect that the wireless earbud is undocked from the base station, and cause sound to begin playing through the wireless earbud while the wireless earbud is undocked from the base station.

The '198 patent is directed to a personal media system including a base station and a wireless earbud.  The personal media system interacts with a smartphone for wireless pairing. The base station has a connection hole to receive the wireless earbud. When the wireless earbud is plugged into the connection hole, the base station and wireless earbud form an integrated body.

## PRELIMINARY INSTRUCTION NO. 4

### SUMMARY OF CONTENTIONS

To help you follow the evidence, I will now give you a summary of the positions of the parties.

Pinn filed suit in this court seeking money damages from Apple for allegedly infringing the '066 and '198 patents by making, importing, using, selling, and offering for sale in the United States products that Pinn contends are covered by claims 10, of the '066 patent and claims 1, and 25 of the '198 patent. These are sometimes referred to as the "Asserted Claims." Pinn also contends that Apple has induced others to infringe the Asserted Claims. The products that are alleged to infringe are Apple's second generation AirPods and AirPods Pro.

Apple denies that it has infringed the Asserted Claims. Apple also contends that the Asserted Claims are invalid, and thus cannot be infringed. I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements. Also, the parties disagree regarding the effective filing date of the Asserted Claims. This may affect what qualifies as prior art in this case.

Your job will be to decide on a claim-by-claim basis whether the Asserted Claims have been infringed and whether or not those claims are invalid. If you decide that any claim of the '066 and '198 patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Pinn to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.

1

2      Source: FCBA No. A.2 Summary of Contentions.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PRELIMINARY INSTRUCTION NO. 5

### FACTS TO WHICH THE PARTIES HAVE AGREED

The following facts are agreed by Pinn and Apple and require no proof:

1. Seung Jin Kim is also known as Sean Kim.  Sean Kim is the President of Plaintiff, Pinn Inc.

2. U.S. Patent No. 10,455,066 is titled "Mobile System with Wireless Earbud" and may be referred to as "the '066 patent."

3. The '066 Patent issued on October 22, 2019.

4. U.S. Patent No. 10,609,198 is titled "Personal Media System Including Base Station and Wireless Earbud and may be referred to as "the '198 patent."

5. The '198 patent issued on March 31, 2020.

6. Pinn accuses second generation AirPods and AirPods Pro of infringing the '066 and '198 patents.  These products may be referred to as the "Accused Product" or the "Accused AirPods" throughout the case.

7. Apple announced its first generation AirPods in September 2016 and released that product in December 2016.

8. Apple released the second generation AirPods in March 2019.

9. Apple released the AirPods Pro in October 2019.

10. Apple has sold the Accused Products to customers in the United States.

11. Apple Inc. is a corporation organized under the laws of the State of California, with a principal place of business at One Apple Park Way, Cupertino, California 95014.

12. Pinn, Inc. is a corporation organized under the laws of the State of California, with a place of business at 2522 Chambers Rd., Suite 100, Tustin, California 92780.

Source: Dkt. 350-1 at 3; Ninth Circuit Manual of Model Civil Jury Instructions, 1.9 What is Evidence (2017 Edition) (last Updated March 2021).

## PRELIMINARY INSTRUCTION NO. 6
## PATENT CLAIMS AND CLAIM CONSTRUCTION

The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product. You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.

I have determined the meaning of certain terms in the asserted claims of the '066 and '198 patents. I have provided you with a document reflecting certain words and phrases that are used in those meanings. For any claim term for which I have not provided you with a definition, you will apply the ordinary meaning of that term in the field of the patent. You will apply my definitions of the terms I have construed. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide.

1   Source: FCBA No. A.3 Patent at Issue; FCBA B.2.1 Patent Claims; Dkt. 312

2   (order adopting TSM R&R on Claim Construction); Dkt. 423-1 (adopted by

3   Court during Pretrial hearing).

# PRELIMINARY INSTRUCTION NO. 7
## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are admitted into evidence;

3.      any facts to which Pinn and Apple have agreed; and

4.      any facts that I may instruct you to accept as proved.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, 1.9 What is Evidence (2017 Edition) (last Updated March 2021).

## PRELIMINARY INSTRUCTION NO. 8
### WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, 1.10 What is Not Evidence (2017 Edition) (last Updated March 2021).

## PRELIMINARY INSTRUCTION NO. 9

### DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, 1.12 Direct and Circumstantial Evidence (2017 Edition) (last Updated March 2021).

# PRELIMINARY INSTRUCTION NO. 10
## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, 1.13 Ruling on Objections (2017 Edition) (last Updated March 2021).

## **PRELIMINARY INSTRUCTION NO. 11**

### **CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.  the opportunity and ability of the witness to see or hear or know the things testified to;

2.  the witness's memory;

3.  the witness's manner while testifying;

4.  the witness's interest in the outcome of the case, if any;

5.  the witness's bias or prejudice, if any;

6.  whether other evidence contradicted the witness's testimony;

7.  the reasonableness of the witness's testimony in light of all the evidence; and

8.  any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, 1.14 Credibility of Witnesses (2017 Edition) (last Updated March 2021).

# PRELIMINARY INSTRUCTION NO. 12

## EXPERT OPINION

You will hear testimony from expert witnesses who will testify to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, 2.13 Expert Opinion (2017 Edition) (last Updated March 2021).

## PRELIMINARY INSTRUCTION NO. 13

### CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors. First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case. Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research

about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules. A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, 1.15 Conduct of the Jury (2017 Edition) (last Updated March 2021).

# PRELIMINARY INSTRUCTION NO. 14

## TAKING NOTES

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let note taking distract you. When you leave, your notes should be left in the jury room. No one will read your notes. Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, 1.18 Taking Notes (2017 Edition) (last Updated March 2021).

## PRELIMINARY INSTRUCTION NO. 15

### OUTLINE OF TRIAL

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence.

A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor.

On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, that is, that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

After the opening statements, Pinn will present its evidence in support of its contention that some of the claims of the '066 and '198 patents have been and continue to be infringed by Apple and that the infringement has been and continues to be willful.

To prove infringement of any claim, Pinn must persuade you that it is more likely than not that Apple has infringed that claim. To persuade you that any infringement was willful, Pinn must also prove that it is more likely than not that the

infringement was willful.  Apple will then present its evidence that the claims of the '066 and '198 patents are invalid. To prove invalidity of any claim, Apple must persuade you by clear and convincing evidence that the claim is invalid. In addition to presenting its evidence of invalidity, Apple will put on evidence responding to Pinn's evidence of infringement and willfulness.

Pinn may then put on additional evidence responding to Apple's evidence that the claims of the '066 and '198 patents are invalid, and to offer any additional evidence of infringement and willfulness. Apple may then respond to any such additional evidence.  This is referred to as "rebuttal" evidence.

Pinn's "rebuttal" evidence may respond to any evidence offered by Apple.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case. These closing arguments by the attorneys are not evidence. After the closing arguments and instructions, you will then decide the case.

Source: FCBA No. A.5 Outline of Trial.

1
2
3
4
5
6
7
8
9
10
11
12
13         **<u>INSTRUCTIONS DURING CASE</u>**
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>INSTRUCTION DURING CASE NO. 1</u>

### USE OF REQUESTS FOR ADMISSIONS

Evidence will now be presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, 2.12 Use of Requests for Admission (2017 Edition) (last Updated March 2021).

## <u>INSTRUCTION DURING CASE NO. 2</u>

### USE OF INTERROGATORIES

Evidence will now be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. The portions of the answers that are being read to you were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, 2.11 Use of Interrogatories (2017 Edition) (last Updated March 2021).

1
2
3
4
5
6
7
8
9
10
11
12
13 **PROPOSED FINAL INSTRUCTIONS**
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FINAL INSTRUCTION NO. 1**

**SUMMARY OF CONTENTIONS**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, Pinn seeks money damages from Apple for allegedly infringing the '066 and '198 patents by making, importing, using, selling, and offering for sale products that Pinn argues are covered by claims 10, of the '066 patent and claims 1 and 25 of the '198 patent. These are the "Asserted Claims" of the '066 and '198 patents.

Pinn also argues that Apple has actively induced infringement of the Asserted Claims by others.

The products that are alleged to infringe are Apple's second generation AirPods and AirPods Pro.

Apple denies that it has infringed any of the Asserted Claims. Apple also contends that the Asserted Claims are invalid. Apple further contends that Mr. Sean Kim is not the sole inventor of the '066 patent.

Your job will be to decide whether or not any of the Asserted Claims have been infringed and whether or not those claims are invalid. If you decide that any claim of the '066 and '198 patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Pinn to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later. Your job will also be to decide whether Apple has proved by clear and convincing evidence that Mr. Sean Kim is not the sole inventor of the '066 patent.

Source: Federal Circuit Bar Association Model Jury Instructions, last edited May 2020, ("FCBA") No. B.1 Summary of Contentions.

**FINAL INSTRUCTION NO. 2**

**CLAIM CONSTRUCTION**

I have already determined the meaning of certain terms in the asserted claims of the '066 and '198 patents. I have provided you a document reflecting those meanings.  For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning of that term in the field of the patent. You are to apply my definitions of the terms I have construed and the ordinary meaning in the field of the patent for the remaining terms.  However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide.

For the terms "wirelessly pairing" and "wireless pairing", the Court has construed these terms to mean: "establishing a trusted relationship between two devices that allows them to communicate wirelessly."

For the term "wirelessly paired", the Court has construed this term to mean: "a trusted relationship is established between two devices that allows them to communicate wirelessly."

For the term "smartphone" the Court has construed this term to mean: "mobile device that can communicate on a cellular network (and can do so without needing to communicate through another device), that can perform many of the functions of a computer, and that can be held by hand."

For the term "mobile application", the Court has construed this term to mean: "a software application installed on a mobile computing device."

For the term "in response to pressing of the user input button, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing with the smartphone such that the wireless earbud receives audio data originated from the smartphone and plays audio using the audio data from the smartphone", the Court has construed this term to mean: "in response to pressing of the user input button, the at least one processor is

configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing with the smartphone to enable the wireless earbud to receive and play audio data originated from the smartphone."

Source: FCBA No. A.3 Patent at Issue; Dkt. 312 (order adopting TSM R&R on Claim Construction); Dkt. 423-1 (adopted by Court during Pretrial hearing).

# FINAL INSTRUCTION NO. 3

## BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, 1.6 Burden of Proof—Preponderance of the Evidence (2017 Edition) (last Updated March 2021).

Final Instruction No. 3 – Page 1 of 1

# FINAL INSTRUCTION NO. 4

## INFRINGEMENT GENERALLY

I will now instruct you how to decide whether or not Pinn has proven that Apple has infringed any claim of the '066 or '198 patents. Infringement is assessed on a claim-by-claim basis.

Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, Pinn has alleged that Apple directly infringes the '066 and '198 patent.

In order to prove infringement, Pinn must prove that the requirements for direct infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain direct infringement in more detail.

Source: FCBA No. B.3.1 Infringement Generally.

# FINAL INSTRUCTION NO. 5

## DIRECT INFRINGEMENT

In order to prove direct infringement, Pinn must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Apple made, used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of a claim and did so without the permission of Pinn during the time the '066 and '198 patents were in force. You must compare the product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

There are two types of claims asserted by Pinn: independent and dependent. As you saw during the trial, an independent claim stands on its own. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed.

You have heard evidence about both Pinn's commercial product and Apple's accused products.  However, in deciding the issue of infringement you may not compare Apple's accused products to Pinn's commercial product.  Rather, you must compare Apple's accused products to the claims of the '066 and '198 patents when deliberating regarding infringement.

Source: FCBA No. B.3.1a Direct Infringement By "Literal Infringement."

# FINAL INSTRUCTION NO. 6
## WILLFUL INFRINGEMENT

In this case, Pinn argues that Apple willfully infringed Pinn's patents. If you have decided that Apple has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine whether Pinn proved that it is more likely than not that Apple knew of Pinn's patents and that the infringement by Apple was intentional. For example, you may consider whether Apple's behavior was malicious, wanton, deliberate, consciously wrongful, flagrant, or in bad faith.

However, you may not determine that the infringement was willful just because Apple was aware of the '066 and '198 patents and infringed them. Instead, you must also find that Apple deliberately infringed the '066 and '198 patents.

To determine whether Apple acted willfully, consider all facts and assess Apple's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited to:

1.  Whether or not Apple acted consistently with the standards of behavior for its industry;

2.  Whether or not Apple intentionally copied a product of Pinn that is covered by the '066 and '198 patents;

3.  Whether or not Apple reasonably believed it did not infringe or that the patent was invalid;

4.  Whether or not Apple made a good-faith effort to avoid infringing the '066 and '198 patents, for example, whether Apple attempted to design around the '066 and '198 patents; and

5.  Whether or not Apple tried to cover up its infringement.

Source: FCBA No. B.3.10 Willful Infringement; 2019 AIPLA Model Patent Jury Instructions, 11.0 Willful Infringement—Generally.

**FINAL INSTRUCTION NO. 7**

**INVALIDITY AND INVENTORSHIP– BURDEN OF PROOF-CLEAR AND CONVINCING EVIDENCE**

I will now instruct you on the rules you must follow in deciding whether or not Apple has proven that the Asserted Claims are invalid.

To prove that any claim of a patent is invalid, Apple must persuade you by clear and convincing evidence that the claim is invalid.  When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, 1.7 Burden on Proof-Clear and Convincing Evidence (2017 Edition) (last Updated March 2021); FCBA No. B.4, Validity, 4.1 Invalidity-Burden of Proof.

# FINAL INSTRUCTION NO. 8

## WRITTEN DESCRIPTION REQUIREMENT

The patent law contains certain requirements for the part of the patent called the specification. The written description requirement is designed to ensure that the inventor was in possession of the full scope of the claimed invention as of the patent's effective filing date.

Apple contends that every asserted claim of the '066 and '198 patents is invalid because the patent specifications do not contain an adequate written description of the invention. To succeed, Apple must show by clear and convincing evidence that a person having ordinary skill in the field, reading the patent specification as of the effective filing date, would not have recognized that it describes the full scope of the invention as it is finally claimed.  If a patent claim lacks adequate written description, it is invalid.

In deciding whether the '066 and '198 patents satisfy this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date. The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently.  A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses. It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s). A patent need not teach, and preferably omits, what is well known in the art.  However, a mere wish or plan for obtaining the claimed invention(s)

is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

Source: FCBA No. B.4.2a Written Description Requirement; *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 959 F.3d 1091 (Fed. Cir. 2020); *Ariad Pharmaceuticals, Inc. v. Eli Lilly and Co.*, 598 F.3d 1336 (2010).

## FINAL INSTRUCTION NO. 9

### ENABLEMENT

Another requirement for the specification is called the enablement requirement. Apple contends that every asserted claim of both the '066 and '198 patents is invalid because the specification does not "enable" the full scope of the claimed invention. To succeed, Apple must show by clear and convincing evidence that the '066 and '198 patent specifications do not contain a sufficiently full and clear description to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention as of the effective filing date, without undue experimentation. If a patent claim is not enabled, it is invalid.

The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be "unduly extensive." Some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

1. the time and cost of any necessary experimentation;

2. how routine any necessary experimentation is in the field of a mobile system with wireless earbud;

3. whether the patent discloses specific working examples of the claimed invention;

4. the amount of guidance presented in the patent;

5. the nature and predictability of the field of a mobile system with wireless earbud;

6. the level of ordinary skill in the field of a mobile system with wireless earbud; and

7. the nature and scope of the claimed invention.

No one or more of these factors is alone dispositive. Rather, you must make your decision about whether or not the degree of experimentation required is undue

based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the effective filing date, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

Source: FCBA No. B.4.2b Enablement.

# FINAL INSTRUCTION NO. 10

## PRIOR ART

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether the claims of the '066 and '198 patents are anticipated or obvious.

Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention. In order to qualify as prior art, the item must pre-date the effective filing date of the '066 patent or the '198 patent.

Regardless of whether particular prior art references were considered by the Patent Examiner during the prosecution of the application that matured into the '066 or '198 patents, Apple must prove by clear and convincing evidence that the challenged claims are invalid. This burden of proof on Apple never changes regardless of whether the Patent Examiner considered the reference.

You must determine whether the references and items Apple argues are prior art can be considered in determining whether the asserted claims of the '066 and '198 patents are anticipated or obvious. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

Apple contends that the Apple Bluetooth Headset is prior art because it was publicly known or was used, on sale, or otherwise made available to the public before the effective filing date of the Pinn patents. An invention is known when the information about it was reasonably accessible to the public on that date. An invention was publicly used when it was either accessible to the public or commercially exploited. An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., it was reduced to practice or it had been described such that a person having ordinary skill in the field of the

technology could have made and used the claimed invention, even if it was not yet reduced to practice or publicly disclosed.

Apple contends that asserted prior art is prior art because it was published or otherwise made available to the public before the effective filing date of the Pinn patents.

Apple must prove by clear and convincing evidence that asserted prior art is prior art.

Source: FCBA No. B.4.3, 4.3a-1, -3 Prior Art; 2019 AIPLA Model Patent Jury Instructions, 5.1 Prior Art Considered or Not Considered by the USPTO; *In re Antor Media Corp.*, 689 F.3d 1282, 1289 (Fed. Cir. 2012) (citing *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1354 (Fed. Cir. 2003)).

## FINAL INSTRUCTION NO. 11
### EFFECTIVE FILING DATE

You will have to determine whether Apple has proven by clear and convincing evidence that asserted prior art is, in fact, prior art.  This may depend upon the effective filing dates of the '066 and '198 patents.  The "effective filing date" is the actual filing date of the patent or the patent application that includes the claimed invention.

As I explained earlier, Pinn contends that the '198 and '066 patents are entitled to an effective filing date, and therefore a priority date, of April 3, 2015 based on Pinn's filing of Provisional Application No. 62/142,978.  Apple disagrees and contends that the effective filing dates for the Pinn patents are later, when Pinn filed its non-provisional applications.  Pinn filed the non-provisional application for '066 patent on April 4, 2016, and filed the non-provisional application for the '198 patent on June 16, 2017.

Apple contends that the Pinn patents are not entitled to an effective filing date April 3, 2015, and, therefore, the Watson Patent Applications are prior art.  Pinn disagrees on the basis that Pinn's patents are entitled to the April 3, 2015 effective filing date, which is earlier than the Watson Patent Applications.

The Watson Patent Applications are not prior art if you find that Apple failed to prove by clear and convincing evidence that the Pinn patents are not entitled to the April 3, 2015 effective filing date.

I previously provided instructions to you on the written description requirement, which you should apply in making your determination of effective filing date.  Pinn's asserted claims are entitled to the April 3, 2015 effective filing date if what is set forth in Provisional Application No. 62/142,978 satisfies the written description requirement for the asserted claims of the '066 and '198 patents.

1    Apple bears the burden of proving by clear and convincing evidence that
2 Provisional Application No. 62/142,978 does not provide adequate written
3 description support for the asserted claims of the '066 and '198 patents.

4    When considering whether the provisional application satisfies the written
5 description requirement, it is the disclosure of the application that counts. Entitlement
6 to a filing date does not extend to subject matter which is not disclosed but would be
7 obvious over what is disclosed. While the meaning of terms, phrases, or diagrams in
8 a disclosure is to be explained or interpreted from the vantage point of one skilled in
9 the art, all the limitations must appear in the specification.

13 Source: *Positive Techs. Inc. v. Sony Elecs. Inc*., No. C 11-02226 SI, 2012 U.S.
14 Dist. LEXIS 6467, at *17 (N.D. Cal. Jan. 19, 2012) (citing *Tech. Licensing*
15 *Corp. v. Videotek, Inc*., 545 F.3d 1316, 1328-29 (Fed. Cir. 2008)); *Ariad*
16 *Pharm., Inc. v. Eli Lilly & Co*., 598 F.3d 1336, 1351 (Fed. Cir. 2010); and
17 *Martek Biosciences Corp. v. Nutrinova, Inc*., 579 F.3d 1363, 1369, fn3 (Fed.
18 Cir. 2009).

Final Instruction No. 11 – Page 2 of 2

### *APPLE PROPOSED* FINAL INSTRUCTION NO. 11
### EFFECTIVE FILING DATE

You will have to determine whether Apple has proven by clear and convincing evidence that asserted prior art is, in fact, prior art. This may depend upon the effective filing dates of the '066 and '198 patents. The "effective filing date" is the actual filing date of the patent or the patent application that includes the claimed invention.

As I explained earlier, Pinn contends that the '198 and '066 patents are entitled to an effective filing date, and therefore a priority date, of April 3, 2015 based on Pinn's filing of Provisional Application No. 62/142,978. Apple disagrees and contends that the effective filing dates for the Pinn patents are later, when Pinn filed its non-provisional applications. Pinn filed the non-provisional application for '066 patent on April 4, 2016, and filed the non-provisional application for the '198 patent on June 16, 2017.

Apple contends that the Pinn patents are not entitled to an effective filing date April 3, 2015, and, therefore, the Watson Patent Applications are prior art. Pinn disagrees on the basis that Pinn's patents are entitled to the April 3, 2015 effective filing date, which is earlier than the Watson Patent Applications.

The Watson Patent Applications are not prior art if you find that Apple failed to prove by clear and convincing evidence that the Pinn patents are not entitled to the April 3, 2015 effective filing date.

I previously provided instructions to you on the written description requirement, which you should apply in making your determination of effective filing date. Pinn's asserted claims are entitled to the April 3, 2015 effective filing date if what is set forth in Provisional Application No. 62/142,978 satisfies the written description requirement for the asserted claims of the '066 and '198 patents.

An issued patent is given the benefit of the earlier filing date of its provisional application if (1) the provisional application contains a written description of the

*Apple's Proposed* Final Instruction No. 11 – Page 1 of 3

invention claimed in the issued patent in such full, clear, concise, and exact terms to enable a person having ordinary skill in the art to practice the invention claimed in the issued patent, and (2) the subject matter relied upon in the issued patent is supported by the provisional application.  In other words, the description must clearly allow a person of ordinary skill in the art to recognize that the inventor invented what is claimed.[2]

Apple bears the burden of proving by clear and convincing evidence that Provisional Application No. 62/142,978 does not provide adequate written description support for the asserted claims of the '066 and '198 patents.

When considering whether the provisional application satisfies the written description requirement, it is the disclosure of the application that counts.  Entitlement to a filing date does not extend to subject matter which is not disclosed but would be obvious over what is disclosed.  While the meaning of terms, phrases, or diagrams in

_____

[2] **Pinn**:  Per the Court's Order, the preceding effective filing date instruction includes the language proposed by Apple from *Lockwood v. American* Airlines, *Inc.*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997) and instructions on Apple's burden of proof.  *See* ECF 526.  Apple's proposed underlined additions is contrary to the Court's order (ECF 526) and seeks to reintroduce additional instructions on written description that are not in the model instruction. *See* Federal Circuit Bar Association model instruction at FCBA No. B.4.2a Written Description Requirement. The model written description instruction and the Court's order addresses Apple's concerns about these issues and the written description (Final Instruction No. 8) will have already been provided to the jury. Apple's additions are confusing and contrary to the Court's order.  *See* ECF 526.  **Apple:** Apple's proposed instruction adds a paragraph that correctly states the law and includes an important direct quote the Federal Circuit has repeated several times.  *E.g.*, *Ariad Pharmaceuticals, Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (2010) ("the description must 'clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed.'").  Apple's proposal also quotes the statute, 35 U.S.C. § 112 ("a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same").  Apple believes ECF 526 did not address this aspect of the parties' dispute.

*Apple's Proposed* Final Instruction No. 11 – Page 2 of 3

a disclosure is to be explained or interpreted from the vantage point of one skilled in the art, all the limitations must appear in the specification.

Source:  *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) ("the description must 'clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed'"); *Studiengesellschaft Kohle, M.B.H. v. Shell Oil Co.*, 112 F.3d 1561, 1564 (Fed. Cir. 1997); 35 U.S.C.A. § 120; *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1571-72 (1997).

# FINAL INSTRUCTION NO. 12

## ANTICIPATION

In order for someone to be entitled to a patent, the invention must actually be "new." Apple contends that the asserted claims of the asserted patents are invalid because the claimed inventions are anticipated. Apple must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid.

Specifically, Apple contends that the following pieces of prior art anticipate claims ___ of the ___ patent: [fill in based on proof at trial]

Anticipation must be determined on a claim-by-claim basis. Apple must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied—such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

Where Apple is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

Final Instruction No. 12 – Page 1 of 2

1    Source: FCBA No. B4.3b-1, Anticipation.

# FINAL INSTRUCTION NO. 13

## OBVIOUSNESS

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent before the effective filing date of the patent.

Apple may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the patent was filed in the field of wireless earbuds.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of wireless earbuds that someone would have had at the time the patent was filed, the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the patent's effective filing date.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the patent's effective filing date, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as:

1.   whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);

2.   whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3.      whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

4.      whether the prior art teaches away from combining elements in the claimed invention;

5.      whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

A.      Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

B.      Whether the claimed invention satisfied a long-felt need;

C.      Whether others had tried and failed to make the claimed invention;

D.      Whether others invented the claimed invention at roughly the same time;

E.      Whether others copied the claimed invention;

F.      Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

G.      Whether the claimed invention achieved unexpected results;

H.      Whether others in the field praised the claimed invention;

I.      Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

J.      Whether others sought or obtained rights to the patent from the patent holder; and

K.      Whether the inventor proceeded contrary to accepted wisdom in the field.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

Source: FCBA No. B.4.3, 4.3c, Obviousness.

# FINAL INSTRUCTION NO. 14

## LEVEL OF ORDINARY SKILL

In deciding what the level of ordinary skill in the field of wireless earbuds was, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

Pinn contends that the level of ordinary skill in the field was a person with an electrical engineering degree and two or more years of professional experience working with consumer products and wireless communications, or equivalent experience and training. With respect to an equivalent level of experience and training, a person with at least a bachelor's degree in industrial design and at least two to five years of professional experience working with consumer mobile wireless products and designing wireless systems would have equivalent experience and training.

Apple contends that the level of ordinary skill in the field was a person with a bachelor's degree in electrical engineering or some similar technical field, along with two or more years of experience with mobile electronic devices and wireless communication networks. Additional education could substitute for some experience, and substantial experience could substitute for some of the educational background.

Source: FCBA No. B.4.3, 4.3c(i), Level of Ordinary Skill.

## **FINAL INSTRUCTION NO. 15**

### **INVENTORSHIP**

In this case, Apple contends that the '066 patent is invalid because of alleged improper inventorship. A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent. This is known as the "inventorship" requirement.

To be an inventor, one must make a significant contribution to the conception of at least one of the claims of the patent even if that claim has not been alleged to be infringed. Whether the contribution is significant in quality is measured against the scope of the full invention. If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor. Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor. What is required is some significant contribution to the idea claimed.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.

Source: FCBA No. B.4.3, 4.3d Inventorship.

### FINAL INSTRUCTION NO. 16

### DAMAGES GENERALLY

If you find that Apple infringed any valid claim of the asserted patents, you must then consider what amount of damages to award to Pinn. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Apple has not infringed any asserted claim of the asserted patents, or that all of the asserted claims are invalid, then Pinn is not entitled to any damages.

The damages you award must be adequate to compensate Pinn for the infringement.  They are not meant to punish an infringer.

Pinn has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Pinn establishes that it more likely than not has suffered. While Pinn is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that Pinn may be entitled to recover. In this case, Pinn seeks a reasonable royalty.  A reasonable royalty is defined as the money amount Pinn and Apple would have agreed upon as a fee for use of the invention at the time just prior to when infringement began. You must be careful to ensure that award is no more and no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly.

Source: FCBA No. B.5.1, Damages—Introduction.

## **FINAL INSTRUCTION NO. 17**

## **REASONABLE ROYALTY DEFINITION—USING THE "HYPOTHETICAL NEGOTIATION" METHOD**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed inventions in the United States or to import the claimed inventions into the United States. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

Source: FCBA No. B.5.6, Reasonable Royalty—Definition

# FINAL INSTRUCTION NO. 18

## DAMAGES – LUMP SUM VS. RUNNING ROYALTY

A reasonable royalty can be paid either in the form of a one-time lump sum payment or as a "running royalty." Either method is designed to compensate the patent holder based on the infringer's use of the patented technology. It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.

Reasonable royalty awards can take the form of a lump sum payment. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product, both past and future. When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

Reasonable royalty awards may also take the form of a running royalty based on the revenue from or the volume of sales of licensed products. A running royalty can be calculated, for example, by multiplying a royalty base by a royalty rate, or by multiplying the number of infringing products or product units sold by a royalty amount per unit.

Source: FCBA No. B.5.7, Damages - Lump Sum vs. Running Royalty.

# FINAL INSTRUCTION NO. 19

## REASONABLE ROYALTY—RELEVANT FACTORS IF USING THE HYPOTHETICAL NEGOTIATION METHOD

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent(s):

1.  Any royalties received by Pinn for the licensing of the patent-in-suit, proving or tending to prove an established royalty. [3]

2.  The rates paid by Apple to license other patents comparable to the '066 and '198 patents.

3.  The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.  Pinn's established policy and marketing program to maintain its right to exclude others from using the patented inventions by not licensing others to use the inventions, or by granting licenses under special conditions designed to preserve that exclusivity.

5.  The commercial relationship between Pinn and Apple, such as whether or not they are competitors in the same territory in the same line of business.

6.  The effect of selling the patented product in promoting other sales of Apple; the existing value of the inventions to Pinn as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.  The duration of the '066 and '198 patents and the term of the license.

---

[3] The parties initially include all of the *Georgia Pacific* factors but agree that if either party contends that there was not sufficient evidence presented with respect to one or more factors that the issue will be timely raised.

8.     The established profitability of the product made under the '066 and '198 patents; its commercial success; and its popularity.

9.     The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for achieving similar results.

10.    The nature of the patented inventions; the character of the commercial embodiment of it as owned and produced by or for Pinn; and the benefits to those who have used the inventions.

11.    The extent to which Apple has made use of the inventions; and any evidence that shows the value of that use.

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions.

13.    The portion of the profit that arises from the patented inventions themselves as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.    The opinion testimony of qualified experts.

15.    The amount that a licensor (such as Pinn) and a licensee (such as Apple) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

Source: FCBA No. B.5.8, Reasonable Royalty— Relevant Factors; 2019 AIPLA Model Patent Jury Instructions, 10.2.5.3 Reasonable Royalty-Relevant Factors If Using the Hypothetical Negotiation Method.

## **FINAL INSTRUCTION NO. 20**

### **DAMAGES – COMPARABLE AGREEMENTS**

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

Source: FCBA No. B.5.9, Reasonable Royalty—Comparable Agreements.

**<u>FINAL INSTRUCTION NO. 21</u>**
**<u>DATE OF COMMENCEMENT OF DAMAGES-PRODUCTS</u>**

In determining the amount of damages, you must determine when the damages began.

If you find that Apple infringed a valid claim of the '066 Patent, then damages began October 22, 2019.

If you find that Apple did *not* infringe a valid claim of the '066 Patent but did infringe a valid claim of the '198 Patent, then damages began March 31, 2020.

Source: FCBA No. B.5.10, Date of Commencement of Damages-Products

**FINAL INSTRUCTION NO. 22**

**DAMAGES – ATTRIBUTION/APPORTIONMENT**

The amount you find as damages must be based on the value attributable to the patented inventions, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or Apple's size or market position. A royalty compensating the patent holder for damages must reflect the value attributable to the allegedly infringing features of the accused product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

The ultimate reasonable royalty award must be based on the incremental value that the patented inventions add to the end product. For that reason, you should award damages based on a royalty rate or a lump sum that reflects the incremental value.

Sometimes, damages calculations may be based on comparable license agreements that reflect "built-in" apportionment, that is to say, license agreements that account for the economic circumstances of the parties, that reflect the market's actual valuation of the patent, and that assume the negotiators of the license settled on a royalty rate and royalty base combination or a lump sum embodying the value of the asserted patents.  It is up to you decide whether any alleged comparable agreements in this case include such "built-in" apportionment.

Source: FCBA No. B.5.12, Damages—Apportionment, including footnote 5 thereto (modified as necessary for the facts of the case).  *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) ("estimating a reasonable royalty is not an exact science"); *Riles v. Shell Exploration & Prod. Co*., 298 F.3d 1302, 1311

(Fed. Cir. 2002) ("this analysis necessarily involves some approximation of the market as it would have hypothetically developed absent infringement"); *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) ("the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product"), quoting *Ericsson, Inc. v. D-link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *id.* at 1302 ("the smallest salable patent-practicing unit principle provides that, where a damages model apportions from a royalty base, the model should use the smallest salable patent-practicing unit as the base"); *id.* at 1304 (describing "our prior approvals of a methodology that values the asserted patent based on comparable licenses"); *id.* ("Such a model begins with rates from comparable licenses and then account[s] for differences in the technologies and economic circumstances of the contracting parties. Where the licenses employed are sufficiently comparable, this method is typically reliable because the parties are constrained by the market's actual valuation of the patent") (internal quotations and citations omitted) (brackets in original); *Vectura Ltd. v. GlaxoSmithKline LLC*, 981 F.3d 1030, 1040-41 (Fed. Cir. 2020) ("[W]hen a sufficiently comparable license is used as the basis for determining the appropriate royalty, further apportionment may not necessarily be required. … That is because a damages theory that is dependent on a comparable license (or a comparable negotiation) may in some cases have 'built in apportionment.' … Built-in apportionment effectively assumes that the negotiators of a comparable license settled on a royalty rate and royalty base combination embodying the value of the asserted patent. … [A] party relying on a sufficiently comparable license can adopt the comparable license's royalty rate and royalty base without further apportionment …."), quoting *Commonwealth*, 809 F.3d at 1303.

**FINAL INSTRUCTION NO. 23**

**REASONABLE ROYALTY—AVAILABILITY OF SUBSTITUTES**

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable substitute must be a product that is licensed under the patent or that does not infringe the patent.

Source: 2019 AIPLA Model Patent Jury Instructions, 10.2.5.8 Reasonable Royalty-Availability of Non-Infringing Substitutes.

Dated:  March 18, 2022                    CONNOR LEE & SHUMAKER PLLC

                                          By: */s/ Cabrach Connor*

                                          RYAN E. HATCH (SBN 235577)
                                          ryan@hatchlaw.com
                                          Hatch Law, P.C.
                                          13323 Washington Blvd., Suite 100
                                          Los Angeles, CA 90066
                                          Tel: 310-279-5079

                                          DAVID A. SKEELS (*pro hac vice*)
                                          dskeels@whitakerchalk.com
                                          WHITAKER CHALK SWINDLE &
                                          SCHWARTZ PLLC
                                          301 Commerce Street, Suite 3500
                                          Fort Worth, Texas 76102
                                          Tel: 817-878-0500 / Fax: 817-878-0501

                                          CABRACH J. CONNOR (*pro hac vice*)
                                          cab@clands.com
                                          JENNIFER TATUM LEE (*pro hac vice*)
                                          jennifer@clands.com
                                          CONNOR LEE & SHUMAKER PLLC
                                          609 Castle Ridge Road, Suite 450
                                          Austin, Texas 78746
                                          Tel: 512-777-1254 / Fax: 888-387-1134

                                          Attorneys for Plaintiff PINN, INC.

Dated:  March 18, 2022

FISH & RICHARDSON P.C.

By: */s/ John Thornburgh*
_____

    Christopher S. Marchese (SBN 170239)
    marchese@fr.com
    633 West Fifth Street, 26th Floor
    Los Angeles, CA 90071
    Tel: (213) 533-4240
    Fax: (858) 678-5099

    Seth M. Sproul (SBN 217711)
    sproul@fr.com
    John W. Thornburgh (SBN 154627)
    thornburgh@fr.com
    FISH & RICHARDSON P.C.
    12860 El Camino Real, Suite 400
    San Diego, CA 92130
    Tel: (858) 678-5070
    Fax: (858) 678-5099

    Joy B. Kete *(pro hac vice)*
    kete@fr.com
    Fish & Richardson P.C.
    One Marina Park
    Boston, MA 02210
    Tel: 617-542-5070
    Fax: 617-542-8906

Attorneys for Defendant APPLE INC.