RYAN E. HATCH
ryan@hatchlaw.com
California Bar No. 235577
Hatch Law, PC
13323 Washington Blvd., Ste. 100,
Los Angeles, CA 90066
Tel: (310) 279-5079/Fax: (310) 693-5328

DAVID A. SKEELS (admitted pro hac vice)
dskeels@whitakerchalk.com
Texas Bar No. 24041925
Whitaker Chalk Swindle & Schwartz PLLC
301 Commerce St., Ste. 3500, Ft. Worth, TX 76102
Tel: (817) 878-0500/Fax: (817) 878-0501

CABRACH J. CONNOR (admitted pro hac vice)
cab@clands.com
Texas Bar No. 24036390
Connor Lee & Shumaker PLLC
609 Castle Ridge Rd., Ste. 450, Austin, TX 78746
Tel: (512) 777-1254/ Fax: (888) 387-1134

Attorneys for Plaintiff PINN, INC.

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| PINN, INC.,<br><br>           Plaintiff,<br><br>   v.<br><br>APPLE INC.,<br><br>           Defendant. | Case No. 8:19-cv-1805-DOC-JDE<br><br>**PINN'S RESPONSE TO APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(A)**<br><br>District Judge: Hon. David O. Carter<br>Magistrate Judge: John D. Early<br>Tech. Special Master: David Keyzer<br><br>Trial Date:   August 2, 2022<br>Courtroom:  10A<br>Judge:        Hon. David O. Carter |

## I. INTRODUCTION

Apple has filed its Motion for Judgment as a Matter of Law Under Rule 50(a) ("Motion"). ECF 624. To the extent required under applicable law, Pinn has satisfied its burden to present substantial evidence on each of the issues raised below.

## II. APPLICABLE LAW

The standard for evaluating a motion for judgment as a matter of law (JMOL) is as follows:

> We review a district court's order denying JMOL under the standard applied by the regional circuit. *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 839 F.3d 1034, 1040 (Fed. Cir. 2016). In the Ninth Circuit, JMOL "is proper when the evidence permits only one reasonable conclusion and the conclusion is contrary to that of the jury." *See Monroe v. City of Phoenix*, 248 F.3d 851, 861 (9th Cir. 2001). The Ninth Circuit explains that "[t]he evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *Id*. The Ninth Circuit reviews a district court's decision to deny JMOL de novo. *Id*.

*Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 985 (Fed. Cir. 2022) (emphasis added) (although *here* this is *pre*-jury submission, the standard to *obtain* submission to the jury is not higher than that to sustain the jury's verdict). Apple cannot meet this exacting standard as to any of the bases on which it is seeking JMOL.

## III. SUBSTANTIAL EVIDENCE OF INFRINGEMENT

Pinn presented substantial evidence that the AirPods 2nd Generation and AirPods Pro ("Accused Products") satisfy each and every limitation of Claim 10 of the '066 Patent and Claim 25 of the '198 Patent. That evidence was presented primarily by Pinn's infringement expert, Dr. Rhyne.[1] Additional supporting evidence was provided by Professor Julie Workman and by Apple engineers Kurt

---

[1] All references and citations to specific testimony include the exhibits described or discussed therein.

Stiehl and Robert Watson.

### A. The AirPods initiate the pairing process in response to pressing a user input button on the case

Pinn's expert, Dr. Rhyne, went through a step by step and limitation by limitation analysis of how the AirPods Gen. 2 and AirPods Pro read on *each claim limitation* for Claim 10 of the '066 Patent and Claim 25 of the '198 Patent. *See* 8/4/2022 Transcript, Day 3, Vol. IV, at 13-45 (Testimony of Rhyne). He concluded that all limitations of both Claims were met, and that the Accused Products infringe. For example, with respect to the pairing process, *see id*. at 28, 35-36.

Also, Prof. Workman explained that the pairing process was initiated as taught by the claims, including specifically pointing to source code that shows this functionality. She testified, for example: "[T]his same command, if either is true, is sent to the buds to tell it to activate . . . pairing, which results in the buds becoming discoverable. Q. So, in other words, the same process is carried out whether it's out-of-box pairing or button pairing? A. Yes." 8/4/2022 Transcript, Day 3, Vol. I at 29:6-12; *see also id*. at 34:2-4 ("A. Yes. We already saw that it can tell it to enter its pairing mode and … it'll charge the bud, and various other things."); *id. at* 39:19-25 ("Q. Now, you testified that when a user presses a button on the case, the case sends a message to the earbud, the AirPods' earbuds, to become discoverable; right? A. It sends a command to tell it to start its pairing state, yes. Q. And that pairing state is to become discoverable? A. Yes, sir.").

Additionally, in patent applications directed to the Accused Products, Apple used "initiate pairing" language in communications with the Patent Office. *See*, *e.g.*, 8/3/2022 Transcript, Day 2, Vol. III at 28-31 (Testimony of Stiehl). This is more than adequate testimony to submit this issue to the jury.

### B. The AirPods charging case initiates charging of a battery in the earbud

Apple engineer, Kurt Stiehl, admitted that the Accused Products have

charging circuitry. 8/3/2022 Transcript, Day 2, Vol. III at 52, 54.  Prof. Workman explained that the charging case initiates charging of the battery in the earbud, specifically pointing to relevant source code. She concluded: "Q. So does this mean that the code in the charging case is initiating the charging of the earbud? A. Yes." 8/4/2022 Transcript, Day 3, Vol. I at 25:15-17. *See also id*. at 22-24. Additionally, Dr. Rhyne explained how this limitation was satisfied by the Accused Products. *See* 8/4/2022 Transcript, Day 3, Vol. IV at 18-22, 25-27, and 41-42. Again, this evidence is more than sufficient.

      **C.**     **The AirPods include a charging case that satisfies the "mobile base station" limitation**

Dr. Rhyne clearly explained how this limitation was satisfied. *See* 8/4/2022 Transcript, Day 3, Vol. IV at 15, 17-18. *See also* Prof. Workman testimony at 8/4/2022 Transcript, Day 3, Vol. I at 18:20-19:5, 19:15-18; 21:2-5; 25:23-26:6; 30:3-13. Pinn presented more than substantial evidence. Indeed, Apple is now pursuing "base station" claim constructions that the Court previously rejected. *See, e.g.*, ECF 423-1 at 26-45 and ECF 459 at 4.

      **D.**     **The AirPods practice the "configured to generate sound" limitation**

Apple engineer Watson testified on this issue as follows: "Q. ... The sound is coming out of the earbud; correct? A. After the earbud has been located, the AirPod, a sound -- it will play a sound. Q. But isn't the sound played so that you can locate the earbud? A. The sound is played so you can hear it and help you locate the earbud." 8/4/2022 Transcript, Day 3, Vol. 2, at 26:5-12; *see also id.* at 27:12-15 ("Q. The AirPod and the phone have to be connected and wirelessly paired and communicating over Bluetooth for that sound to come out of the AirPods; correct? A. Yeah, I agree."). Dr. Rhyne also explained at length how this limitation was satisfied. *See* 8/4/2022 Transcript, Day 3, Vol. IV at 29-34. This evidence presents a jury issue.

## IV. SUBSTANTIAL EVIDENCE OF WRITTEN DESCRIPTION SUPPORT

Here, "written description" proof was presented through the direct testimony of Dr. Scott Nettles. *See* 8/3/2022 Transcript, Day 2, Vol. 4, at 50:5-18; 51:1-53:2; 53:17-23, discussing, for example, Claims 15 and 11 of the provisional application in connection with the "direct communication" issue. *See also id*. at 53:24-56:2, 72:5-73:19, and 77:22-78:21. Dr. Nettles opined that each and every limitation of Claim 10 of the '066 Patent and Claim 25 of the '198 Patent are fully disclosed in and enabled by the April 3, 2015, provisional patent application. *Id*. at 95:4-7. Sean Kim also presented evidence of written description support, particularly with respect to direct communication between a smartphone and an earbud. *See* 8/5/2022 Transcript, Day 4, Vol. I at 51:16-53:13. The asserted claims are supported by the April 3, 2015, provisional application and, therefore, entitled to that effective filing date.

Moreover, written description is subsumed in the issue of invalidity, which Apple must prove by clear and convincing evidence. The burden never shifts away from Apple. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

## V. SUBSTANTIAL EVIDENCE OF DAMAGES

Ms. Keiko Hikino testified on Friday, August 5, 2022, and presented evidence of her *Georgia-Pacific* analysis. 8/5/2022 Transcript, Day 4, Vol. II at 44-45 *et seq*. She testified as to her detailed apportionment analysis and explained how she followed the law to make sure that her damages analysis was based on the value attributable to the patented inventions. *Id*. at 59:21-60:25. She testified that she focused on the smallest saleable patent practicing unit ("SSPPU") by focusing on the most basic model of the Accused Products (the Accused Product with the lowest average sales price). *Id*. at 60:6-61:4. The Court has previously recognized that Apple has been "unable to identify any smaller alternative SSPPU." ECF 549 at 14.

Ms. Hikino specifically referenced her own independent investigation of the

technology, and she relied further on Mr. Petro and Dr. Rhyne to help her analyze and evaluate the value of the patented technology as distinguished from Apple's contributions to the value of the Accused Products. *Id.* at 62:11-21. Ms. Hikino explained, in a manner consistent with the law and with the Court's jury instructions, that the settlement agreements include "built in apportionment" and that the Samsung agreement clearly was *not* a nuisance value settlement, since Samsung additionally agreed that it would not in the future sell wireless earbud systems that include a pairing button on the mobile charging case. *Id.* at 73. Pinn presented substantial evidence of damages.

## V. SUBSTANTIAL EVIDENCE OF WILLFUL INFRINGEMENT

"To prevail on an allegation of willful infringement, the patentee must prove (1) that the accused infringer 'acted despite an objectively high likelihood that its actions constituted infringement of a valid patent'; and (2) that this objectively defined risk was either known or so obvious that the accused infringer should have known about it. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc)." *K-Tec, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1378 (Fed. Cir. 2012).

Pinn presented testimony through Sean Kim and Jayna Whitt showing that Pinn notified Apple by way of emails in October 2016 and October 2017 about its intellectual property portfolio, including the April 3, 2015, Provisional Application, and that Apple was dismissive of Pinn. 8/5/2022 Transcript, Day 4, Vol. II at 13:4-9, 16:19-24, 17:19-24, 18:3-24 (Whitt testimony); 8/5/2022 Transcript, Day 4, Vol. I at 54 (Kim testimony). Ms. Whitt admitted that Apple did not take action in response to any of those emails and did not conduct any investigation whatsoever – in violation of its own policies. 8/5/2022 Transcript, Day 4, Vol. II at 12:8-13:3, 13:7-9, 13:22-23, 14:12-19 (Whitt testimony).

Further, Pinn presented substantial evidence that both patents issued after suit had already been filed. Apple had notice of the soon-to-issue patents when the lawsuit was filed in September 2019 and certainly had notice of the patents as soon as the

patents issued in October 2019 ('066 Patent) and March 2020 ('198 Patent). Since at least those issuance dates, Apple has had notice that it infringed. Since that time, Apple has continued to sell infringing products, has undertaken no effort to modify the products to avoid infringement, and continued to practice the asserted claims without permission or license and without a good faith belief in any legitimate non-infringement or invalidity defense.

Apple's infringing conduct satisfies the willful infringement standard and presents a jury issue.

## VI.   CONCLUSION

In view of the substantial record evidence, including but not limited to the evidence described above, the Motion should be denied.

| | | |
|---|---|---|
| 1 | Dated: August 8, 2022 | CONNOR LEE & SHUMAKER PLLC |
| 2 | | */s/ David Skeels* |
| 3 | | **Ryan E. Hatch** |
| | | ryan@hatchlaw.com |
| 4 | | California Bar No. 235577 |
| 5 | | **HATCH LAW, PC** |
| | | 13323 Washington Blvd., Ste. 100 |
| 6 | | Los Angeles, CA 90066 |
| 7 | | Tel: (310) 279-5076 |
| | | Fax: (310) 693-5328 |
| 8 | | |
| 9 | | **David A. Skeels** (admitted *pro hac vice*) |
| | | dskeels@whitakerchalk.com |
| 10 | | Texas Bar No. 24041925 |
| 11 | | **WHITAKER CHALK SWINDLE & SCHWARTZ PLLC** |
| 12 | | 301 Commerce St., Ste. 3500 |
| | | Ft. Worth, TX 76102 |
| 13 | | Tel: (817) 878-0500 |
| | | Fax: (817) 878-0501 |
| 14 | | |
| 15 | | **Cabrach J. Connor** (*admitted pro hac vice*) |
| | | cab@clands.com |
| 16 | | Texas Bar No. 24036390 |
| 17 | | Jennifer Tatum Lee (*admitted pro hac vice*) |
| | | jennifer@clands.com |
| 18 | | Texas Bar No. 24046950 |
| 19 | | **CONNOR LEE & SHUMAKER PLLC** |
| | | 609 Castle Ridge Rd., Ste. 450 |
| 20 | | Austin, TX 78746 |
| 21 | | Tel: (512) 777-1254 |
| | | Fax: (888) 387-1134 |
| 22 | | |
| 23 | | Attorneys for Plaintiff PINN, INC. |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 8, 2022, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ David Skeels*
David Skeels