1  Christopher S. Marchese (SBN 170239)
   marchese@fr.com
2  FISH & RICHARDSON P.C.
   633 West Fifth Street, 26th Floor
3  Los Angeles, CA 90071
   Tel: (213) 533-4240 / Fax: (858) 678-5099
4
   Roger A. Denning (SBN 228998)
5  denning@fr.com
   Seth M. Sproul (SBN 217711)
6  sproul@fr.com
   John W. Thornburgh (SBN 154627)
7  thornburgh@fr.com
   FISH & RICHARDSON P.C.
8  12860 El Camino Real, Suite 400
   San Diego, CA 92130
9  Tel: (858) 678-5070 / Fax: (858) 678-5099

10 Joy B. Kete *(pro hac vice)*
   kete@fr.com
11 FISH & RICHARDSON P.C.
   One Marina Park
12 Boston, MA 02210
   Tel: 617-542-5070 / Fax: 617-542-8906
13

14 *Additional Counsel Listed on Signature Page*
15

16 Attorneys for Defendant Apple Inc.

17                IN THE UNITED STATES DISTRICT COURT

18           CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

19

| | |
|---|---|
| PINN, INC., | Case No. 8:19-cv-1805-DOC-JDE |
| Plaintiff, | |
| v. | **APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR JMOL OF NONINFRINGEMENT RE THE "FIND MY" AIRPODS FEATURE** |
| APPLE INC., | |
| Defendant. | |
| | Hearing Date: October 17, 2022 |
| | Hearing Time: 8:30 a.m. |
| | Courtroom: 10 A |
| | Judge: Hon. David O. Carter |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................1

II. BACKGROUND ....................................................................................1

III. LEGAL STANDARD .............................................................................2

IV. ARGUMENT..........................................................................................3

    A. The Asserted Claims Require the Accused Products to Generate a Sound When "*a Mobile Application*" Is Searching...............................3

    B. Pinn Alleges Infringement When *a Human* Is Searching ........................3

    C. AirPods Do Not Beep When an Application Is Searching ......................7

    D. JMOL of Noninfringement Is Appropriate ..............................................9

V. CONCLUSION .....................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Combined Sys., Inc. v. Def. Tech. Corp. of Am.*,
   350 F.3d 1207 (Fed. Cir. 2003) ............................................................................ 9

*DeMaine v. Bank One Akron, N.A.*,
   904 F.2d 219 (4th Cir. 1990) ............................................................................... 3

*Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*,
   285 F.3d 1046 (Fed. Cir. 2002) (en banc) .................................................... 10, 11

*Nassau Precision Casting Co. v. Acushnet Co.*,
   566 F. App'x 933 (Fed. Cir. 2014) ...................................................................... 9

*Old Town Canoe Co. v. Confluence Holdings Corp.*,
   448 F.3d 1309 (Fed. Cir. 2006) ........................................................................... 2

*Piggy Pushers, LLC v. Skidders Footwear, Inc.*,
   544 F. App'x 984 (Fed. Cir. 2013) .................................................................... 10

*PPM America, Inc. v. Marriott Corp.*,
   875 F. Supp. 289 (D. Md. 1995) .......................................................................... 3

*Restaurant Techs., Inc. v. Jersey Shore Chicken*,
   360 F. App'x 120 (Fed. Cir. 2010) .................................................................... 10

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
   856 F. Supp. 2d 1136 (C.D. Cal. 2012) ............................................................... 2

*Vehicle IP, LLC v. Gen. Motors Corp.*,
   306 F. App'x 574 (Fed. Cir. 2009) .................................................................... 10

**Other Authorities**

Rule 50(a) ............................................................................................................. 1, 2

Rule 50(b) ............................................................................................................. 2, 3

## I. INTRODUCTION

This motion addresses a very narrow issue about which there is no factual dispute. The asserted claims require the claimed system to be "configured to generate sound *when a mobile application installed on the smartphone is searching* for the mobile system while the wireless earbud is paired with the smartphone." U.S. Patent 10,455,066 ("'066 patent") at claim 10 (emphasis added); *see also* U.S. Patent 10,609,198 ("'198 patent") at claim 25.

By contrast, the recent trial made clear that Pinn accuses searching *by a human*. For example, Pinn's infringement expert Dr. Rhyne testified *he* searched for his lost AirPods "exactly as that claim requires" and "the sound coming out of the AirPod … *tells me* where it is." Dkt. No. 670 (Day 3 Vol. 4) at 29:18-30:14 (emphasis added); *see also* Dkt. No. 670 (Day 3 Vol. 4) at 31:4-16. Similarly, Pinn's validity expert Dr. Nettles testified the patent disclosure tells a person of ordinary skill "you're going to play a sound so that *the human* can try to find the earbud." Dkt. No. 674 (Day 6 Vol. 2) at 122:11-25. And Pinn's counsel argued the same in closing: "[W]hat [Sean Kim] described in his patent application is exactly what Find My does. It connects with a device, and it sends a sound so it emits from the lost earbud and helps *you locate it*. Simple as that." Dkt. No. 656 (Day 7 Vol. 1) at 18:14-17 (emphasis added).

Apple understands the Court is reluctant to enter judgment at this stage, but submits the narrow issue presented by this motion should be an exception because there is no dispute as to how the accused products operate, and Pinn's infringement argument is based on ignoring the plain language of the claims, which is impermissible. JMOL would save the parties, the Court, and jurors the burden of another trial.

## II. BACKGROUND

This case was tried to a jury from August 2, 2022 until August 10, 2022. During the trial proceedings, Apple moved for JMOL under Rule 50(a) at the close of Pinn's case-in-chief. Dkt. No. 624. One of the grounds in that JMOL motion was the same

issue here: that the accused AirPods do not infringe because they are not "configured to generate sound when a mobile application installed on the smartphone is searching for the mobile system while the wireless earbud is paired with the smartphone." '066 patent at claim 10; '198 patent at claim 25. *Id.* at 2-3. Apple filed a second motion under Rule 50(a) supplementing the first motion. Dkt. No. 638.

After the closing arguments on August 10, the jury began deliberations, and on that same day a mistrial was declared. As discussed below, Apple files this renewed JMOL motion pursuant to Rule 50(b), which allows a JMOL to be filed within 28 days after the jury was discharged on issues not decided by verdict. This motion is timely because it is being filed 28 days after the jury was discharged on August 10.

## III. LEGAL STANDARD

"The district court sitting in the Ninth Circuit considers a motion for JMOL by drawing all reasonable inferences from the evidence most favorably to the non-movant. A motion for JMOL is properly granted only if no reasonable juror could find in the non-movant's favor." *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1314 (Fed. Cir. 2006) (internal citations omitted). In *Old Town Canoe*, the Federal Circuit applied Ninth Circuit law and affirmed the district court's JMOL of noninfringement because "no reasonable juror could find that the particulate used in Confluence's canoes reached optimum coalescence, as required by the asserted claims." *Id.*

JMOL after mistrial is permitted. Rule 50(b) provides "if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law." *See also Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 856 F. Supp. 2d 1136, 1142 (C.D. Cal. 2012) (granting JMOL after mistrial; "Under Federal Rule of Civil Procedure 50(b), a party may renew a motion for judgment as a matter of law after the jury returns a verdict, or after the jury, having been unable to reach a verdict, is discharged. The standard here, after a mistrial, is certainly no stricter than after a

jury verdict."); *PPM America, Inc. v. Marriott Corp.*, 875 F. Supp. 289, 293 (D. Md. 1995) ("It is well established that Rule 50(b) permits the filing by a party of a renewed motion for judgment as a matter of law in the event that a mistrial has been declared. *DeMaine v. Bank One Akron, N.A.*, 904 F.2d 219, 220–221 (4th Cir. 1990). Rule 50(b) specifically provides that if no verdict was returned by a jury, the Court may, in disposing of a renewed motion, "direct the entry of judgment as a matter of law or may order a new trial.").

## IV. ARGUMENT

### A. The Asserted Claims Require the Accused Products to Generate a Sound When "*a Mobile Application*" Is Searching

Neither party requested construction of the limitation at issue, but the plain language of the claims is clear: the claimed system (which includes the base station and earbuds) must be "configured to generate sound ***when a mobile application installed on the smartphone is searching*** for the mobile system while the wireless earbud is paired with the smartphone." U.S. Patent 10,455,066 ("'066 patent") at claim 10 (emphasis added); *see also* U.S. Patent 10,609,198 ("'198 patent") at claim 25. Thus, the ordinary meaning of the claim language makes clear that a sound is generated when an "application . . . is searching."

The patent specifications are also consistent. For example, the '198 specification states: "Pinn beeps and blinks when *the mobile App is searching* [for the] Pinn." '198 patent at 12:49-50 (emphasis added).

### B. Pinn Alleges Infringement When *a Human* Is Searching

In contrast to the express language of the claims, both Pinn and its experts told the jury that the claim limitation covers searching by humans. For, example, Dr. Rhyne testified he had personally used "Find My" to find his AirPods: "I have used that Find My application to search for a mobile system." Dkt. No. 670 (Day 3 Vol. 4) at 30:9-10. Notably, however, he testified that *he* was the one searching, not the mobile app. Dkt. No. 670 (Day 3 Vol. 4) at 29:18-30:14 ("And I have, in fact,

before had installed on my iPhone the Find My application. I -- when I was working with the AirPods -- sometimes on purpose -- *I had to find one*.") (emphasis added); *see also* Dkt. 670 (Day 3 Vol. 4) at 31:4-16 ("it's the sound coming out of the AirPod that *tells me* where it is") (emphasis added). Dr. Rhyne told the jury that this was "exactly as the claim requires." *Id.* at 30:13-14 ("So I have used that Find My application to search for a mobile system while the -- while the wireless earbud is paired with the smartphone. … And then I have done that, exactly as that claim requires."). But that is incorrect. The claims do not state that the system generates sound when a *human* is searching—rather, they require generation of sound when the *mobile application* is searching. Dr. Rhyne's theory does not satisfy the claims.

In order to avoid the express language of the claims, Dr. Rhyne and Pinn's counsel tried to use a lexicography claim construction argument to rewrite the claim, but the Court sustained an objection to this line of questioning.

> Q *So when a person of ordinary skill in the art reads this, are they going to get confused as to who's doing the searching*?
>
> A *No. There's actually a term in the patent art called the "patentee acting as their own lexicographer."* They can put a definition in the body of their patent that eliminates any doubt as to what they meant. And he –
>
> MR. SPROUL: Objection, Your Honor. Sounds like he's offering an instruction. Lexicography is a claim construction. It's inappropriate.
>
> THE COURT: Well, it's –
>
> Q Dr. Rhyne, let's talk about the plain meaning of the term.
>
> A Okay. Well, the plain meaning here of what Mr. Kim said, I'm going to --
>
> THE COURT: *Sustained*.

Dkt. No. 670 (Day 3 Vol. 4) at 33:15-34:6 (emphasis added).

Unable to rewrite the claim to redefine searching, Pinn is stuck with the language of the claim, which requires that the application generate sound "when searching." That is, searching remains a separate requirement of the application. Pinn offered no evidence that the Apple Find My feature *searches* when the AirPods play sound. Indeed, the AirPods are intended for playing sound (e.g., music or phone calls)—that is their primary function. But that does not mean the application playing the sound (e.g., the music or phone application) is "searching." There must be more. The best Dr. Rhyne could do was to tell the jury that a person of ordinary skill would understand "the app is searching" when a human is searching using the beeps and blinks. Dkt. No. 670 (Day 3 Vol. 4) at 31:17-34:25. Of course, this is an incorrect view of the claims because they plainly require that the application, and not a human, is doing the searching.

Dr. Rhyne tried to fix Pinn's problem by referring to a passage in the specification that describes the Pinn device as "beeping and blinking" when the application is searching. '198 patent, col. 12:49-50 ("Pinn Finder™ (via using Pinn App)—Pinn beeps and blinks when the mobile App is searching Pinn"). But that passage states the same requirement recited in the claims: sound is generated when the *mobile application* is searching. Far from fixing Pinn's problem, it is consistent with the claim limitation. Not deterred, after the Court sustained the objection above, Dr. Rhyne doubled down on the language in the specification by arguing that it "trumps" the way the AirPods work:

> Q So when Mr. Kim wrote this, he says the app is searching Pinn when it's beeping and blinking?
> A Searching for the Pinn.
> Q So does that require it to be connected?
> A Well, the mobile app is running on the phone. So there has to be a connection for the app to be able to communicate and send the message -- the beep or the blink -- out to it, yes.

5
APPLE INC.'S MPA ISO RENEWED MOTION FOR JMOL
Case No. 8:19-cv-1805-DOC-JDE

1   Q Okay. So what Mr. Watson was describing as the phone or the
2   app on the phone already finding the earbud, if it's streaming audio to
3   it, is inconsistent with this?
4   A Well, I understand the argument he's trying to make. ***But I***
5   ***think this trumps the argument, because it says that the Pinn will beep***
6   ***and blink when the app is searching for it. Just exactly the words that***
7   ***are in the claim.***
8 Dkt. No. 670 (Day 3 Vol. 4) at 34:7-13. Rather than trumping the "argument,"
9 Dr. Rhyne candidly recognized that the specification says the exact same thing as the
10 claims.
11   Dr. Nettles relied upon the same specification language cited by Dr. Rhyne
12 (which also appears in the provisional) to testify that a person of ordinary skill would
13 interpret the "application . . . searching" as a human searching:
14   Q And does the 4/3 -- April 3, 2015 provisional disclose playing
15   a sound?
16   A Yes, sir, it does.
17   Q Where can we see that?
18   A Well, I think if we look at page 20, we'll see disclosure of the
19   Pinn Finder. That's essentially the Find My application for Pinn.
20   Q Is that it right here (indicating)?
21   A Yes, sir. It says:
22   "Pinn Finder, via using Pinn App. Pinn beeps and blinks when
23   the mobile app is searching Pinn."
24   Q So what does this tell one of ordinary skill in the art?
25   A That when you can communicate, you're connected to the
26   earbud, then you're going to play a sound *so that the human can try to*
27   *find the earbud*.
28

Dkt. No. 674 (Day 6 Vol. 2) at 122:11-25 (emphasis added). Dr. Nettles also testified that what Apple's Kalayjian patent "does is exactly what the Pinn patent specification suggests, which is that when you're connected to the earbud, you play the sound so that *the human can find it*." Dkt. No. 674 (Day 6 Vol. 2) at 124:21-125:8.

All of this testimony from Dr. Rhyne and Dr. Nettles clearly communicated Pinn's view that the "application . . . searching" covers a human searching. Indeed, Pinn's counsel argued the same to the jury in closing: "what [Sean Kim] described in his patent application is exactly what Find My does. It connects with a device, and it sends a sound so it emits from the lost earbud and helps *you* locate it. Simple as that." Dkt. No. 656 (Day 7 Vol. 1) at 18:14-17 (emphasis added). Pinn also advanced the same idea in cross, for example, asking Rob Watson "isn't the sound played so that *you* can locate the earbud?" Dkt. No. 669 (Day 3 Vol. 2) at 26:9-12 (emphasis added); *see also id.* 27:1-6 ("And it says that if your AirPods are near any of your Apple devices and connected to Bluetooth, you can play a sound to help *you* find them from iCloud.com or the Find My app. And the Find My app is referring to the application that's installed on a smartphone; right?") (emphasis added).

In other words, Pinn and its experts repeatedly told the jury that an "application . . . searching" covers a human searching. But this is contrary to the plain language of the claim.

### C. AirPods Do Not Beep When an Application Is Searching

Pinn introduced no evidence that the AirPods beep when any application is searching. That is sufficient for JMOL since Pinn has the burden of proving infringement. In addition, Apple's expert Dr. Wells offered unrebutted testimony that AirPods do not beep when any application is searching:

> Q Okay. Let's look at what he told the Patent Office. Now, see right up there at the top, "Pinn Finder"?
>
> A Yes, I do.

1  Q It says, "*Pinn beeps and blinks when the mobile app is*
2  *searching.*" Right?
3  A That is how Pinn envisioned its Pinn product to work.
4  Q Isn't this how Pinn told the Patent Office his invention would
5  work?
6  A It is. *But it's still not how the AirPods work.*
7  Q Well, I don't think we're going to agree on that, Dr. Wells. But
8  we'll hear from Dr. Nettles in a little bit.
9  Will you agree we can table that one for now?
10  A Well, I think that *this says what the claim says. This is*
11  *describing how Pinn intended its invention to work. And they claimed*
12  *that their invention would make a sound while it was searching.*
13  *That's what Pinn intended their invention to do.*
14  *That's what they claimed.*
15  *The AirPod products don't play a sound while it's searching. It*
16  *has to find it, it has to connect to it, it has to locate it, and then it's*
17  *played.* So this doesn't operate the same way that Pinn was intending
18  their product to work.
19  Q So in the AirPods product -- just to be clear, so in the AirPods
20  product you're saying once that connection is established, the search is
21  over. But in the Pinn patent, wherein it clearly says that it beeps and
22  blinks when it's searching, you have a different interpretation. Fair to
23  say?
24  A Absolutely not. No. I'm using exactly the same interpretation
25  each time. What I'm saying is this is how Pinn is intending Pinn's
26  product to work. And *Pinn is intending its product to make the [Pinn]*
27  *beep and blink when the app is searching for it. And that's what Pinn*
28  *put in its claims.*

> They're not writing that on this. ***This is a different product that performs differently. And that's one of the reasons why this doesn't infringe, because it doesn't meet what Pinn intended their product to be.***

Dkt. No. 674 (Day 6 Vol. 2) at 47:3-48:12 (emphasis added); *see also id.* at 52:16-53:1. Mr. Watson likewise testified that the AirPods cannot play a sound when the application is searching. Dkt. No. 662 (Day 3 Vol. 3) at 24:7-10 ("Q. Can the 'find my' application play a sound on the device if it is not connected to it? A. No, that's impossible. It has to be connected to generate that sound.").

Again, none of this testimony was contradicted. The parties do not disagree about how the AirPods work. Pinn just argues that searching by a human satisfies the claim, which is legally incorrect.

### D. JMOL of Noninfringement Is Appropriate

When a patentee ignores the plain language of its claims to allege infringement, or renders words in its claims superfluous, case law holds the Court should find noninfringement as a matter of law. For example, in *Combined Sys., Inc. v. Def. Tech. Corp. of Am.*, 350 F.3d 1207 (Fed. Cir. 2003), the claims required "forming folds" and then "inserting said formed folds." *Id.* at 1208. The district court relied on ordinary meaning to find "the folds referenced in the claim are formed prior to—not during—insertion." *Id.* at 1209. On this basis, it granted summary judgment of noninfringement because "to the extent any 'folds' are ever formed . . . they are created as part of the process of insertion . . . and not prior to it." *Id.* The Federal Circuit affirmed. *Id.* at 1216.

Indeed, the Federal Circuit routinely affirms noninfringement as a matter of law under such circumstances, usually in non-precedential opinions because these cases represent application of settled law to particular facts. *See*, *e.g.*, *Nassau Precision Casting Co. v. Acushnet Co.*, 566 F. App'x 933, 937 (Fed. Cir. 2014) ("The ordinary meaning of this language is that all of the construction material removed

from the club head must be embodied in the selected bottom areas. Because it is conceded that some of the weight of the allegedly removed construction material remains in the topline of the accused club heads in the form of the polymer insert, we affirm summary judgment that Acushnet does not infringe claim 2."); *Piggy Pushers, LLC v. Skidders Footwear, Inc.*, 544 F. App'x 984, 988 (Fed. Cir. 2013) (ordinary meaning of "sock . . . sufficed for summary judgment of noninfringement"); *Restaurant Techs., Inc. v. Jersey Shore Chicken*, 360 F. App'x 120, 125 (Fed. Cir. 2010) (affirming summary judgment of noninfringement based on ordinary meaning of "piping network" limitation, which required interconnection "because the accused system's pipes did not interconnect, but rather consisted of two separate pathways"); *Vehicle IP, LLC v. Gen. Motors Corp.*, 306 F. App'x 574, 576 (Fed. Cir. 2009) (affirming summary judgment of noninfringement based on ordinary meaning of "coordinate").

Notably, *Restaurant Techs.* affirmed summary judgment of noninfringement even under the doctrine of equivalents because the patentee's argument "would require reading out the 'interconnecting' limitation." 360 F. App'x at 126. Here, Pinn does not assert infringement by equivalents, so judgment as a matter of law is even simpler. *See* Dkt. No. 587-1 (Pretrial Order) at p. 5 ("Pinn does not assert infringement under the doctrine of equivalents.").

The bottom line is Pinn may not read out the limitation "when a mobile application . . . is searching." Both the Federal Circuit and Supreme Court "have adhered to the fundamental principle that claims define the scope of patent protection." *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (en banc), citing *Aro Mfg. v. Convertible Top Replacement Co.*, 365 U.S. 336, 339 (1961) ("[T]he claims made in the patent are the sole measure of the grant...."). This is important because the claims "give notice of the scope of patent protection . . . both to the examiner at the U.S. Patent and Trademark Office during

prosecution, and to the public at large, including potential competitors, after the patent has issued." *Johnson*, 285 F.3d at 1052.

Here, Pinn is attempting to make an "application . . . searching" superfluous. Yet the public, including Apple, is entitled to rely upon the claims as written. The Court should reject Pinn's infringement argument as a matter of law.

## V.   CONCLUSION

The Court should grant judgment as a matter of law that Apple does not infringe the asserted claims.

| | |
|---|---|
| Dated: September 7, 2022 | FISH &RICHARDSON P.C. |
| | By: */s/ Christopher S. Marchese* |
| | Christopher S. Marchese (SBN 170239) |
| | marchese@fr.com |
| | FISH & RICHARDSON P.C. |
| | 633 West Fifth Street, 26th Floor |
| | Los Angeles, CA 90071 |
| | Tel: (213) 533-4240 |
| | Fax: (858) 678-5099 |
| | |
| | Roger A. Denning (SBN. 228998) |
| | denning@fr.com |
| | Seth M. Sproul (SBN 217711) |
| | sproul@fr.com |
| | John W. Thornburgh (SBN 154627) |
| | thornburgh@fr.com |
| | FISH & RICHARDSON P.C. |
| | 12860 El Camino Real, Suite 400 |
| | San Diego, CA 92130 |
| | Tel: (858) 678-5070 |
| | Fax: (858) 678-5099 |
| | |
| | Joy B. Kete *(pro hac vice)* |
| | kete@fr.com |
| | FISH & RICHARDSON P.C. |
| | One Marina Park |
| | Boston, MA 02210 |
| | Tel: 617-542-5070 |
| | Fax: 617-542-8906 |
| | |
| | Karrie E. Wheatley *(pro hac vice)* |
| | wheatley@fr.com |
| | FISH & RICHARDSON P.C. |
| | 1221 McKinney St., Suite 2800 |
| | Houston, TX 77010 |
| | |
| | Attorneys for Defendant APPLE INC. |