Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 533-4240 / Fax: (858) 678-5099

Juanita R. Brooks (SBN 75934)
brooks@fr.com
Roger A. Denning (SBN 228998)
denning@fr.com
Seth M. Sproul (SBN 217711)
sproul@fr.com
John W. Thornburgh (SBN 154627)
thornburgh@fr.com
K. Nicole Williams (SBN 291900)
nwilliams@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

*Additional Counsel Listed on Signature Page*

Attorneys for Defendant Apple Inc.

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| PINN, INC.,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 8:19-cv-1805-DOC-JDE<br><br>**APPLE INC.'S RESPONSE TO PLAINTIFF'S *EX PARTE* APPLICATION TO COMPEL APPLE TO DISCLOSE PRIOR ART COMBINATIONS FOR TRIAL AND PRECLUDE RELIANCE UPON UNDISCLOSED COMBINATIONS BASED UPON THE *LYDON* OR *KALAYJIAN* REFERENCES**<br><br>Trial Date:    November 8, 2022<br>Trial Time:    8:30 AM<br>Courtroom:    10A<br>Judge:    Hon. David O. Carter |

# **TABLE OF CONTENTS**

I.     Apple disclosed its prior art Combinations ........................................................ 2

II.    Apple and Dr. Wells have fully disclosed the details of Lydon
       and how it invalidates Pinn's patents ................................................................ 4

       A.     Dr. Wells Disclosed Lydon in Detailed Claim Charts ........................... 5

       B.     Dr. Wells disclosed Lydon and Kalayjian as an Express
              Combination ........................................................................................... 9

              1.     Dr. Wells' disclosure of Lydon as Prior Art to a
                     Case for a Wireless Earbud ......................................................... 9

              2.     Dr. Wells' disclosure of Lydon as Prior Art for
                     Bluetooth Buttons on Cases ...................................................... 11

              3.     Dr. Wells Disclosed Kalayjian as Prior Art to
                     Limitation [g] ............................................................................ 13

       C.     Apple Disclosed Lydon as a "Primary" reference in Joint
              Pretrial Orders Filed by the Parties ..................................................... 17

       D.     Pinn's Expert Testified About Lydon and Conceded It
              Was the Same Device as the Bluetooth Headset ................................. 18

III.   Conclusion ....................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Nichia Corp. v. Feit Elec. Co.*,
   No. CV 20-359-GW-Ex, 2022 U.S. Dist. LEXIS 104469 (C.D. Cal. Feb. 11, 2022) ...................................................................................8

*Okyn Holdings, Inc. v. Hori U.S.A., Inc.*,
   No. 2:21-cv-04796-AB-PD, 2022 U.S. Dist. LEXIS 109565 (C.D. Cal. Apr. 5, 2022) .............................................................................8, 9

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*,
   No. 814CV01352JLSKES, 2019 WL 8138163 (C.D. Cal. Nov. 20, 2019), *aff'd*, 35 F.4th 1367 (Fed. Cir. 2022) .......................................7, 8

**Other Authorities**

U.S. Patent No. 8,078,787 ...................................................................................9

DEFENDANT APPLE INC.'S RESPONSE TO PINN EPA RE PRIOR ART
Case No. 8:19-cv-1805-DOC-JDE

Pinn's *ex parte* application should be denied.  It rests on two false premises: one, that Apple refused to disclose its specific prior art combinations, and two, that Apple hasn't sufficiently disclosed the Lydon reference in Dr. Wells' expert report. Neither are true as Apple demonstrates below.

Apple's correspondence with Pinn—which Pinn displays prominently in its brief—shows Apple has clearly disclosed its prior art combinations.  But Pinn's motion isn't really about that; rather, the true purpose of Pinn's motion is to prevent Apple from relying on the Lydon prior art patent.  Pinn asserts that Apple hasn't disclosed Lydon as a "primary" reference and that Dr. Wells hasn't provided sufficient analysis to support Lydon as a "primary" reference.  Pinn is wrong.  The test is whether Apple's disclosure provided "***reasonable notice***" to Pinn of its theory. Apple's disclosure puts Pinn on notice that Lydon is a primary reference and can be combined with Kalayjian.

Apple has identified Lydon as a primary reference in ***both Pretrial Orders*** filed in this case and reaffirmed that in an email last week.  Dkt. No. 350 at p. 39; *see also* Dkt. No. 587 at p. 37.  More importantly, Dr. Jonathan Wells provided ample disclosure of Lydon in his expert report, including in combination with Kalayjian.  Dr. Wells provided claim charts for Lydon that map Lydon to key elements of the claims, and he stated at the top of those charts that Lydon anticipates and/or renders obvious the Pinn claims—a fact that Pinn neglects to mention.  Moreover, in the body of his report, Dr. Wells provides a detailed analysis of how Lydon discloses all the elements of Pinn's claimed "base station," including the "user input button," and then adds Kalayjian for the last remaining claim element: that the system generates sound when a mobile app on the smartphone is searching for the system.  Thus, Pinn is incorrect about the disclosure in Dr. Wells' report, as Dr. Wells provided claim charts and significant detailed analysis of Lydon ***in addition to*** the limited disclosures Pinn cites.

Pinn also fails to mention the other side of the coin: the response of their own expert (Dr. Scott Nettles) to Dr. Wells' analysis of Lydon.  Dr. Nettles made clear that

Lydon was fully disclosed, when he wrote in his expert report that the Apple Bluetooth Headset and Lydon were "main references":

> **8.1.5 Cumulative and Redundant Art**
> 100. As discussed at length in my section regarding Dr. Wells' Claim Charts, the references that Dr. Wells asserts are cumulative and redundant to one another. The majority of the products that Dr. Wells cites to teach the same thing, i.e. a generic Bluetooth-enabled earbud. **_Even the <u>main references</u> Dr. Wells relies on are cumulative—for example, Apple BT Headset and Hankey Group are cumulative of Lydon, because all of these references teach the same device_**. Many, if not all, of these references are also asserted redundantly because they are used to address the same limitations, and Dr. Wells does not explain or clarify why an [sic] one particular reference better teaches a limitation than another reference.

(Ex. H (Nettles Report) at ¶ 100 (emphasis added).)  He confirmed this position in his deposition, testifying that the "Apple [Bluetooth] headset and Hankey Group are cumulative of Lydon because *all of these references teach the same device*." (Ex. A (Nettles Dep. Tr.) at 194:13-24 (emphasis added).)  Pinn does not dispute—nor could it—that Apple presented the Bluetooth Headset as a "main" reference at the first trial, in combination with Lydon and Kalayjian.  Because Lydon teaches the same device as the BT Headset, Apple's Lydon theory has been adequately disclosed.  For these same reasons, Pinn cannot feign surprise or complain of prejudice from Apple's use of Lydon at trial in a more featured role than the first trial.

This motion is Pinn's last-ditch attempt to prevent the jury from considering important invalidity evidence that Apple has fairly disclosed and that Dr. Wells addressed in detail in his report.  It should be denied.

## I.    APPLE DISCLOSED ITS PRIOR ART COMBINATIONS

Pinn's first argument is an attempt to paint Apple in a negative light.  But when read in context of the remainder of Pinn's brief, it becomes clear this was an effort to detract from the weakness of Pinn's argument on the merits.

Contrary to Pinn's first assertion, Apple plainly told Pinn its prior art combinations that it intends to use at trial—as Pinn shows on the first page of its brief when it copies in Apple's disclosure.

Hi Cab,

Our prior art for trial is below.

Kalayjian in combination with:
Lydon; or
BT Headset and Lydon; or
Watson

State of the art:  Bluetooth button prior art, Find My prior art (including iOS 7 and Ex. 1094 patent), testimony from witnesses on known elements.

Thanks,

Seth

As can be seen, Apple's combinations were disclosed as the "Kalayjian reference in combination with" three alternative prior art references: "Lydon; *or* BT Headset and Lydon; *or* Watson."  Pinn Br. at p. 1.  As is clear from the disclosure, Apple disclosed three separate combinations.  Pinn knows this but pretends not to understand it.

When asked to provide more detail, Apple responded that this was the same level of detail provided before the last trial, for which Pinn had previously offered no objection.  Apple's disclosure of its prior art at the last trial was nearly identical ***in format and detail*** to its disclosure this time.[1]  Pinn's motion shows a copy of an email

_____

[1] Referring to Apple's last email, Pinn argues that it doesn't know what "essentially identical" means.  Pinn Br. At 2.  It suggests that Apple is trying to hedge on its disclosure.  But Apple's statement that the disclosure is "essentially identical" was in reference to the format and content of the disclosure for this trial compared to Apple's disclosure from the August trial.  Pinn leaves out its email to which Apple's email

from Apple counsel in which Apple disclosed its prior art references before the August trial:



At the last trial, Apple put two combinations into evidence: (1) Bluetooth Headset, Lydon, and Kalayjian; and (2) Watson and Kalayjian. For this trial, Apple has disclosed three combinations. The correspondence Apple sent to Pinn shows that very clearly. Pinn's assertion that "Apple refuses to identify the specific prior art combinations it will assert at trial" is simply incorrect.

## II.   APPLE AND DR. WELLS HAVE FULLY DISCLOSED THE DETAILS OF LYDON AND HOW IT INVALIDATES PINN'S PATENTS

Pinn's second assertion, that Apple has not given sufficient expert analysis of Lydon, is equally wrong. Dr. Wells disclosed a full and robust analysis of Lydon in his report. Apple also identified Lydon as a "***primary reference***" in both Pretrial Orders filed in this case. Dkt. No. 350 at p. 39; *see also* Dkt. No. 587 at p. 37. Last week, Apple sent an email to Pinn confirming that it would rely on Lydon as a primary reference in this trial. Pinn clearly fears Lydon as an invalidity reference, but it cannot prevent Apple from using what was fairly disclosed to Pinn during this case.

Pinn's own expert, Dr. Nettles, was fully apprised of Lydon and testified about it during his deposition. Importantly, Dr. Nettles noted that Lydon was "cumulative" of the BT Headset, admitting that Pinn was on notice of the extent of Lydon from the

---

reciting "essentially identical" is responding. That email, attached as Exhibit B, shows that Pinn had proposed a table format for Apple's disclosure, and when Apple declined to do that, Pinn pasted in Apple's email from the August trial. Referring to the formatting and content of each, Apple responded they are "essentially identical."

very beginning.  (Ex. A (Nettles Dep. Tr.) at 194:13-2.)  Also of note, Pinn did not ask any questions of Dr. Wells about Lydon during his deposition.

### A.  Dr. Wells Disclosed Lydon in Detailed Claim Charts

Apple served Dr. Wells' report in August 2020.  (Ex. C ("Wells Report").)  At the time, Pinn was asserting 29 claims across three separate patents, and had not yet narrowed its claims to the few it asserted at trial.  Dr. Wells provided fulsome analysis of the disclosure in Lydon as an invalidating reference, both as a stand-alone reference and as a secondary reference in an obviousness combination.

First, Dr. Wells stated that Lydon, as one of the references charted and analyzed, rendered the asserted claims invalid.  (Ex. C (Wells Report) at ¶ 70.)

> 70.   With the exception of Watson I and II (defined below), which I address in the next paragraph, it is my opinion that the prior art that I have addressed in the claim charts contained in Appendices A-3 through A-20, B-3 through B-22 and C-3 through C-22, and in the associated text in the body of this report, invalidate the Asserted Claims under either of these constructions, as explained in the claim charts and text below.

Apple charted Lydon against all three asserted patents at the time, the '491, the '066, and the '198.  In these charts, Apple clearly disclosed Lydon as "anticipat[ing] and/or render[ing] obvious [the asserted claims]" of the '066 and '198 patents:

DEFENDANT APPLE INC.'S RESPONSE TO PINN EPA RE PRIOR ART

**Appendix B-5**

**INVALIDITY OF U.S. PATENT NO. 10,455,066 (THE "'066 PATENT")**

**BY**

**U.S. PATENT NO. 8,078,787 ("LYDON")**

U.S. Patent No. 8,078,787 to Gregory T. Lydon *et al.* ("Lydon") entitled Communication Between a Host Device and an Accessory via an Intermediate Device anticipates and/or renders obvious claims 1, 4, 6, 8-10, 14, 21, 26, 28, 30, 34, 36, 38 of U.S. Patent No. 10,455,066 (the "'066 Patent"), alone and/or in combination with other references and/or the knowledge of one of ordinary skill in the art, as set forth in the chart below and explained further in my expert report. This invalidity claim chart is based on my present understanding of the asserted claims and Pinn Inc.'s ("Pinn") apparent construction of the claims, as set forth in Pinn's Infringement Contentions. While I disagree with Pinn's apparent constructions, if given the scope that Pinn attempts to assert, Pinn's patent claims are invalid in light of this prior art. In addition to being explicitly disclosed in the prior art, each limitation of the asserted claims would have been inherent and/or obvious. By mapping claim language to this reference, I do not admit or imply that the claim language satisfies 35 U.S.C. § 112.

**Appendix C-5**

**INVALIDITY OF U.S. PATENT NO. 10,609,198 (THE "'198 PATENT")**

**BY**

**U.S. PATENT NO.  8,078,787 ("LYDON")**

U.S. Patent No. 8,078,787 to Gregory T. Lydon *et al.* ("Lydon") entitled Communication Between a Host Device and an Accessory via an Intermediate Device anticipates and/or renders obvious claims 1, 3, 5, 9, 12, 15, 17, 19, 21, 25, 27, 29 of U.S. Patent No. 10,609,198 (the "'198 Patent"), alone and/or in combination with other references and/or the knowledge of one of ordinary skill in the art, as set forth in the chart below and explained further in my expert report. This invalidity claim chart is based on my present understanding of the asserted claims and Pinn Inc.'s ("Pinn") apparent construction of the claims, as set forth in Pinn's Infringement Contentions. While I disagree with Pinn's apparent constructions, if given the scope that Pinn attempts to assert, Pinn's patent claims are invalid in light of this prior art. In addition to being explicitly disclosed in the prior art, each limitation of the asserted claims would have been inherent and/or obvious. By mapping claim language to this reference, I do not admit or imply that the claim language satisfies 35 U.S.C. § 112.

Pinn makes the extraordinary claim that Apple did not disclose Lydon as meeting any claim limitation of the asserted claims.  Pinn Br. at p. 3.  Pinn is wrong. ***Apple provided 20 pages of analysis*** for Lydon for the limitations of claim 1 of the '066 patent alone.  These are attached as Ex. D, and are represented below.



DEFENDANT APPLE INC.'S RESPONSE TO PINN EPA RE PRIOR ART
Case No. 8:19-cv-1805-DOC-JDE

Apple provided similar analysis to claim 1 of the '198 patent.  (Ex. E (Lydon 198 chart).)

Elsewhere, Dr. Wells provided a mapping between these limitations and the limitations of claim 10.  (*See* Ex. C (Wells Report) at ¶¶ 147-180.)  This is common, and when dealing with 29 different claims, a necessary efficiency.  Notably, this is far more detail than Pinn provided for the limitations of the asserted claims in its infringement report.  (*See* Excerpts from Rhyne Report at Ex. F.)  There, Dr. Rhyne provided no independent analysis for claim 10 of the '066, and ultimately simply cross-referenced his analysis for claim 1 of the '491 patent.

In addition to this analysis, Dr. Wells broke the asserted claim limitations into three technical categories, for which he then provided detailed, narrative analysis.  Dr. Wells explained that the asserted claims distil to the following concepts:  (1) Cases for Wireless Earbuds; (2) Bluetooth Pairing Buttons; (3) Applications for Locating a Lost Wireless Earbud or Other Device.  (Ex. C (Wells Report) at ¶¶ 183-245.)

Dr. Wells then showed how each of these technical concepts was disclosed in the prior art.  Lydon features prominently in the analysis of the first two, and Kalayjian features prominently in the third.  Thus Apple's disclosure of Kalayjian with Lydon as an obviousness combination is fully supported by Dr. Wells analysis, which is presented below.

This case is similar to *Pavo Sols. LLC v. Kingston Tech. Co., Inc*., No. 814CV01352JLSKES, 2019 WL 8138163, at *9 (C.D. Cal. Nov. 20, 2019), *aff'd*, 35 F.4th 1367 (Fed. Cir. 2022), in which this Court held that the defendant need only "provide[] sufficient notice" of its obviousness theory.  *Id.* (denying motion to strike obviousness theory where defendant's invalidity contentions charted a single prior art drive that operated the same for obviousness purposes as a list of additional disclosed prior art drives).  In *Pavo*, the defendant charted one prior art flash drive reference and identified additional prior art drives that would "serve the same role," which were not charted at all.  *Id.* at *8.  The Court found defendant's disclosure to "adequately

DEFENDANT APPLE INC.'S RESPONSE TO PINN EPA RE PRIOR ART
Case No. 8:19-cv-1805-DOC-JDE

communicate its invalidity theories" where the uncharted references "satisf[ied] the same limitations." *Id.* at *8-*9.

More than the obviousness theory presented in *Pavo*, Apple provided ample and ***separate*** notice to Pinn of its invalidity theory as to Lydon. Dr. Wells addressed every limitation of claim 10 of the '066 patent (and by extension claim 25 of the '198 patent) in his claim charts and in the body of his report. Dr. Wells gave notice of his position as to every claim element. On top of that analysis, and similar to *Pavo*, Dr. Wells mapped every claim element for the *Bluetooth Headset* in his claim charts—which, by Dr. Nettles' own admission, is "cumulative" of Lydon, except that Lydon discloses an ***additional claim element***: a user input button on Lydon's "intermediate device" (which maps to Pinn's "base station") that initiates the process for wireless pairing. In his claim chart for Lydon, and in the body of his report, Dr. Wells described this "user input button" element and how it maps to Pinn's claims. (Ex. D ('066 Claim Chart) at p. 14-20.) Thus, even if Dr. Wells had not described how Lydon discloses Pinn's claim elements (which he did do), his charting of the Bluetooth Headset satisfies the disclosure requirement because Dr. Nettles opined that the "theory of obviousness [was] the same" for Bluetooth Headset and Lydon except for the "user input button" element, which was charted separately for Lydon. *See Pavo v.* Kingston, 2019 WL 8138163, at *9 (*quoting Avago Tech. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*, No. C04-05385-JW-HRL, 2007 WL 951818, at *3-*4 (N.D. Cal. Mar. 28, 2007)).

Pinn's cited cases do not apply to Apple's disclosure here, where Apple has fully disclosed its Lydon invalidity theory. Apple is not switching from one invalidity theory to another, like the *Nichia* defendant who identified two references in its contentions as invalidating under § 102 and said nothing about whether those references rendered the patent invalid under § 103. *Nichia Corp. v. Feit Elec. Co*., No. CV 20-359-GW-Ex, 2022 U.S. Dist. LEXIS 104469, at *15 (C.D. Cal. Feb. 11, 2022). In *Okyn*, the defendant reserved its rights to rely on "unidentified prior art

1  such as foreign counterpart patents, known products, and printed publications
2  describing the disclosed prior art references." *Okyn Holdings, Inc. v. Hori U.S.A.,*
3  *Inc.*, No. 2:21-cv-04796-AB-PD, 2022 U.S. Dist. LEXIS 109565, at *14 (C.D. Cal.
4  Apr. 5, 2022) at 14.  Apple has made no such reservation, as Lydon is identified and
5  disclosed.

**B.  Dr. Wells disclosed Lydon and Kalayjian as an Express Combination**

7  Due to the large number of claims asserted by Pinn when Dr. Wells prepared
8  his report, as stated above, Dr. Wells broke the asserted claim limitations into three
9  technical categories: (1) Cases for Wireless Earbuds; (2) Bluetooth Pairing Buttons;
10  (3) Applications for Locating a Lost Wireless Earbud or Other Device.  (Ex. C (Wells
11  Report) at ¶¶ 183-245.)   He then provided a detailed, narrative analysis for each
12  category.  We address each of these in turn below.

**1.  Dr. Wells' disclosure of Lydon as Prior Art to a Case for a Wireless Earbud**

16  The bulk of the asserted limitations relate to details around the "mobile base
17  station" including the holes, the earbud, the circuitry, and the sending of information.
18  Apple characterized this as relating to "Cases for wireless earbuds."  Dr. Wells
19  provided specific analysis that such cases were well known.  "**1. Cases for Wireless**
20  **Earbuds Were Well-Known.**"  (Ex. C (Wells Report) at ¶ 184.)  Dr. Wells explained:
21  "The idea of having an intelligent charging case or base station that could receive
22  wireless Bluetooth earbuds was not new in April, 2015, the time Mr. Kim filed his
23  first provisional. Multiple exemplary products and prior art references were known
24  and described at the time. The knowledge of these products renders all the asserted
25  claims invalid as obvious." *Id.*

26  Dr. Wells then specifically analyzed Lydon as a prior art case for charging.
27  "Prior art printed publications also disclosed intelligent charging stations for wireless
28  headsets. For example, U.S. Patent No. 8,078,787 to Lydon describes an

9

"intermediate device," such as a charging device similar to the charging case disclosed in the Pinn patents, that connects to a host device, such as a mobile phone and an "accessory," such as a wireless headset. Lydon at 3:10-20." (Ex. C (Wells Report) at ¶ 204.) He then explained Lydon taught the mobile base station aspect of certain of the limitations of claim 10 of the 066 patent.

205. Lydon was filed November 16, 2007, and was granted on December 13, 2011. Lydon is assigned to Apple, Inc. Lydon is thus prior art to the Asserted Patents.

206. Lydon describes that the intermediate device can include a "controller 222." Lydon at 10:56-58. Lydon further discloses that the controller "can be used to execute one or more control programs for intermediate device 220. Such control programs may be stored in memory (e.g., programmable read-only memory) integrated with controller 222 or in separate memory devices or circuits (not shown). The control programs can enable controller 222 to detect the presence of host device 202 and/or accessory 240 and to communicate with either or both of host device 202 and/or accessory 240, e.g., via host I/0 interface 224 and/or accessory I/0 interface 226. For example, the control programs can enable intermediate device 220 to determine whether host device 202 or accessory 240 requires power and to supply power as required, e.g., for charging of host device 202 or accessory 240; it is to be understood that both host device 202 and accessory 240 may be charging at the same time. The control programs can also enable intermediate device 220 to forward commands received from one of host device 202 or accessory 240 to the other of host device 202 or accessory 240, as described below." Lydon at 10:66 – 11:16 (emphasis added)."

1   (*Id.* at ¶¶ 205-206.)

2       Dr. Wells concluded by explaining that Lydon taught a mobile base station.

3   "Accordingly, Lydon discloses an intelligent charging system into which a wireless

4   earbud can be plugged. Lydon discloses charging the wireless earbud and, as

5   discussed further below, facilitates pairing between a wireless earpiece and a

6   smartphone." (*Id.* at ¶ 207.)

7       ###     2.      Dr. Wells' disclosure of Lydon as Prior Art for Bluetooth Buttons on Cases

8

9       Dr. Wells also provided extensive narrative for the second category, that

10  "Bluetooth Pairing Buttons Were Well-Known." (*Id.* at ¶ 218.) "The inclusion of a

11  "pairing button" or a user input button on a main body or base station is not new,

12  especially with the broad definition encompassed by Pinn's infringement theories.

13  Devices have used such buttons to facilitate Bluetooth pairing between wireless

14  devices for a long time. Such buttons are ubiquitous in the industry. Using a button

15  on a device to facilitate pairing was a known design choice that represented a baseline

16  option." (*Id.*)

17      Dr. Wells then analyzed Lydon as a teaching a Bluetooth pairing button.

18      224. Additional printed prior art discloses a pairing button on a base

19      station. For example, Lydon discloses executing computer program

20      instructions to initiate wireless pairing in response to pressing a user

21      input button. Lydon discloses an "intermediate device" into which a

22      wireless earbud can be plugged. "An "intermediate device" is any

23      device that can be connected to at least a host device and an accessory

24      at the same time. The intermediate device is capable of

25      communicating with the host device and the accessory, in particular

26      forwarding, or "tunneling," commands from one of the host device or

27      accessory to the other. The intermediate device may also 55 support

28

other functionality, such as charging the host device and/or accessory." Lydon at 9:50-57.

225. Lydon's "[i]ntermediate device 220 can include controller (e.g., microcontroller)222." Lydon at 10:56-57. "Controller 222 can be used to execute one or more control programs for intermediate device 220. Such control programs may be stored in memory (e.g., programmable read-only memory) integrated with controller 222 or in separate memory devices or circuits (not shown). The control programs can enable controller 222 to detect the presence of host device 202 and/or accessory 240 and to communicate with either or both of host device 202 and/or accessory 240, e.g., via host I/0 interface 224 and/or accessory I/0 interface 226. For example, the control programs can enable intermediate device 220 to determine whether host device 202 or accessory 240 requires power and to supply power as required, e.g., for charging of host device 202 or accessory 240; it is to be understood that both host device 202 and accessory 240 may be charging at the same time. The control programs can also enable intermediate device 220 to forward commands received from one of host device 202 or accessory 240 to the other of host device 202 or accessory 240, as described below." Lydon at 10:66 – 11:16.

226. The processor of the intermediate device in Lydon can facilitate pairing. "FIG. 8 is a flow diagram of a process 800 for establishing a wireless link (e.g., a Bluetooth pairing) between a host device and an accessory according to an embodiment of the present invention. Process 800 begins (step 802) when an accessory (e.g., accessory 304 of FIG. 3) becomes connected to an intermediate device (e.g., intermediate device 306). For example, accessory 304 might be

docked with a cradle or travel dock implementing intermediate device 306. At step 804, accessory 304 sends a self-identifying command to host device 302 using the tunnel protocol. For example, the selfidentifying command can be the AccIdentify command of FIG. 7B, and accessory 304 can send this command as a tunneled command, e.g., using the TxATunne!ToHost command of FIG. 4 B. Intermediate device 306 attempts to repackage the self-identifying command and forward it to a host device." Lydon at 21:34-49.

227. The pairing process can be initiated in response to pressing a user input button. "In some embodiments, process 800 may be initiated in response to a user request rather than being initiated every time an accessory is connected to the intermediate device. For example, the user might operate a control located on host device 302, accessory 304, or intermediate device 306 (or another device, such as a computer system coupled to intermediate device 306) to indicate that a pairing should be established, after which process 800 can be performed without further user input." Lydon at 23:23-31.

(Ex. C (Wells Report) at ¶¶ 224-227.)

### 3. Dr. Wells Disclosed Kalayjian as Prior Art to Limitation [g]

For the third category, relating to limitation [g] of claim 10 of the '066 patent, Dr. Wells explained that "Applications for Locating a Lost Wireless Earbud or Other Device Were Well-Known." He stated: "Using a mobile application to cause a paired wireless earbud to play sound when lost was well-known at the time of the purported invention." (Ex. C (Wells Report) at ¶ 232.) Dr. Wells then analyzed the Kalayjian reference.

235. As another example, U.S. Patent Application No. 2008/0125040 to Kalayjian ("Kalayjian") teaches this limitation. Kalayjian was filed

DEFENDANT APPLE INC.'S RESPONSE TO PINN EPA RE PRIOR ART

November 26, 2006, published May 29, 2008, and is assigned to Apple Inc.

236. Kalayjian discloses that "The present invention relates to wireless communications. More particularly, the present invention relates to locating physical devices using a Bluetooth® communications protocol." Kalayjian at [0001]. "A method and system for locating objects using a Bluetooth communications protocol is provided. A first device can be paired, using a Bluetooth protocol, with one or more second devices. In that case, the first device is referred to as the master device and one or more second devices are referred to as the slave devices. When prompted by a user, the master device can transmit a signal to one of the slave devices. The slave device can then take a predetermined action to attempt to guide a user to its location.

For example, the slave device can transmit a return signal to the master device or emit auditory or visual alerts itself." Kalayjian at [0007].

237. Kalayjian discloses this method of playing a sound: "Devices 310 and 320 can be any devices capable of communicating using a Bluetooth protocol but in this instance are cellular phone 310 and headset 320. Devices 310 and 320 can have additional uses (e.g. telephone, audio headphones, music player, etc.) unrelated to locating other devices. It is contemplated that these other functions may use a Bluetooth communications protocol in which case much of the hardware related to the present invention might be able to serve multiple functions." Kalayjian at [0032].

"Device 310 can be, for example, a Bluetooth capable cellular phone. Cell phone 310 can include speaker 312, microphone 314, display screen 316 and keypad 318."

Kalayjian at [0033]. "Second device 320 can be, for example, a Bluetooth enabled wireless phone headset. FIG. 3b shows an additional view of headset 320. Headset 320 can include light 322, speaker 324, and microphone 326." Kalayjian at [0034]. "Headset 320 can have speaker 324 to emit sounds operable to guide a user to its location." Id.

238. "After being paired together, devices may not necessarily be used for an extended period of time. When a user wants to locate one of the slave devices 320, 400 and 500, the user can initiate the location discovery process through master device 310. Master device 310 can transmit a signal to a slave device. Upon receiving the signal, the slave device can guide a user to its location and/or notify a user of the distance from master device 310 to the slave device." Kalayjian at [0038]. "In one embodiment, slave devices 320, 400 and 500 can guide a user to their location by emitting auditory or visual signals. This embodiment allows a user to follow the sound or light to the misplaced object." Kalayjian at [0039].

239. "FIG. 10 is a flowchart of method 1000 for locating an object. At step 1010, a master device is paired with one or more slave devices using a Bluetooth communications protocol. Once two devices are paired, method 1000 can remain in between step 1010 and step 1020 for an indefinite period of time. Method 1000 can be manually instructed to proceed by a user or can proceed automatically if a slave device becomes lost. At step 1020, the master device transmits a signal

to a slave device using a Bluetooth communications protocol. At step
1030, the slave device takes a predetermined action to guide a user to
its location. The predetermined action could be, for example, turning
on a light, emitting a sound, or transmitting a signal back to the master
device with information about the slave device's location."

Kalayjian at [0054]. Figure 10 is illustrative:



**FIG. 10**

(Ex. C (Wells Report) at ¶¶ 232-240.)

Dr. Wells thus provides significant and detailed disclosure in claim charts and
the body of his report of both Lydon and Kalayjian as key references.  In particular,
Dr. Wells clearly shows Lydon combined with Kalayjian—Lydon teaching the main
body with charging concept and the Bluetooth button technical concepts, and
Kalayjian teaching the searching with sound limitation.  This is more than sufficient

1    to put Pinn on reasonable notice that Apple intended to rely on Lydon in combination

2    with Kalayjian as an invalidating combination.

3        **C.    Apple Disclosed Lydon as a "Primary" reference in Joint Pretrial**
         **Orders Filed by the Parties**

4

5        Pinn has complained that Apple's email from last week reserving the right to

6    use Lydon as a "primary" reference was "cryptic."  Pinn Br. at p. 2.  Pinn's assertion

7    makes no sense, as Pinn has repeatedly asked whether Lydon would be used a primary

8    or secondary reference.  The history here shows that Apple, from service of Dr. Wells'

9    report up through last week, Apple has always maintained Lydon as a primary

10   reference, except when specifically narrowing references for trial in March and

11   August of this year.

12       Apple disclosed Lydon as a primary reference in both pretrial orders:

13       **c.    Invalidity Under 35 U.S.C. §§ 102 and 103**

14       Apple may rely on the following exemplary key facts and evidence to prove

15   anticipation and/or obviousness of the asserted patents:

16   •   The following primary prior art references (printed publications and

17       systems): BT Headset (*see, e.g.,* JTX-466, 467), Watson I (*see, e.g.,* JTX-

18       0269, 272), Watson II (*see, e.g.,* JTX-270, 273), Lydon (*see, e.g.,* JTX-

19       260), Bragi (*see, e.g.,* JTX-703, 704, 105), Sennheiser (*see, e.g.,* JTX-

20   Dkt. No. 350 at p. 39; *see also* Dkt. No. 587 at p. 37.  Furthermore, in Docket 350,

21   where Apple listed Lydon as a primary reference, Pinn added footnotes in various

22   places objecting to Apple's disclosures—but they did not object to Lydon as a primary

23   reference.  Dkt. No. 350 at p. 39.

24       As a courtesy, and to clarify that the use of Lydon as a secondary for the prior

25   trial was only for that trial only, Apple told Pinn that Lydon may be used as a primary

26   reference.  Apple's invalidity case has otherwise not changed.  Pinn's feigned inability

27   to understand what Apple was saying is belied by its repeated requests to know if

28

Lydon was being asserted as a primary.  To the extent that term means it will be relied on to provide the bulk of the claim limitations.

### D.    Pinn's Expert Testified About Lydon and Conceded It Was the Same Device as the Bluetooth Headset

Pinn's expert on invalidity, Dr. Nettles, analyzed and testified to Lydon during his deposition and at trial.  Pinn raises no issue with the disclosure on the Bluetooth headset, and Dr. Nettles has conceded multiple times that the Lydon reference is "cumulative" of the Bluetooth headset.  As quoted in the introduction above, Dr. Nettles wrote in his expert report that Apple's Bluetooth Headset and Lydon were two of the "main" references relied on by Dr. Wells in his report and that they describe the "same device":

**8.1.5   Cumulative and Redundant Art**

> 100. As discussed at length in my section regarding Dr. Wells' Claim Charts, the references that Dr. Wells asserts are cumulative and redundant to one another. The majority of the products that Dr. Wells cites to teach the same thing, i.e. a generic Bluetooth-enabled earbud. Even the main references Dr. Wells relies on are cumulative—for example, Apple BT Headset and Hankey Group are cumulative of Lydon, because all of these references teach the same device. Many, if not all, of these references are also asserted redundantly because they are used to address the same limitations, and Dr. Wells does not explain or clarify why an one particular reference better teaches a limitation than another reference.

(Ex. H (Nettles Report) at ¶ 100.)   Dr. Nettles confirmed that position in his deposition:

> Q. You state in paragraph 100 starting the second sentence, "The majority of the products that Dr. Wells cites to teach the same thing, i.e., a generic Bluetooth enabled earbud. Even the main references Dr. Wells relies on are cumulative.  For example, Apple BT headset and Hankey Group are cumulative of Lydon because all of these references teach the same device." You said that?

A. Yes, sir.

Q. That's your opinion?

A. Yes, sir.

Exh. A (Nettles Dep. Tr.) at 194:13-24.  The import here is that Pinn's own invalidity expert understood that Lydon disclosed the same features as the Bluetooth Headset, a prior art reference that it takes no issue with.  Substituting Lydon for Bluetooth headset, as Apple proposes to do in one of its combinations, is something that Pinn and its expert is fully aware of.

At the last trial, Apple relied extensively on Lydon to show that putting a button for Bluetooth pairing on a mobile base station would have been obvious. Apple engineer Jeff Terlizzi testified that the Lydon patent came from the development of the Bluetooth Headset, and disclosed the Bluetooth headset with its Dual Dock and Travel Charger.  (Ex. G (Aug. 2022 Trial Tr. excerpts) Day 5, Vol 1 at 23:10-28:10; Day 5, Vol. 2 at 10:5-17:16 (testify to Lydon as related to the Bluetooth Headset).) Apple's expert Dr. Wells testified that Lydon disclosed the Bluetooth Headset, and that its teaching of a button on an intermediate device, like the Dual Dock of the Bluetooth Headset, would have been an obvious modification to the Bluetooth Headset.  (Ex. G (Trial Tr.) Day 5 Vol 4 61:2-9; Day 6 Vol 1 7:4-32:3 (testifying to Lydon as embodying Bluetooth Headset; testifying to Lydon as part of obviousness combination).)

Finally, Dr. Nettles testified at trial about the Bluetooth Headset:

Q Okay. So then the case would be -- the validity side of the case becomes just about the Bluetooth headset; right?

A Yes, sir.

Q And in particular, is it just the Bluetooth headset, or is it more than that?

A It's the Bluetooth headset in combination with the Lydon reference and the Kalayjian reference as we see in this --puzzle pieces that have been put together.

(Ex. G (Trial Tr.) Day 6, Vol. II at 114.)   Dr. Nettles further testified that he understood the combination of Bluetooth, Lydon, and Kalayjian

Is there anything else below the Bluetooth headset that, even when you combine Kalayjian with Lydon and the Bluetooth headset product, is still missing?

A Yes, sir. Even if we take this entire combination, you'll notice that Lydon is tethered. It's really just the Bluetooth headset patent. There's nothing about -- there's no base station or anything in Kalayjian. That's just being supplied to play a sound aspect.

*Id.* at 120.   Finally, Dr. Nettles again conceded that Lydon disclosed the Bluetooth Headset.

Q And the Lydon patent is prior art to the Pinn patents in suit; correct?

A Absolutely.

Q You, in fact, agree that Lydon teaches the same device as the Bluetooth headset?

A Yes, sir. I think that's what I just said.

[Referencing Fig. 1A of the Lydon patent.]

Q That shows a representation of the Apple Bluetooth headset and dual dock. Do you agree?

A Yes, sir. Looks just like this.

DEFENDANT APPLE INC.'S RESPONSE TO PINN EPA RE PRIOR ART
Case No. 8:19-cv-1805-DOC-JDE

Q And you agree that the dual dock shown there is marked as Number 106?

A Yes, sir.

Q And the patent refers to that as the intermediate device?

A That's the best of my recollection, yes, sir.

Q And you agree that Lydon describes a modification to put a button on the intermediate device to initiate the pairing process?

A There's a limited discussion of such a button, yes, sir.

Q Was that a "yes"?

A Yes, sir.

*Id.* at 141-143.

There is no question that Apple disclosed the Bluetooth Headset with Kalayjian—Indeed, Pinn argues this is the allowed combination at trial. Because Pinn's expert fully understood the disclosure and scope of Lydon—it tracks the Bluetooth Headset—Pinn is on notice of the scope of the Apple's theory of Lydon with Kalayjian. Apple wants to rely on its prior art patents. Pinn and its experts offered extensive testimony at trial on Lydon. It cannot claim now that it is unaware, or lacks notice, of the invalidity theory on which Apple is proposing to move forward. Pinn will not suffer prejudice from Apple's use of Lydon as a primary reference for all the reasons stated above, including their own expert's opinions and assertions about Lydon relative to the Bluetooth Headset and his acknowledgement that Dr. Wells presented those two prior art references are "main references."

## III.   CONCLUSION

Pinn's motion is not well taken. Not only did Apple fully disclose its prior art combinations to Pinn as requested, but Apple has fully disclosed its invalidity theories

involving the Lydon patent.  As the evidence of Apple's prior disclosure shows above, Apple has more than met its disclosure obligations in order to rely on the Lydon reference at trial in a combination with the Kalayjian.

DEFENDANT APPLE INC.'S RESPONSE TO PINN EPA RE PRIOR ART

Dated:  November 6, 2022

FISH & RICHARDSON P.C.

By: */s/ Christopher S. Marchese*

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 533-4240
Fax: (858) 678-5099

Juanita R. Brooks (SBN 75934)
brooks@fr.com
Roger A. Denning (SBN. 228998)
denning@fr.com
Seth M. Sproul (SBN 217711)
sproul@fr.com
John W. Thornburgh (SBN 154627)
thornburgh@fr.com
K. Nicole Williams (SBN 291900)
nwilliams@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

Joy B. Kete (*pro hac vice*)
kete@fr.com
FISH & RICHARDSON P.C.
One Marina Park
Boston, MA 02210
Tel: 617-542-5070
Fax: 617-542-8906

Karrie E. Wheatley (*pro hac vice*)
wheatley@fr.com
FISH & RICHARDSON P.C.
1221 McKinney St., Suite 2800
Houston, TX 77010

Attorneys for Defendant APPLE INC.